**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

**FILED**

**JUL 26 2022** SH

| | | |
|---|---|---|
| Fred L. Nance Jr. | ) | |
| | ) | Case No. |
| Plaintiff, | ) | |
| | ) | Honorable Judge: |
| vs. | ) | |
| | ) | |
| United States, et al. | ) | |
| | ) | 22-cv-3861 |
| | ) | Judge Robert W. Gettleman |
| Defendants. | ) | Magistrate Judge Jeffrey Cummings |
| | ) | RANDOM |

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

## PLAINTIFF WHISTLEBLOWER COMPLAINT AT LAW

NOW COMES Pro se plaintiff Fred L. Nance Jr. (Plaintiff) pursuant to the anti-retaliation provisions of the National Defense Authorization Act of 2013, amended 2016 (NDAA) Whistleblower Protections provisions of 828 of Pub. L. No. 112-239, 126 Stat. 1632 (2013), as amended by Pub. L. No. 114-261, 130 Stat. 1362 (2016), 10 U.S.C. §2409; 41 U.S.C. §4712; 5 U.S.C. §1221(e)(1), 31 U.S.C. §3730, Federal Tort Claims Act (FTCA), and the Federal Claims Act (FCA). On June 8, 2021, Judge Jorge Alonso dismissed plaintiff's FTCA claim without prejudice and without leave to amend; and dismissed with prejudice all remaining claims against DOJ, et al. in case #20cv6316. Plaintiff has satisfied Title 28 U.S.C. §2675.

https://drive.google.com/file/d/1GZ5w8Fn1EpxDpDgwbaDpLLzTht8VB5SO/view?usp=sharing

Pro se litigants' court submissions are to be construed liberally and held to less stringent standards than submissions of lawyers. If the court can reasonably read the submissions, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with rule requirements. *Boag v. MacDougall*, 454 U.S. 364, 102 S.Ct. 700, 70 L.Ed.2d 551 (1982); *Estelle v. Gamble*, 429 U.S.

97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)(quoting *Conley v. Gibson*, 355 U.S. 41, 45-46, 78

S.Ct. 99, 2 L.Ed.2d 80 (1957)); *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652

(1972); *McDowell v. Delaware State Police*, 88 F.3d 188, 189 (3rd Cir. 1996); *United States v.*

*Day*, 969 F.2d 39, 42 (3rd Cir. 1992)(holding pro se petition cannot be held to same standard as

pleadings drafted by attorneys); *Then v. I.N.S.*, 58 F.Supp.2d 422, 429 (D.N.J. 1999). Under

Federal Rule of Civil Procedure 8, a pleading must contain "a short and plain statement showing

that the pleader is entitled to relief," which must be "simple, concise, and direct." Fed. R. Civ. P.

8(a)(2), (d)(1).

## JURISDICTION AND VENUE

Based on the allegations in this complaint, subject matter jurisdiction is based on federal

question jurisdiction under 28 U.S.C. § 1331. Plaintiff brings this action pursuant the anti-

retaliation provisions of the National Defense Authorization Act ("NDAA"), 41 U.S.C. § 4712,

and the False Claims Act ("FCA"), 31 U.S.C. § 3730. At all times relevant to this case Tracey

Willis (hereinafter, "Willis"), Andre Bethea (hereinafter, "Bethea"), and Michael Dever

(hereinafter, "Dever") are and/or were employees of the United States Department of Justice

(hereinafter "DOJ"), Bureau of Justice Assistance (hereinafter, "BJA"), Office of Justice

Programs (hereinafter, "OJP").

Pursuant to 41 U.S.C. § 4712(c)(2) If the head of an executive agency issues an order

denying relief under paragraph (1) or has not issued an order within 210 days after the

submission of a complaint under subsection (b), or in the case of an extension of time under

paragraph (b)(2)(B), not later than 30 days after the expiration of the extension of time, and there

is no showing that such delay is due to the bad faith of the complainant, the complainant shall be

deemed to have exhausted all administrative remedies with respect to the complaint, and the

complainant may bring a de novo action at law or equity against the contractor or grantee to seek compensatory damages and other relief available under this section in the appropriate district court of the United States, which shall have jurisdiction over such an action without regard to the amount in controversy. Such an action shall, at the request of either party to the action, be tried by the court with a jury. An action under this paragraph may not be brought more than two years after the date on which remedies are deemed to have been exhausted. Jurisdiction is invoked pursuant to 41 U.S.C. § 4712(c)(2). Plaintiff has met the requirement of 210 days. This action properly lies in the Northern District of Illinois, Eastern Division, pursuant to 41 U.S.C. § 4712(c)(2) because plaintiff and all defendants either reside in the District or engage in the operation of business in this District, and all events giving rise to plaintiff's claims occurred. Plaintiff request trial by jury.

## PARTIES

Plaintiff is the Founder & CEO of C.L.I.C.K. Services, NFP. Plaintiff was employed by and through C.L.I.C.K. Services, NFP pursuant to the abstract and proposal submitted to the United States of America DOJ, BJA, OJP, and approved by the DOJ Attorney General. The United States employees are Dever, who is the BJA Division Chief, Bethea, who is the OJP Senior Policy Advisor, and Willis, who is the OJP Grant #2018-CY-BX-0025 Manager. At all times relevant to and during these tortious acts, with the statement of facts and claims, defendant United States employees/contractors/grantees/employee of grantee/consultants operated in the City of Chicago, Illinois, and Washington DC.

## ADMINISTRATIVE PROCEDURE

On April 17, 2020, plaintiff filed his 1st Whistleblower complaint via email with

defendant BJA Grant Manager "Willis" and Senior Policy Advisor "Bethea". On August 29, 2020, and September 13, 2020, plaintiff filed his 2nd and 3rd Whistleblower complaints online with the U.S. Department of Justice, Office of the Inspector General (OIG), Investigation Division; and DOJ, BJA, OJP employees "Dever", "Bethea", and "Willis". Plaintiff sent all 3 Whistleblower complaints, via email, to "Dever", "Bethea", and "Willis". Plaintiff filed all 3 Whistleblower complaints with the U.S. Office of Special Counsel, and OIG.

On September 30, 2020, plaintiff received a letter via an email from the U.S. Office of Special Counsel (hereinafter "OSC") stating "…The provisions of 5 U.S.C. § 2302 AND 5 U.S.C. 2105 establish that our authority extends only to current or former employees or applicants for employment to competitive or excepted service positions in Executive Branch departments and agencies of the federal government…."[1]

On October 13, 2020 plaintiff received, via email, a response to plaintiff's **August 29, 2020** Whistleblower complaint "only" from M. Sean O'Neill, Assistant Inspector General denying, in part, plaintiff's claim of retaliation. OIG O'Neill did not address the other parts of the 2nd Whistleblower complaint, nor did he address the 1st & 3rd Whistleblower complaints. OIG O'Neill reports in his correspondence "…If you decline to provide any additional information, you may wish to review § 4712(c)(2), which describes your right to pursue a claim of retaliation in federal district court.[2] Plaintiff filed a claim in federal district court, case #20cv6316. OIG M. Sean O'Neill made no mention of investigating plaintiff's 1st or 3rd Whistleblower complaints in his letter dated October 13, 2020 where he denied plaintiff's 2nd Whistleblower complaint.

---

[1] https://drive.google.com/file/d/1-Xvauz_DTSqIYGKCP3cXu-p2h6xg-8C7/view?usp=sharing
[2] https://drive.google.com/file/d/19r6ANwXdSTExUzl7m2HsuEELVz4hlREB/view?usp=sharing

In case #20cv6313, DOJ claimed plaintiff never exhausted his administrative remedies. Judge Jorge Alonso agreed and issued a memorandum and order dismissing without prejudice plaintiff's FTCA claim and without leave to amend against DOJ in case #20cv6316 stating, in part, plaintiff had not exhausted his administrative remedies. Judge Alonso also dismissed all other claims against DOJ. Judge Alonso left the other defendants EMAGES, Inc., Hattie Wash, and Thomas Bradley in case #20cv6316. Plaintiff re-filed his Whistleblower complaints with the United States DOJ and received an official certified mail letter from the U.S. Department of Justice, Civil Division, Torts Branch stating, in part, "…After careful consideration, it has been determined that your claim is not compensable. Accordingly, your claim must be and hereby is denied…if you are dissatisfied with this determination, you may file suit in an appropriate United States District Court…." Therefore, case #20cv6316 will be running parallel to this litigation. The cases are duplicative of each other.

## STANDARD

Under the notice-pleading requirements of the Federal Rules of Civil Procedure, a complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint need not provide detailed factual allegations, rather plaintiff must include allegations that "nudge their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Plaintiff meets this requirement.

A person injured by the tortious activity of a federal employee generally has two potential targets that he might name as a defendant in a tort lawsuit: (1) the federal employee who committed the tort and (2) the federal government itself.[3] In 1946, Congress enacted the FTCA,[4]

---

[3] *Harbury v. Hayden*, 522 F.3d 413, 417 (D.C. Cir. 2008)

which effectuated "a limited waiver of the federal government's sovereign immunity"[5] from certain common law tort claims. With certain exceptions and caveats, the FTCA authorizes plaintiffs to bring civil lawsuits, such as against the United States; for money damages; for injury to or loss of property, or personal injury or death; caused by a federal employee's[6] negligent or wrongful act or omission; while acting within the scope of his office or employment; under circumstances where the United States, if a private person, would be liable to the plaintiff in accordance with the law of the place where the act or omission occurred.[7]

FTCA claim can be brought only against the United States, not the DOJ. e.g., *Quinlan by Cecola v. U.S. Postal Serv.*, No. 89 C 5748, 1989 WL 88255, at *1 (N.D. Ill. July 31, 1989) ("Section 1346(b) calls for the action to be brought against the United States itself and not against the federal agency, and that is confirmed by Section 2679(a)."). The only proper defendant in an FTCA action is the United States not DOJ. See *Kaba v. Stepp*, 458 F.3d 678, 681 (7th Cir.2006) ("The United States would be the proper defendant for tort claims involving acts of the named officials within the scope of their employment.")

Pursuant to the National Defense Authorization Act (NDAA) of 2013, amended 2016, plaintiff is protected under §828, which has a broader scope for whistleblowers, including employees of other federal contractors and subcontractors, employees of federal grant recipients or subgrantees, employees of entities that receive federal funds, and personal services contractors working on federally funded projects. See 41 U.S.C. §4712(a)(1). A whistleblower may file a lawsuit in federal court if he has not obtained relief within 210 days. (10 U.S.C. §2409(c)(2); 41 U.S.C. §4712(c)(2). Plaintiff has met the standard here and now re-files his case in this Court

---

[4] *Nelson*, supra note 41, at 268–71 (discussing the FTCA's legislative history).

[5] *Evans v. United States*, 876 F.3d 375, 380 (1st Cir. 2017), cert. denied, 139 S. Ct. 81 (2018).

[6] See infra "Employees and Independent Contractors."

[7] *Meyer*, 510 U.S. at 477 (quoting 28 U.S.C. § 1346(b)).

against the United States and not DOJ, specifically, due to Judge Alonso, in case #20cv6361, dismissing DOJ et al. from that litigation and all claims against DOJ et al.

Plaintiff is filing a complaint against the United States (*Scarborough, Herrera, Quinlan by Cecola*), not the DOJ, specifically. Plaintiff files this new complaint, which makes this duplicative litigation, running parallel to the present litigation against EMAGES, Inc. et al. in case #20cv6316. The Seventh Circuit has advised that "a district court has 'an ample degree of discretion' in deferring to another federal proceeding involving the same parties and issues to avoid duplicative litigation." *Trippe Mfg. Co. v. Am. Power Conversion Corp.*, 46 F.3d 624, 629 (7th Cir. 1995) (quoting *Kerotest Mfg. Co. v. C-O- Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952)).

Plaintiff has satisfied (10 U.S.C. §2409(c)(2); 41 U.S.C. §4712(c)(2). This court can avoid duplicative litigation in this matter. The 7th Circuit applies a flexible standard to the exhaustion requirements for plaintiffs making claims under the Federal Tort Claims Act, excusing technical deficiencies so as not to preclude all but the savviest of plaintiffs from receiving a hearing on the merits. See *Delgado v. Merit Sys. Prot. Bd.*, 880 F.3d 913, 924 (7th Cir. 2018), as amended on denial of reh'g and reh'g en banc (June 19, 2018). The 7th Circuit has long applied a flexible standard and have made clear that technical deficiencies in an administrative claim are not fatal, provided the "proper agency had the opportunity [932 F.3d 551] to settle the claim for money damages before the point of suit." *Smoke Shop, LLC v. United States*, 761 F.3d 779, 787 (7th Cir. 2014). Judge Alonso in case #20cv6316 was made aware these cases but negated plaintiff's plea to reinstate DOJ, et al. as amended naming the United States as defendants; in addition, to threatening plaintiff with sanctions if he continued an attempt to pursue resurrection of the DOJ/United States in case #20cv6316.

The 7th Circuit's flexible standard means that courts must construe pro se administrative complaints generously and deem exhausted any claim fairly implicit in the facts that would be clear to a legally sophisticated reader. *Delgado*, 880 F.3d at 925. Plaintiff has given the Department of Justice, Office of Inspector General the allotted time to settle this matter, which is 210 days. Accordingly, a plaintiff may "litigate under the FTCA following an administrative demand" even if that initial administrative demand "does not comply with every jot and tittle of the rules defining a `claim.'" *Kanar v. United States*, 118 F.3d 527, 530 (7th Cir. 1997). The 7th Circuit has asked "Why should courts stand on punctilious adherence to unimportant elements of the regulatory definition of a `claim' under the FTCA?" *Id.* at 531. Instead, the 7th Circuit looks to see whether the noncompliance has "hindered the settlement process that a claim is supposed to initiate;" if it has not, then there is no reason to foreclose litigation. *Id.* With all this case law, which plaintiff provided to Judge Alonso in Case #20cv6316 to get him to reinstate DOJ in the case, Judge Alonso threatened plaintiff in his order on June 13, 2022 with sanctions if plaintiff continued his attempt to resurrect DOJ/United States in case #20cv6316.

Judge Alonso's statement "Refusal to take no for an answer, and a campaign of unending litigation, are intolerable and sanctionable." *Averhart v. Sheriff of Cook Cty., Ill.*, 752 F.3d 1104, 1106 (7th Cir. 2014). Future attempts to reopen the judgment as to the FTCA claim or otherwise to add a claim under the FTCA to this case may be met with sanctions."" Judge Alonso did not include the final decision of the *Averhart* court "We deny defendants' request to impose sanctions on *Averhart* or her counsel for filing a frivolous appeal in violation of Illinois Supreme Court Rule 375(b) (Ill. S. Ct. R. 375 (eff. Feb. 1, 1994))."

## NATURE OF THE LAWSUIT

On or about October 23, 2020, plaintiff originally filed suit against the Department of Justice (hereinafter "DOJ"), Bureau of Justice Assistance (hereinafter, "BJA"), and Office of Justice Programs (hereinafter, "OJP"), EMAGES, Inc. (hereinafter, "EMAGES"), Hattie Wash (hereinafter, "Hattie") and Thomas Bradley (hereinafter, "Bradley") pursuant to the National Defense Authorization Act (hereinafter, "NDAA") Whistleblower Protections provisions of §827 and 828 of Pub. L. No. 112-239, 126 Stat. 1632 (2013), as amended by Pub. L. No. 114-261, 130 Stat. 1362 (2016), 10 U.S.C. §2409; 41 U.S.C. §4712; 5 U.S.C. §1221(e)(1), which on June 8, 2021 the District Court, in case #20cv6316, states "…the Court grants the government's motion [31] to dismiss. Plaintiff's FTCA claim is dismissed without prejudice (and without leave to amend). The remaining claims against the government are dismissed with prejudice.…" Plaintiff original suit was in the amount of $500,000.00 and was injured by the conspiracy and tortious actions of all defendants. On June 8, 2021, Judge Alonso dismissed without prejudice DOJ et al. from case #20cv6316 and continued the litigation against EMAGES, Inc. and Hattie Wash. Case #20cv6316 will run on a dual track with this litigation. For purposes of this litigation against the United States, plaintiff will reference the parties in Case #20cv6316 as Dr. Wash (EMAGES, Inc. & Hattie Wash) and Mr. Bradley.

On June 8, 2021, in case #20cv6316, Judge Alonso issued a Memorandum Opinion and Order stating "…The government argues that plaintiff's FTCA claim must be dismissed, because plaintiff failed to exhaust his administrative remedies. (p.11) Accordingly, plaintiff's FTCA claim is dismissed…", noting "This dismissal is without prejudice to plaintiff's right to file an administrative claim with the appropriate agency…to the extent the statute of limitations has not

run citing *Chronis*, 932 F.3d at 549. Plaintiff may not, however, replead the claim in this case."
(p.13)

Plaintiff received a certified letter dated April 28, 2022, from U.S. Department of Justice,
Civil Division, Tort Branch stating, in part, "…We have reviewed the administrative tort claim
you submitted to the U.S. Department of Justice dated June 9, 2021, relative to the alleged acts
or omissions of employees of the Office of Justice Programs, the Bureau of Justice Assistance.
and the U.S. Department of Justice occurring from April 2020 to November 2021. After careful
consideration. it has been determined that your claim is not compensable. Accordingly, your
claim must be and hereby is denied. I am required by law (28 C.ER. $ 14.9(a) to inform you that,
if you are dissatisfied with this determination, you may file suit in an appropriate United States
District Court no later than six months after the date of mailing of this notification of denial. 28
U.S.C. $ 2401(b)." Therefore, plaintiff files this civil complaint against the United States et al.

Plaintiff and Dr. Wash created and developed budget items for their abstract and proposal
to the DOJ, BJA, and OJP submitting the package on May 1, 2018. In September of 2018 DOJ,
BJA, OJP approved the abstract and proposal for the Second Chance Act Community-Based
Program grant. This was a 3-year grant. The first year, October 1, 2018 thru September 30, 2019
was the start-up phase of the grant. During the start-up phase, Dr. Wash, Mr. Bradley and
plaintiff were supposed to attend the DOJ Grant Financial Management Training online. Dr.
Wash did not attend the training reporting there was no need for her to attend because she has
been working with budgets for over 20 years.

Plaintiff has been a peer reviewer for DOJ since 2009. Plaintiff has reviewed over 100
proposals across the United States for Second Chance Act grants. Plaintiff has been on
Congressman Danny K. Davis' Second Chance Act Advisory Committee since 2007. Plaintiff

provided language and review of "draft" policies for the Second Chance Act signed by President Bush on April 10, 2008. Plaintiff believes he has good working knowledge of the policies and processes of DOJ and the Second Chance Act.

There were 2 mandatory Financial Management Trainings for the Grant in question, 2018-CY-BX-0025. Financial Management Training II had sections called Payments/GPRS – Module 17. Module 17 states, in part, "…Funds requested should be based on immediate disbursement or reimbursement requirements…Award recipients should time draw down requests to ensure that Federal cash on hand is the minimum needed for disbursements/reimbursements to be made immediately or within 10 days. If funds are not spent or disbursed within 10 days, you must return them to the awarding agency…Organizations should develop written procedures for the management of funds to ensure that Federal case on hand is kept at or near zero…."

Grant Fraud – Module 23; NDAA. Module 23 states, in part, "…The National Defense Authorization Act of 2013 (NDAA) included a provision that makes it illegal for an employee of a federal contractor, subcontractor, or grantee to be discharged, demoted, or otherwise discriminated against for making a protected whistleblower disclosure. Under NDAA, the DOJ OIG has jurisdiction to investigate allegations of reprisal for whistleblowing by employees of DOJ contractors, subcontractors and award recipients…."

After approval of the "Special Conditions" of Grant #2018-CY-BX-0025, in February of 2020 we were approved to drawdown funds. Defendant "Hattie" was the fiduciary for the grant. DOJ, BJA, OJP allow a recipient of the "SCA" grant to drawdown funds "monthly" for services rendered. Plaintiff receives a copy of all monthly drawdowns being the Program Director and partner of the grant.

On or about February 26, 2020 plaintiff received a copy of the drawdown. Plaintiff noticed monies were drawn down for Dorothy Collins who was no longer an employee of the grant. Dorothy Collins resigned on or about January 16, 2020. On or about February 26, 2020 and March 30, 2020 plaintiff noticed there were drawdown of funds for Dorothy Collins. Plaintiff brought this discrepancy to Dr. Wash and Mr. Bradley. Dr. Wash informed plaintiff to stay in his lane and to pay attention to his job. Plaintiff explained to Dr. Wash this was his job being the Program Director. Plaintiff filed his 1st Whistleblower complaint on April 17, 2020 with the defendant BJA Grant Manager, "Willis", and OJP Senior Policy Advisor, "Bethea". "Willis" and "Bethea" did not respond or contact plaintiff, nor did they attempt to stop defendant "Hattie".

Meanwhile, plaintiff was in the process of developing a 90-day transitional housing project for the population we were serving. Plaintiff was discussing a Letter of Support with the Honorable Congressman Danny K. Davis (hereinafter, "Congressman Davis"). Plaintiff met with Congressman Davis to drive through of his 7th Congressional District seeking possible locations for this housing. As plaintiff was driving and talking with Congressman Davis, plaintiff told Congressman Davis what he had discovered with the draw downs of federal funds and this grant. Congressman Davis asked plaintiff if he had spoken to his partner about this issue. Plaintiff told Congressman Davis he did and told him her answer. Plaintiff informed Congressman Davis he could not afford to get caught up in a scandal or misinformation when we had an audit from the Federal government. Congressman Davis advised plaintiff to do what is right and report it. Plaintiff told Congressman Davis he would and that he would keep the Congressman apprised of events. Plaintiff filed his 1st Whistleblower complaint to DOJ, BJA, OJP on April 17, 2020 regarding misappropriation of funds and/or fraud.

Plaintiff carefully monitored the monthly drawdowns after this experience. Plaintiff found Dr. Wash was drawing down funds for non-existing groups/mentors. Our budget allowed a monthly drawdown for 7 groups and 2 mentors per group. We lost 2 groups and 2 mentors due to the Coronavirus in March of 2020. Dr. Wash continued drawing down funds for the 2 groups and 2 mentors through August 2020. When plaintiff brought it to her attention, stating she cannot drawdown monies for consultant salaries for groups that are not operating, Dr. Wash disrespected plaintiff stating plaintiff is not an accountant, should stay in his lane, and do his job function.

Plaintiff brought this issue to Mr. Bradley. Mr. Bradley did nothing to stop the drawdown of funds. Plaintiff filed his 2nd and 3rd Whistleblower complaints. Defendants DOJ, BJA, OJP, et al. retaliated against plaintiff and terminated his employment when they allowed Dr. Wash to give Grant #2018-CY-BX-0025 back violating the Whistleblower Act.

## STATEMENT OF FACTS

1. On May 1, 2018 plaintiff and Dr. Wash submitted an abstract and proposal for the Second Chance Act Comprehensive Community-based Adult Reentry Program (hereinafter, "SCA Grant").

2. On September 26, 2018 plaintiff and Dr. Wash received the Grant Award letter from the Unites States Attorney General Jeff Sessions for Grant #2018-CY-BX-0025; funding the MA`AT project (hereinafter, "MA`AT") Trauma-Informed and Mentoring services for October 1, 2018 thru September 30, 2021.

3. The budget created for the May 1, 2018 proposal reports (for purposes of this litigation): Contractual fees $50.00 per session (hour) for 10 Mentors and a Support Clerk $11.00 an hour.

4. The budget created for the May 1, 2018 proposal reports a monthly drawdown amount of

$2800.00 for 10 Mentors, for 7 groups.

5.  In September of 2019, plaintiff had sent emails to DOJ, BJA, OJP Grant Manager Willis about our services, leaving voice messages, without getting a response.

6.  In September of 2019, on a different date, plaintiff called the office of Willis and one of her colleagues answering the phone directed me to her supervisor, DOJ, BJA, OJP Bethea.

7.  Plaintiff informed Bethea he had sent emails to Willis and Willis was not responding.

8.  Bethea requested plaintiff copy him on all and any emails he sends to Willis.

9.  On September 11, 2019, Willis was instructed to copy Bethea on any and all emails sent to plaintiff.

10. On October 1, 2019, the MA`AT project was implemented.

11. On or about October 1, 2019, the MA`AT project hired 10 mentors and one Support Clerk.

12. On December 18, 2019, plaintiff requested a meeting via email with Congressman Davis to discuss housing possibilities for the MA`AT project participants.

13. On December 24, 2019, plaintiff met with Congressman Davis discussing the SCA Grant and housing for the sex offender population.

14. On or about January 17, 2020, the Support Clerk, Dorothy Collins, resigned from the MA`AT project and Dr. Wash drew down monies for this employee.[8]

15. On or about February 26, 2020, Dr. Wash drew down monies for Support Clerk, Dorothy Collins.

16. In March of 2020, plaintiff started working part-time at home due to the surge in Covid cases in Illinois.

---

[8]https://drive.google.com/file/d/1qOmUjLYZL5jBg9Vt4NiMEz6tTRLVJETT/view?usp=sharing

17. The grant clients began receiving services via zoom beginning approximately in March of 2020.

18. On or about March 30, 2020, Dr. Wash drew down monies for Support Clerk, Dorothy Collins.

19. On or about April 7, 2020, there is an email chain between plaintiff and Dr. Wash addressing the drawdown of funds for Support Clerk, Dorothy Collins, the lack of operating supplies plaintiff requested from Dr. Wash, and Dr. Wash accusing plaintiff of being a bully because plaintiff requires staff and management to adhere to policies and processes set up pursuant to our Abstract, Proposal, and P&I Guide.[9]

20. On April 8, 2020, plaintiff sent an email to Mr. Bradley regarding the misappropriation of funds and fraud.[10]

21. On April 9, 2020, plaintiff received an email from Dr. Wash reporting the program is moving well during the Coronavirus.[11]

22. Plaintiff asked Dr. Wash why she was drawing down funds from the grant for a Support Clerk when we did not have one.

23. Dr. Wash told plaintiff to mind his own business and to do his job.

24. Dr. Wash had a support staff, Sheila Chew, working for her organization outside of this grant, who was not part of the grant program budgeted staff.

25. Sheila Chew assisted Dr. Wash every month with the grant drawdown of funds and facilitating the payment processes with Dr. Wash's EMAGES accountant.

26. In April of 2020 plaintiff discussed the drawing down of funds for staff not employed

---

[9] https://drive.google.com/file/d/1xiTtOaBvcHyEGKil2YqTtN99M42FJ2UN/view?usp=sharing
[10] https://drive.google.com/file/d/1lByBB-peiLzH22TXhcduSr-5NoRjUHIB/view?usp=sharing
[11] https://drive.google.com/file/d/1xfqtmhuV8H0b_Sci1tdMC9QC0zrXDMjj/view?usp=sharing

with the grant with Congressman Davis.

27. Congressman Davis suggested plaintiff talk with his partner about these funds first before filing any charges.

28. On April 10, 2020, plaintiff sent an email to Mr. Bradley informing him a drawdown of funds occurred in February and March of 2020 for Dorothy Collins who had resigned on or about January 17, 2020.

29. On April 15, 2020, plaintiff sent Mr. Bradley another email stating, in part, "…If I do not hear from you about this issue, I am going to report it to the Office Justice Programs. Where did this money go? What was it spent on? I will not be part of any fraud scheme."

30. On April 15, 2020, Mr. Bradley sent plaintiff an email stating, in part, "…Dr Nance received your email, however because of the sensitive nature of your charges, any conversation concerning 2nd Chance Accounting Procedures need to be discussed with me and Dr Wash CEO…."

31. On April 17, 2020, plaintiff sent an email to Mr. Bradley informing him Dr. Wash was not listening to him about the misappropriation of funds and fraud, and that plaintiff was going to report this to DOJ, BJA, OJP representatives.

32. On April 18, 2020, Mr. Bradley sent plaintiff an email stating, in part, "…After reading your email I stand by my initial request for a meeting between you, Dr. Wash, and myself…."

33. On April 18,2020, acting on the discussion with Congressman Davis and the email sent to Mr. Bradley, plaintiff filed his 1st Whistleblower complaint with supporting documents to DOJ, BJA, OJP Willis and Bethea via email reporting the appearance of misappropriation of funds and/or fraud.

34. Neither Willis nor Bethea responded to the April 17, 2020 Whistleblower complaint.

35. On April 23, 2020, Dr. Wash sent an email to plaintiff stating, in part, "…Your paranoia is getting the best of you I am not coming after you just trying to get a handle on the program…but if you feel you need to invite members from the office of justice administration I have no objections."

36. On June 29, 2020, plaintiff met with Congressman Davis and together they rode through Congressman Davis 7th Congressional District seeking appropriate sex offender housing.

37. On June 29, 2020, plaintiff talked to Congressman Davis about his Whistleblower complaint and ongoing misappropriation of funds and fraud.

38. On July 6, 2020, plaintiff sent an email to Dr. Wash and Mr. Bradley addressing the consulting fees and what was drawn down.[12]

39. On July 8, 2020, plaintiff sent this email to Congressman Davis stating, in part,

> "…The Second Chance Act I have partnering with EMAGES, Inc. is not working out. EMAGES is the fiduciary part of the grant and my company, C.L.I.C.K. Services NFP, hires me as the Program Director. EMAGES has twice misappropriated funds. When I brought it to Dr. Wash, President & CEO of EMAGES, she criticized me for micromanaging and not doing my job. Instead of folding and putting the money back and working out our differences. Dr. Wash says she wants to give up the grant. I told her I would take it under C.L.I.C.K. Services, NFP (www.clickservices.org) Incorporated in 2002. Dr. Wash has agreed to let the transfer happen…I reported the first instance to the SCA Grant Manager and Senior Policy

---

[12]https://drive.google.com/file/d/1W1WMMpvlfF04H5qzEmwKZ84J6mQ0rE8S/view?usp=sharing

> Advisor of the SCA under the Whistleblower Act, which is encouraged by the SCA's Fiscal Responsibility section of the Special Conditions in our grant. Reporting the incident under the Whistleblower Act secures the grant and protects me. The first act of misappropriation of funds was drawing down funds for a period of 3 months for a person who did not work in the program. This second incident was drawing down $25,000.00 for consultant fees for a period of 5 months, when the total consultant fees was $11,000.00 for the same period…."

40. On July 14, 2020, plaintiff issued an apology for misstating the numbers on the drawdown for consultant fees, even though too much was still drawn down.[13]

41. Plaintiff misstated the numbers in the July 8, 2020, email to Congressman Davis as he did in the narrative of the email dated July 6, 2020. The consultant fees for 5 months was $10,950. The drawdown was $14,000.00. This is a difference of $3,050.00, not $14,000.00. Plaintiff corrected his typo mistake with Congressman Davis and Dr. Wash.

42. On July 23, 2020, plaintiff began receiving weekly home visits from Gold Health Home Care, Corp. regarding medical complaints to his doctors for stress and anxiety levels, diet, headaches., and emotional distress due to the Whistleblower complaints.

43. Plaintiff complained to the Registered Nurse the incidents surrounding the Whistleblower issues causing him to become dizzy with terrible stomach problems, stress, anxiety, and emotional distress.

44. The Registered Nurse increased plaintiff's blood pressure medication as plaintiff talked to her about the issues of the Whistleblower complaints and his employment.

---

[13] https://drive.google.com/file/d/1aB7dT-EM99uB4hj7tRAOAhlGgdI140eR/view?usp=sharing

45. On or about July 11, 2011, plaintiff had a heart attack.

46. Plaintiff was informed by the attending physician 2 of his 3 arteries were clogged: one was 98% and the other was 99% clogged.

47. Plaintiff received a stint in one of his arteries.

48. On June 8, 2020, October 15, 2020, and October 22, 2020, plaintiff took Covid-19 tests, which all were negative.

49. Since July 11, 2011, plaintiff has been taking various medications for his blood pressure and overall health due to precipitating factors for his heart attack.

50. On July 29, 2020, plaintiff filed the MA`AT quarterly (January to March 31, 2020) and semi-annual (January thru June 30, 2020) reports for the SCA Grant.[14]

51. On page 18 of this report, the MA`AT project reports no problems or barriers with the 5 groups receiving teleconferencing services at EMAGES.

52. Dr. Wash reported to DOJ, BJA, OJP, Dever, Bethea, and Willis the reason she was giving the grant back is because of problems and barriers with the Coronavirus.

53. On August 21, 2020, Dr. Wash sent an email to plaintiff stating she is willing to give the program up because of plaintiff's Whistleblower complaints.[15]

54. On August 25, 2020, Dr. Karen Witherspoon, our research representative, sent plaintiff an email regarding our Covid 19 plans for services going forward, which was requested from our Technical Advisor, Joseph Williams.[16]

55. As Dr. Witherspoon's email and attachments demonstrate, the MA`AT Project had a plan

---

[14]https://drive.google.com/file/d/1zW1HaapMUt1kdADNGzeRXoCMoVho3gtT/view?usp=sharing
[15] https://drive.google.com/file/d/18JE1995p1ICQnZqyHhuXnFlu-xAPRRdv/view?usp=sharing
[16] https://drive.google.com/file/d/1J4riO-HUyK5yh1U6EsPIlJ0zJUgfNl-X/view?usp=sharing

for going forward during the Coronavirus pandemic.

56. Dr. Wash gave false and misleading information to DOJ, BJA, and OJP to why she was giving the SCA Grant back.

57. On August 25, 2020, plaintiff received an email from the Office of Chief Financial Officer offering a 2020 Financial Management Training Webinar.

58. On August 25, 2020, plaintiff forwarded this email message to Mr. Bradley stating "Mr. Bradley: You may want to attend this webinar."

59. On August 28, 2020, plaintiff received an email from DOJ Change of Contact.[17]

60. On August 28, 2020, plaintiff filed his 2nd Whistleblower complaint via email to DOJ, BJA, OJP Willis, Bethea, and our Technical Advisor, Joseph Williams (hereinafter, "TA").

61. Regarding the email of August 28, 2020, plaintiff states "Good evening. I filed my Whistleblower complaint with the Office of the Inspector General, Investigations Division (hereinafter, "OIG") tonight…I am not sure why Ms. Willis granted Dr. Wash taking me off as POC of this grant. You limited my performing my duties and allowed Dr. Wash to retaliate against me…."

62. Neither Willis nor Bethea responded to my email dated August 28, 2020.

63. On August 29, 2020, plaintiff sent an email to Willis, Bethea and to TA giving a detailed report of his "OIG" complaint, giving a history of the plaintiff and Dr. Wash's relationship as it relates to DOJ, BJA, OJP grants, the Whistleblower complaints, and history working voluntarily with Congressman Davis and being a Peer Reviewer for the DOJ, BJA, OJP.

64. On August 29, 2020, plaintiff sent a revised copy of his Whistleblower complaint to the "OIG", to DOJ, BJA, OJP Willis, Bethea, and TA.

---

[17]https://drive.google.com/file/d/10d9VhcbJoE3GUO0ymhJm5cHVpndodq7G/view?usp=sharing

65. On August 31, 2020, plaintiff sent an email to Congressman Davis attaching his 2nd Whistleblower complaint, copying DOJ, BJA, OJP Dever, Willis, Bethea, TA, and Dr. Wash stating, in part, "Congressman Davis, I realize you are on the Ways and Means Committee, and to some extent can explain to me the yearly reauthorization of the Second Chance Act and guiding principles leading to it. Please contact me so we can talk at your earliest convenience, as I am exhausting all administrative remedies…."

66. On August 31, 2020, Willis sent an email to plaintiff stating plaintiff should send all correspondence about the grant to Dr. Wash.[18]

67. On September 1, 2020, DOJ, BJA, OJP Dever responded to plaintiff's email stating, in part, "…We have received your emails and are looking into the grant expenditure information you referenced this week. Thanks again for your outreach and rest assured that we are taking steps to get to the bottom of the issues you've raised…."

68. On September 2, 2020, plaintiff sent an email to the MA`AT Clinical Supervisor regarding our pre-release participants at the Cook County and the jail re-opening.[19]

69. On September 2, 2020, plaintiff sent an email to the mentor consultants who will work in the Cook County jail.[20]

70. On September 2, 2020, plaintiff forwarded an email from the Cook County jail to DOJ, BJA, OJP Willis, Bethea, Dever, and TA Williams regarding the re-opening of our pre-release services.

71. On September 7, 2020, plaintiff sent an email titled "SCA Grant Accountant Emails and

---

[18] https://drive.google.com/file/d/1MhjE4oO6H38bUqra96-BqX2pTTVbxi9H/view?usp=sharing

[19] https://drive.google.com/file/d/1UW5PS1XgvRENSObLW0YQwfRxCHF72fFq/view?usp=sharing

[20] https://drive.google.com/file/d/14n2dCT0IJonTut2AS5hbza3yMkcIKVmb/view?usp=sharing

2020 Monthly Contractual Fee Invoices" to DOJ, BJA, OJP Dever, Bethea, and Willis.[21]

72. On September 10, 2020, Dr. Wash sent plaintiff an email demanding he copy her on all correspondence.[22]

73. On September 10, 2020, plaintiff sent an email to Sheriff Howard asking questions about the re-opening of the Cook County jail.[23]

74. On September 11, 2020, plaintiff sent another email to Dr. Wash informing her he did not have equipment ordered from her to operate the MA`AT project.[24]

75. On September 13, 2020, plaintiff sent an email to defendants in case #20cv6316 alerting them he was filing his 3rd Whistleblower complaint.[25]

76. On September 16, 2020, plaintiff sent an email to defendants regarding Dr. Wash's response to copying her on emails.[26]

77. On September 21, 2020, Dr. Wash sent an email to staff falsely reporting why she was giving the SCA Grant back.[27]

78. On September 22, 2020, plaintiff sent an email to defendants regarding Dr. Wash false report for giving the SCA Grant back.[28]

79. On September 22, 2020, plaintiff sent an email to Willis, Bethea, and Dever stating "Protect my Job" listing the posting plaintiff has on Twitter.[29]

---

[21]https://drive.google.com/file/d/1LpUV7k5HubtXlGr2mOmRJM0NbCFHZpul/view?usp=sharing

[22]https://drive.google.com/file/d/1sDVTLOeqpZGkbrp29IKTFulPLMBDZiFz/view?usp=sharing

[23] https://drive.google.com/file/d/1NHIL-8csvVaEkMeYbdVdNULBIxgqaobj/view?usp=sharing

[24] https://drive.google.com/file/d/1vK5oVUn_OgZT5qlylc2BA962gTTxAcIy/view?usp=sharing

[25] https://drive.google.com/file/d/1-noTmKCV2aFqPUthfD-fsKC1WlZ6ANFv/view?usp=sharing

[26]https://drive.google.com/file/d/1mjMO7aF_rgTAr012LX2eQgU_v2nLbUUA/view?usp=sharing

[27] https://drive.google.com/file/d/1Tbk_9SfisjC0b3XBoADRR0itcxK2uiCZ/view?usp=sharing

[28] https://drive.google.com/file/d/11wL3o_zp5f3QHBLlEgnZZcCOB9a4-kRh/view?usp=sharing

80. On September 25, 2020, plaintiff sent an email to defendants in case #20cv6316 and Congressman Davis regarding defendants violating plaintiff's Whistleblower rights.[30]

81. On September 25, 2020, plaintiff sent this email to Dever, Bethea, and Willis along with another DOJ person about plaintiff's Whistleblower complaints.[31]

82. On September 27, 2020, Dr. Wash admits plaintiff's company C.L.I.C.K. Services, NFP partnered with EMAGES, Inc. when she asks "Is this the grant we applied for?[32]

83. On September 26, 2020, plaintiff sent an email to all consultants instructing them to differentiate to the SCA Groups that their program was not terminated because of fees not being paid.[33]

84. On September 29, 2020 plaintiff filed all 3 Whistleblower complaints with the Office of Special Counsel.[34]

85. On September 29, 2020, plaintiff received an email from DOJ reporting the financial manager of the SCA Grant was requested by plaintiff and was removed.[35]

86. Plaintiff never requested anything from JustGrants.

87. On September 30, 2020, plaintiff received an email from DOJ stating he was enrolled in their program.[36]

88. On September 30, 2020, plaintiff received an email from DOJ reporting he was enrolled

---

[29]https://drive.google.com/file/d/1wytNOBFBCiKMjr4SraNiQOmpv4Sy21pE/view?usp=sharing
[30] https://drive.google.com/file/d/1y8fgccKsQl_FCOpiw4bH0QJY8VeU4byK/view?usp=sharing
[31]https://drive.google.com/file/d/12Ki32A4_YZSoOgKxmRzzDCp0_Jkmq3Pb/view?usp=sharing
[32]https://drive.google.com/file/d/16UAZh4WIaXck1ynqGjBT7hjhgzCW7TQE/view?usp=sharing
[33] https://drive.google.com/file/d/1mquLkz73-GHyTXrsrA3Yg0RrmtMsiEtI/view?usp=sharing
[34]https://drive.google.com/file/d/1fGDiuxZwzZ3XG1_QY70Du3HBL9W_u70R/view?usp=sharing
[35]https://drive.google.com/file/d/1aBZ0IQWb4Zc9Qk0R7zYpvn1ejTDUQqf0/view?usp=sharing
[36] https://drive.google.com/file/d/15dCF0d-WeboPitWsYFZ4kqbNSn5GFEB3/view?usp=sharing

in JustGrants.[37]

89. Dr. Wash did not provide plaintiff with copies of drawdowns for June 2020, August 2020, and September 2020; plaintiff provides Mentor Contractual Fees for January 2020 thru September 2020, which is discussed in plaintiff's 2nd & 3rd Whistleblower complaints as misappropriation of funds and fraud.[38]

90. On October 9, 2020, plaintiff filed the MA`AT quarterly (July thru September 30, 2020) report.[39]

91. There is nothing in the July 1, 2020 thru September 30, 2020 quarterly report to support Dr. Wash's claim of the Coronavirus affecting the attendance and quality of the teleconferencing mentoring services being provided to our population.

92. On October 13, 2020, plaintiff received an email determination letter from the OIG addressing only "part" of plaintiff's 2nd Whistleblower complaint, denying plaintiff's retaliation allegation.[40]

93. On October 13, 2020, plaintiff sent an email addressed to Congressman Davis, copying DOJ Office of Inspector General, and all defendants regarding the violation of plaintiff's Whistleblower rights.[41]

94. On October 15, 2020, plaintiff sent an email to Congressman Davis and all defendants responding to DOJ, BJA, OJP Dever reporting the real duties of the Grant Administrator, which prompted plaintiff to immediately start this litigation.[42]

---

[37]https://drive.google.com/file/d/1u04HCwNNHZVtztAhkqV6w4esQvGfpX2g/view?usp=sharing
[38] https://drive.google.com/file/d/16LVkuqjr7PUhqfzP2thjXmVZ9wgYML23/view?usp=sharing
[39] https://drive.google.com/file/d/17r0uhstcAniUUwNAVnEM1wijt9SAYs6T/view?usp=sharing
[40]https://drive.google.com/file/d/1AQQUCVAiUwIi4sFbtlfVmqIYh1_SVXbm/view?usp=sharing
[41] https://drive.google.com/file/d/1o6iOFQieT1ZWzd4I0e8pTp4IYx8rtBGQ/view?usp=sharing

95. Plaintiff was under the impression that being the Grant Administrator DOJ, BJA, OJP had given C.L.I.C.K. Services, NFP the grant since Dr. Wash said she would give the grant up and plaintiff could have it.

96. On October 17, 2020, plaintiff sent an email to DOJ, BJA, OJP Dever, Bethea, Willis, Congressman Davis and the TA with attachments labeled DOJ, BJA, OJP et al Violation of Whistleblower Act NDAA 2013 & 41 U.S.C. § 4712.[43]

97. On October 19, 2020, plaintiff received an email from DOJ reporting another denial of an appointment plaintiff supposedly had requested, which plaintiff has not offered anyone or anything to be approved.[44]

98. On October 19, 2020, plaintiff received an email from DOJ reporting another denial, which plaintiff has not requested approval for anyone.[45]

99. DOJ, BJA, OJP employee Dever sent plaintiff an email stating "If C.L.I.C.K. Services would like to apply for a Second Chance Act Community-Based Program grant as a direct recipient or through a partnership with another organization to continue serving the community in FY 2021, please know that we will be announcing the Second Chance Act Solicitations this Fall."

100. DOJ, BJA, OJP announced BJA FY 21 Second Chance Act Community-Based Reentry Program Solicitation.

101. Plaintiff's organization "C.L.I.C.K. Services, NFP" attempted to submit an

---

[42]https://drive.google.com/file/d/1QV8PqvycR9cHTCAKyuq1AUWNX_drnrIp/view?usp=sharing
[43]https://drive.google.com/file/d/1mu4dJhAhL_cfA-qormV_ignmKiJIZme9/view?usp=sharing

[44] https://drive.google.com/file/d/1jNV2yjh9_m3U02s-dF-CsEFSgyQ25GUH/view?usp=sharing
[45] https://drive.google.com/file/d/1KgXNYUtfoGmgcyD2VAXDGjbAtSJANC6t/view?usp=sharing

application for this solicitation but missed the deadline for submission because the JustGrants website had technical glitches/difficulties.

102.    Plaintiff sent an email requesting re-submission of his application.

https://drive.google.com/file/d/1EUCMvv5_TDwpdv8nW51eTUG-bco3yRNd/view?usp=sharing

103.    On April 29, 2021 Ms. Bernice Horne and Abitha William (hereinafter,"Bernice") of BETHA Associates, Inc. (OJP Peer Review Support Services) contacted plaintiff via email requesting his availability to peer review the FY 2021 Second Chance Act Community-Based Reentry Program, which is the process.

104.    Plaintiff accepted the invitation to peer review this solicitation.

105.    Bernice responded via email stating "Dr. Fred Nance Jr., Thank you for reaching out. Yes, please follow the steps of clicking on the JustGrants Peer Review Portal icon and completing your contact information."

106.    DOJ, BJA, OJP's JustGrants system had technical difficulties and due to these technical difficulties plaintiff's application was rejected on the deadline date.

https://drive.google.com/file/d/1XgybfQTktyYdGuNjRVBv1CKRGX4sFinK/view?usp=sharing

107.    Plaintiff went through complaint procedure as instructed by the JustGrants system filing an appeal.

108.    On May 25, 2021, DOJ, BJA, OJP's Bethea sent an email to plaintiff stating "The Office of Justice Programs (OJP) has received your appeal in response to the Second Chance Act Community-based Reentry FY 2021 grant solicitation. After careful consideration of your case, unfortunately the decision has been made to deny your appeal…."

https://drive.google.com/file/d/1J4YrDshEzzK7PXPiaeRTOmnhmsYQD03W/view?usp=sharing

109.    On May 25, 2021, plaintiff responded to Bethea's email filing a supplement to his original complaint, which this District Court did not respond to except for denying the supplement to the original complaint, and this statement in his email, which plaintiff posted on his Twitter page at: www.twitter.com/clickforjustice "Please be advised: I have added this issue to my present litigation Nance vs DOJ, et al. I am still requesting Congressman Danny K. Davis allow me to testify before the Ways and Means Committee and the Appropriation Committee regarding DOJ, BJA, OJP discriminatory and disenfranchising processes and policy, which is discussed in Nance vs DOJ, et al. DOJ, BJA, OJP has a new system JustGrants. JustGrants is used among other things to submit grant applications. JustGrants has unforeseen errors which prevent grant application submissions. Nance vs DOJ Federal court.

https://drive.google.com/file/d/1FWDmUK8vPaT8oBLjmuGIBs-qVszruTSb/view?usp=drivesdk

110.    On May 26, 2021, Bethea sent the following email to plaintiff stating "…The Office of Justice Programs (OJP) has received your request to apply late in response to the Second Chance Act Community-based FY 2021 grant solicitation. We understand that your agency experienced technical difficulties while using our new system Justice Grants System (JustGrants), and we are pleased to offer additional time to submit/ complete your application. This represents a change in our decision as previously communicated. We will be opening Second Chance Act Community-based FY2021 grant solicitation on 7 am EST on May 27, 2021 to 1:00 pm EST on May 28, 2021.  Please log in to JustGrants during this time to submit/ complete your application.

https://drive.google.com/file/d/15kgU5nleYdieSu4U2dFvRhp2C2XeNXuy/view?usp=sharing

111.    On Monday, June 7, 2021, 09:47:24 AM CDT, Horne, Bernice
    <bernice.horne@leidos.com> wrote: Dear Reviewers, You've been selected to participate

on the FY 21 Second Chance Act Community-Based Reentry Program peer review.

Below are the details for the Orientation Call.

112. Bernice et al. were on the Orientation Call, including DOJ, BJA, OJP employee Bethea.

113. Bernice informed all peer reviewers on the call we would receive our peer review assignments within 24 hours. Bernice also sent this message via email

> "Dear Reviewers, A replay of today's live Orientation Session will be available for your review after **4:00 p.m ET**. You may access the replay by following the dial in information provided below. If you were unable to participate in the live orientation call earlier today, it is mandatory for you to access the replay of this session prior to getting started on the review. **Please note: When accessing the replay you will be prompted to 'state your name'. Please ensure that you clearly enunciate both your first and last name, so that your replay access is captured by the conferencing system. **Replay Dial-in Number: 855-859-2056 Conference ID: 5679036#** The replay recording will be available until 06/21/2021 Please contact me if you have any questions or concerns. Thank you." Since 2009 this has been the normal response since plaintiff has been a peer reviewer before receiving our assignments.

114. On June 7, 2021, plaintiff sent this email to his Executive team (C.L.I.C.K. Services NFP) regarding the JustGrants application and possible retaliation.

https://drive.google.com/file/d/1kMRECPtMTfDA-9XGF7pJDbnIot34BLYb/view?usp=sharing

115. On June 8, 2021, plaintiff sent this email to Bernice et al. "I have not received

anything since listening to the orientation call on June 7, 2021. When will I receive the email giving me access to the grant applications for peer review? During the orientation call it was said we would receive information via email on proceeding by the end of business on June 8, 2021. Please respond. Thank you"

116. On June 9, 2021, plaintiff wrote this email to himself regarding the possible ongoing retaliation and DOJ et al. in case #20cv6316.

https://drive.google.com/file/d/1nxo_wQ9NYm3Glx9N_4zUwTny1J7zloMp/view?usp=sharing

117. On June 9, 2021, plaintiff sent an email to Bernice et al. stating "Since you guys are failing to respond to my inquiry, I will include you in my ongoing Whistleblower complaints with the Office of the Inspector General, General Council for retaliation. I am attaching our email communications regarding this 2021 peer review process to my Whistleblower complaints. I know Andre Bethea is behind this retaliation, which I have already reported. I anticipated this retaliatory action."

118. On June 9, 2021, Bernice et al. sent an email to plaintiff stating "Hello Dr. Nance, Thank you for reaching out. We appreciate your time and patience while we finalized the panel composition for this grant. As there are fewer applications going forward to peer review than initially anticipated, we will not need to utilize the total number of peer reviewers initially invited to participate.

119. On June 9, 2021, plaintiff responded stating "What are you saying here? Have I been taken off this peer review? Please respond. Thank you."

120. On Thursday, June 10, 2021, 12:01:04 PM CDT, Horne, Bernice <bernice.horne@leidos.com> wrote: "Dear Dr. Nance, You are not eligible to serve on this peer review panel. Peer reviewers must comply with BJA's conflict of interest rules and regulations.

A peer reviewer cannot have a financial relationship with an organization that submitted an application under the solicitation being peer reviewed. Thank you for your interest."

https://drive.google.com/file/d/110suEuqQ9t5CfIgeDK7hPUhoud0avhPu/view?usp=sharing

121.     Bernice et al. are changing their statements for why plaintiff is being retaliated against. This has never happened to plaintiff in 12 years! Decision have always been made to exclude peer reviewers "before" the peer review Orientation call! When the Orientation call is made BETHA Associates, Inc. staff know what peer reviewers are needed.

122.     On June 10, 2021, plaintiff sent the following messages via email to Bernice et al. "I worked for you guys on the 2019 peer review team with the same grant, which I had a financial interest with another grant #2018-CY-BX-0025. I also worked on the same grant in 2020 for you guys while I had a financial interest with another grant# 2018-CY-BX-0025."

123.     This decision has DOJ, BJA, OJP Bethea's fingerprints all over it. Bethea is retaliating against plaintiff due to this litigation.

124.     On June 10, 2021, plaintiff filed a Motion to Stay Proceedings in case #20cv6316 (Dkt. #66) and attached exhibits (Dkt. #66-1), which included this "new" issue that the District Court did not fully address.

125.     The actions of DOJ, BJA, OJP, and possible conspiratorial connections to and between EMAGES, Inc. and Dr. Wash, are ongoing and happened after the District Court's Memorandum Opinion and Order of June 8, 2021, in case #20cv6316.

## CAUSES OF ACTION

Plaintiff claims the United States and all defendants employed by the United States Department of Justice, Bureau of Justice Assistance, Office of Justice Programs listed in this complaint violated the National Defense Authorization Act of 2013, amended 2016 (NDAA)

Whistleblower Protections provisions of 828 of Pub. L. No. 112-239, 126 Stat. 1632 (2013), as amended by Pub. L. No. 114-261, 130 Stat. 1362 (2016), 10 U.S.C. §2409; 41 U.S.C. §4712; 5 U.S.C. §1221(e)(1), Federal Tort Claims Act (FTCA), and the Federal Claims Act (FCA) directly and indirectly causing the termination of plaintiff's employment, specifically, and the United States DOJ employees Michael Dever, Andre Bethea, and Tracey Willis for not sufficiently investigating plaintiff's claims against EMAGES, Inc., Dr. Hattie Wash and restoring plaintiff's employment.

The United States employees actively conspired, colluded, and/or work collaboratively with EMAGES, Inc. and Dr. Hattie Wash in violating the Whistleblower Act by allowing Dr. Wash's letter to stand as a true statement for terminating a grant violating the Whistleblower Act, which terminated plaintiff's employment evidenced via the content of plaintiff's 3 Whistleblower complaints submitted on the OIG Hotline and via U.S. mail, and emails to United States DOJ employees. In addition, plaintiff provides case law to negate the false United States DOJ employees alleged claim of an employee/employer relationship leading to plaintiff's termination. Plaintiff was terminated because all United States defendants in case #20cv6316, specifically for this litigation, the United States DOJ employees violated the Whistleblower Act of 2013, amended 2016 et seq. and other statutes mentioned in this complaint.

## COUNT 1

### National Defense Authorization Act (NDAA) of 2013 et seq.

Plaintiff asserts his allegations contained in the opening paragraphs and paragraphs 1- 125 above as if stated herein these paragraphs, along with "all" paragraphs below.

126.     United States DOJ, BJA, OJP defendants violated plaintiff's Whistleblower rights.

## COUNT 2

### 41 U.S.C. § 4712

Plaintiff asserts his allegations contained in the opening paragraphs and paragraphs 1- 126 above as if stated herein these paragraphs, along with "all" paragraphs below.

127.    This statute provides: An employee of a contractor, subcontractor, grantee, or subgrantee or personal services contractor may not be discharged, demoted, or otherwise discriminated against as a reprisal for disclosing to a person or body described in paragraph (2) information that the employee reasonably believes is evidence of gross mismanagement of a Federal contract or grant, a gross waste of Federal funds, an abuse of authority relating to a Federal contract or grant, a substantial and specific danger to public health or safety, or a violation of law, rule, or regulation related to a Federal contract (including the competition for or negotiation of a contract) or grant. 41 U.S.C. § 4712(a)(1).

## COUNT 3

### Federal Tort Claims Act

Plaintiff asserts his allegations contained in the opening paragraphs and paragraphs 1- 127 above as if stated herein these paragraphs, along with "all" paragraphs below.

128.    Under the FTCA, 28 U.S.C. §§ 2671-2680, individuals who are injured or whose property is damaged by the wrongful or negligent act of a federal employee acting within his or her official duties may file a claim with the government for reimbursement for that injury or damage. To state a valid claim, the claimant must demonstrate that: he or she was injured, or his or her property was damaged by a federal government employee; the employee was acting within the scope of his or her official duties; the employee was acting negligently or wrongfully; and the negligent or wrongful act proximately caused the injury or damage of which he or she complains.

## COUNT 4

## FALSE CLAIMS ACT

Plaintiff asserts his allegations contained in the opening paragraphs and paragraphs 1- 128 above

as if stated herein these paragraphs, along with "all" paragraphs below.

129.     The FCA provided that any person who knowingly submitted false claims to the

government was liable for double the government's damages plus a penalty of $2,000 for each

false claim.  The FCA has been amended several times and now provides that violators are liable

for treble damages plus a penalty that is linked to inflation. In addition to allowing the United

States to pursue perpetrators of fraud on its own, the FCA allows private citizens to file suits on

behalf of the government (called "*qui tam*" suits) against those who have defrauded the

government.

### Retaliation

Plaintiff asserts his allegations contained in the opening paragraphs and paragraphs 1-129 above

as if stated herein these paragraphs, along with "all" paragraphs below.

130.     Retaliation occurs when an employer (through a manager, supervisor, or

administrator) fires an employee or takes any other type of adverse action against an employee

for engaging in protected activity.

131.     An adverse action is an action which would dissuade a reasonable employee from

raising a concern about a possible violation or engaging in other related protected activity.

Retaliation can have a negative impact on overall employee morale.

132.     Back pay is compensation for lost wages and benefits that the whistleblower

would have earned absent the adverse employment action, offset by interim earnings. A backpay award may include all promotions and salary increases the complainant would have received in the absence of retaliation.

## COUNT 5

### Hostile Work Environment

Plaintiff asserts his allegations contained in the opening paragraphs and paragraphs 1- 132 above as if stated herein these paragraphs, along with "all" paragraphs below.

133.      A hostile work environment is defined as "a work environment which promotes or permits discriminatory behavior towards an employee or class of employees based on the employee's age, race, gender, natural origin, disability or religion." Additionally, discriminatory actions that are taken in retaliation to rights protected by state and federal laws also qualify as creating a "hostile work environment."

## COUNT 6

### Emotional Distress

Plaintiff asserts his allegations contained in the opening paragraphs and paragraphs 1- 133 above as if stated herein these paragraphs, along with "all" paragraphs below.

134.      Whistleblower retaliation can exact a serious toll, including lost pay and benefits, reputational harm, and emotional distress.

## COUNT 7

### Special Damages

Plaintiff asserts his allegations contained in the opening paragraphs and paragraphs 1- 134 above as if stated herein these paragraphs, along with "all" paragraphs below.

135.      Sometimes, the retaliatory actions of an employer cause an employee to lose

more than their job. Sometimes they are embarrassed, have suffered mentally and emotionally, and their reputation has been damaged. In these cases, a whistleblower retaliation lawsuit can also claim special damages.

136.    These damages include emotional distress, mental anguish, humiliation, and injury to reputation. When injury to reputation is claimed, employees can hold employers liable for paying compensation for loss of earning capacity, as they may no longer be able to work in the same industry.

137.    A plaintiff's testimony is typically enough to support a claim for special damages. However, the employee must show substantial evidence of emotional distress, adequately explain the injury, and the testimony must be genuine.

**Relief**

The United States employees violated the National Defense Authorization Act of 2013, amended 2016 (NDAA) Whistleblower Protections provisions of 828 of Pub. L. No. 112-239, 126 Stat. 1632 (2013), as amended by Pub. L. No. 114-261, 130 Stat. 1362 (2016), 10 U.S.C. §2409; 41 U.S.C. §4712; 5 U.S.C. §1221(e)(1), 31 U.S.C. §3730, Federal Tort Claims Act (FTCA), and the Federal Claims Act (FCA). Reinstatement is the "presumptive and preferred remedy." Back pay is compensation for lost wages and benefits that the whistleblower would have earned absent the adverse employment action, offset by interim earnings. A backpay award may include all promotions and salary increases the complainant would have received in the absence of retaliation. Backpay provides compensation for any financial losses the employee sustained as a result of the retaliatory action. These damages often include wages, promotions, stock options, vacation pay, and other benefits. The False Claims Act states that employees who are retaliated against are entitled to twice the amount of back pay they have lost. Pre-judgement

interest is also applied to the total amount of back pay. Interest is added every day from the time the retaliatory action is taken, to just before the judge issues a judgement.

Wherefore, plaintiff respectfully request the following relief: (1) $500,000.00 in monetary damages; (2) approval for a Second Chance Act grant for C.L.I.C.K. Services NFP's Totally Gaming Academy and Trauma Informed Mentoring program in the amount of $750,000.00 for violence prevention and reduction (www.clickservices.org); (3) reprimand of all United States employees involved in this matter; (4) Letters of Support or Letters of Apology addressed to all and any collaborations/networks involved with Grant #2018-CY-BX-0025 exonerating plaintiff of any and all wrongdoing, accusations, or allegations made against plaintiff, such as Illinois Department of Corrections (IDOC), Cook County Department of Corrections (Cook County Jail), IDOC Parole Officers, the Safer Foundation, Inc., especially, President & CEO Victor Dickson; and (5) whatever else this Court deems appropriate and necessary.

Respectfully submitted

/s/Fred L. Nance Jr., Ph.D.
Pro se
17239 Evans Avenue
South Holland, Illinois 60473-3436
708-921-1395
frednance@clickservices.org



**U.S. Department of Justice**

Civil Division, Torts Branch
Federal Tort Claims Act Staff

*Post Office Box 888*
*Benjamin Franklin Station*
*Washington, D.C. 20044*

JGT:GKJ:MMoore:mm
157-16-69193

APR 2 8 2022

CERTIFIED MAIL - 7018 0360 0000 2632 8444
RETURN RECEIPT REQUESTED

Dr. Fred Lee Nance, Jr.
17239 Evans Avenue
South Holland, IL  60473-3436

      Re:  Administrative Tort Claim of Dr. Fred Lee Nance, Jr.

Dear Dr. Nance:

      We have reviewed the administrative tort claim you submitted to the U.S. Department of Justice dated June 9, 2021, relative to the alleged acts or omissions of employees of the Office of Justice Programs, the Bureau of Justice Assistance, and the U.S. Department of Justice occurring from April 2020 to November 2021. After careful consideration, it has been determined that your claim is not compensable. Accordingly, your claim must be and hereby is denied.

      I am required by law (28 C.F.R. § 14.9(a)) to inform you that, if you are dissatisfied with this determination, you may file suit in an appropriate United States District Court no later than six months after the date of mailing of this notification of denial. 28 U.S.C. § 2401(b).

                 Very truly yours,

                 JAMES G. TOUHEY, JR.
                 Director, Torts Branch