UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FRED L. NANCE, Jr., | ) |
| Plaintiff, | ) |
| | ) No. 22 C 3861 |
| v. | ) |
| | ) Judge Alonso |
| UNITED STATES, *et al.*, | ) |
| Defendants. | ) |

**MEMORANDUM IN SUPPORT OF FEDERAL DEFENDANTS'S
MOTION TO DISMISS OR ALTERNATIVELY FOR SUMMARY JUDGMENT**

### Introduction

Plaintiff Fred L. Nance, Jr., claims that he was in a "partnership/collaboration" with EMAGES, Inc., a private, not-for-profit treatment agency that had a Department of Justice grant to conduct a prison-related program under the "Second Chance Act" when EMAGES terminated him, supposedly with the assistance of DOJ. In a previously filed case involving the same claims, the court dismissed Nance's claims with prejudice against the Department of Justice for various reasons, except his Federal Tort Claims Act claim, which the court dismissed *without* prejudice because Nance failed to exhaust his administrative remedies prior to filing suit. *Nance v. Department of Justice, et al.*, No. 20 C 6316,[1] Dkt. 64. Undeterred by this court's dismissal with prejudice of the non-FTCA claims, Nance has refiled identical claims against the Department of Justice based on the same whistleblower statutes and employment-based allegations and based on the same underlying conduct. Nance also repleads his FTCA claim against the United States, and he alleges a new claim based on the False Claims Act (FCA).

---

[1] Pursuant to Fed. R. Civ. P. 42(a) the court should consolidate this case with the previously filed case.

Nance's non-FTCA claims that were alleged in his prior lawsuit should be dismissed for the same reasons they were dismissed previously, and because they are barred by the doctrine of *res judicata.* His FCA claim should be dismissed because non-attorney *pro se* plaintiffs may not prosecute FCA claims, and because his claim was not, as the Act requires, filed in the name of the government or filed *in camera* and under seal, and he failed to provide the government an opportunity to intervene. Nance's FTCA claim should be dismissed because there is no analogous tort liability against a "private individual under like circumstances." 28 U.S.C. §§ 2674, 1346(b). Accordingly, the court should dismiss the complaint against the federal defendants with prejudice, or alternatively grant them summary judgment.

**Facts**

The relevant facts have not changed since Nance's last complaint was dismissed. Briefly, Nance was employed by co-defendant Establishing Managing and Generating Effective Services Inc. ("EMAGES, Inc."), a not-for-profit social service organization that received a grant award in 2018 from DOJ's Office of Justice Programs and the Bureau of Justice Assistance for a prison-related program under the "Second Chance Act" ("SCA"). Defendant's Rule 56.1 Statement of Material Facts ("DSF"), ¶ 1; Mem. Op. at 1, No. 20 C 6316, Dkt. 64. EMAGES was the applicant to the grant program (there were no "co-applicants") and, accordingly, had primary responsibility for funding and managing the program. DSF ¶ 2. As part of the SCA grant program, DOJ made 26 grant awards in fiscal year 2018 totaling more than $20.5 million, one of which was a $500,000 award to EMAGES. DSF ¶ 3. The EMAGES award was scheduled to start on October 1, 2018, and conclude three years later on September 30, 2021. DSF ¶ 4; Mem. Op. at 1, Case No. 20 C 6316, Dkt. 64.

2

Under the relevant grant requirements, recipients were permitted to terminate awards by providing written notice to the awarding agency. DSF ¶ 7; *see* 2 C.F.R. §§ 200.339-343. Accordingly, in September 2020, Hattie Wash, the founder and CEO of EMAGES, informed DOJ that she was terminating the EMAGES award because of, among other things, the COVID-19 pandemic and COVID-related restrictions. DSF ¶¶ 8, 9; Mem. Op. at 3, No. 20 C 6316, Dkt. 64. At or about the time Wash initiated the grant termination process, she apparently terminated Nance's employment with EMAGES. Compl. at 2, No. 20 C 6316, Dkt. 1; Mem. Op. at 4, No. 20 C 6316, Dkt. 64.

Nance, who did not believe the grant award should have been terminated, earlier pursued a "whistleblower complaint" claiming "possible fraud or misappropriation of funds" concerning the EMAGES award, alleging that EMAGES somehow misappropriated the grant award. DSF ¶¶ 10 – 12; Mem. Op. at 2 – 4, No. 20 C 6316, Dkt. 64. Nance pursued his "whistleblower" complaints through the U.S. Office of Special Counsel, which denied his complaints for lack of jurisdiction over individuals who are not federal employees or applicants for federal employment. *Id.*

After the grant was terminated based on EMAGES' request, Nance filed a complaint with this court on October 23, 2020, alleging various claims, including his FTCA claim, against the DOJ. Compl., No. 20 C 6316, Dkt. 1. Because Nance failed to exhaust his administrative remedies prior to filing suit, this court dismissed Nance's FTCA claim against the DOJ without prejudice. Mem. Op., No. 20 C 6316, Dkt. 64. His non-FTCA claims, including his whistleblower and employment-based claims, were dismissed with prejudice. *Id.* at 13. Nance then filed a motion to reinstate his FTCA claim (No. 20 C 6316, Dkt. 110), which the court denied, stating that "[f]uture attempts to reopen the judgment as to the FTCA claim or otherwise to add a claim under the FTCA to this case may be met with sanctions." Order, No. 20 C 6316, Dkt. 123.

On June 9, 2021, Nance filed an administrative FTCA claim with the DOJ, claiming that he was "increasing [his] asking price to 1.25 million dollars." DSF ¶ 16. His FTCA claim again raised the same whistleblower allegations that were previously dismissed by this court with prejudice, and he alleged that the DOJ "worked in concert" with EMAGES to terminate his employment "for filing whistleblower complaints." *Id*. He also alleged that that the DOJ retaliated against him by not allowing him to review applications to a grant program to which Nance had applied for an award through his organization, C.L.I.C.K. Services. *Id*. He further alleged that if his grant application was unsuccessful, it would constitute further retaliation. *Id*. In April 2022, the DOJ denied his claim because it was not compensable under the FTCA. Compl. at 10, Dkt. 1. This complaint followed.

## Argument

Nance repeats allegations that he made against the DOJ in his prior case, all centered around his unsupported belief that a grant award was unlawfully terminated in alleged retaliation for what he labels as "whistleblowing" complaints. He alleges a (1) violation of his whistleblower rights under the National Defense Authorization Act of 2013; (2) violation of 41 U.S.C. § 4712 in connection with EMAGES' request to terminate its grant award; (3) violation of the FTCA; (4) violation of the FCA; (5) retaliation; (6) hostile work environment; (7) emotional distress; and (8) a claim for "special damages." Compl. at 30 – 36. All of these claims should be dismissed.

Nance's FCA claim should be dismissed because he is ineligible to file a FCA case as a non-attorney pro se litigant. Additionally, he failed to comply with the requirements of the FCA by filing his claim *against* the government rather than *on behalf of* the government; by failing to file his complaint under seal; and by failing to provide the government an opportunity to intervene. Nance's other non-FTCA claims (counts 1-2 and 5-8) should be dismissed for the same reasons this court previously dismissed them with prejudice, and because they are now barred by the

doctrine of *res judicata*. Nance's FTCA claim should be dismissed because no analogous private liability exists against a private individual under like circumstances, as the Act requires, as set forth below.

I.  **There Is No Analogous Tort Liability Against the United States as Required by the FTCA**

Nance's FTCA claim should be dismissed because there is no analogous tort liability against the United States, which is immune from liability except as it consents to be sued. *Lehman* v. *Nakshian*, 453 U.S. 156 (1981). To hold the United States liable, there must be a clear statutory waiver of sovereign immunity. *United States* v. *Mitchell*, 445 U.S. 535, 538 (1980). A plaintiff must strictly and fully comply with the terms of any statutory waiver. *United States* v. *Sherwood*, 312 U.S. 584, 587 (1941). The Act is "a limited waiver of sovereign immunity," and it was not intended to create new causes of action. *United States* v. *Orleans*, 425 U.S. 807, 813 (1976); *Collins* v. *United States*, 642 F.2d 217, 219 (7th Cir. 1981).

One of the conditions to suit is that the FTCA requires analogous tort liability against the government as against a "private individual under like circumstances." 28 U.S.C. § 2674. The jurisdictional provision of the Act, section 1346(b), limits the government's liability to those torts committed by government employees "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the [tortious] act or omission occurred." 28 U.S.C. § 1346(b); *see Feres* v. *United States*, 340 U.S. 135, 141 (1950); *see also Emps. Ins. of Wausau* v. *United States*, 830 F. Supp. 453, 456 (N.D. Ill. 1993), aff'd, 27 F.3d 245 (7th Cir. 1994), *citing Chen* v. *United States*, 854 F.2d 622 (2d Cir.1988) ("As we recently held in *Chen*, 'for liability to arise under the FTCA, a plaintiff's cause of action must be 'comparable' to a 'cause of action against a private citizen' recognized in the jurisdiction where the tort occurred, and his allegations, taken as true, must satisfy the necessary elements of that comparable state cause of action.'"). If a *private person* under

similar circumstances would not be liable to the plaintiff for the alleged conduct, a court does not have jurisdiction to adjudicate the FTCA claim. *United States* v. *Olson*, 546 U.S. 43, 44 (2005).

The FTCA's analogous private liability requirement prevents the Act from creating novel causes of action against the United States and only accepts government liability under "like circumstances" that are functionally equivalent to those where a private individual would be liable. 28 U.S.C. § 2674. As described by the Seventh Circuit, the FTCA's "like circumstances" requirement is designed to prevent state legislatures from using the United States' limited waiver of sovereign immunity to "enrich their own citizens at the expense of the deepest pocket." *Carter* v. *United States*, 982 F.2d 1141, 1143 (7th Cir. 1992). This safeguard is consistent with the FTCA's intent to limit the waiver of sovereign immunity to "ordinary common-law torts" where clear, private analogues exist under state tort law. *United States* v. *Gaubert*, 499 U.S. 315, 325 (1991); *Dalehite* v. *United States*, 346 U.S. 15, 28 (1953).

Accordingly, if the necessary elements of a tort claim under state law are not present, then the case is not cognizable under the FTCA. *Id.* In Illinois, "[t]o recover damages based upon negligence, a plaintiff must prove that the defendant owed a duty to the plaintiff, that the defendant breached that duty, and that the breach was the proximate cause of the plaintiff's injury." *Krywin* v. *Chicago Transit Auth.*, 238 Ill.2d 215, 225 (2010).

Here, Nance has not identified a duty owed to him by the DOJ that was allegedly breached by processing the grant termination request submitted by EMAGES or by disallowing Nance from serving as a reviewer of applications for a grant program where he had a clear conflict of interest. Where a federal government agency terminates a grant award upon the request of a grant recipient (and where an agency does not allow a conflicted individual to review grant applications), no private analog appears to exist, which bars Nance's claim under the FTCA.

6

Besides, even if the DOJ somehow had a legal duty to investigate the reasons why EMAGES decided to terminate its grant award, which it did not, Nance has no evidence to doubt the rationale provided by EMAGES for terminating the grant (operational and financial difficulties caused by COVID-19). In fact, Nance even conceded COVID-related challenges in his prior lawsuit, stating that "[d]ue to Covid-19, in March of 2020, we lost the IDOC Thursday group and the Cook County jail Friday group." Pl. Resp. at 13, No. 20 C 6316, Dkt. 49-3.

Furthermore, Nance has no evidence that DOJ in any way acted in even a remotely negligent manner by processing the EMAGES' grant termination request. *See* Compl. at 25 ("Plaintiff was under the impression that . . . DOJ, BJA, OJP had given C.L.I.C.K. Services, NFP the grant since Dr. Wash said she would give the grant up and plaintiff could have it."). Where a grant recipient is unwilling or unable to perform the activities for which it received the grant, DOJ cannot force the recipient to continue performing grant-funded activities. The public interest is best served through the provision federal funding to grant recipients that are willing and able to perform grant-funded activities. After a grantee requests termination of an award, DOJ processes that termination, which is followed by the closeout process, as described at 2 C.F.R. § 200.344. Here, DOJ properly processed a grant termination request initiated by the recipient, EMAGES, in the ordinary course of business and pursuant to applicable laws and regulations, and Nance has no evidence to the contrary.

Also, Nance does not even allege that the DOJ caused the grant termination, nor could he since the termination request was initiated by EMAGES. In any event, Nance's allegations do not constitute an actionable tort under the FTCA. *See, e.g., Paul* v. *United States*, 929 F.2d 1202, 1204 (7th Cir. 1991) ("The Tort Claims Act applies only to torts, and it is hard to see how [plaintiff's] assertions add up to a tort that would be actionable under state law. . . . In what sense is an

7

erroneous administrative decision a tort? The FTCA is not a back door to review of the administrative decision.").

Also, the "quasi-legislative or quasi-adjudicative action by an agency of the federal government is action of the type that private persons could not engage in and hence could not be liable for under local law." *Wausau*, 830 F. Supp. at 456 (*citing C.P. Chemical Co.* v. *United States*, 810 F.2d 34, 37-38 (2d Cir.1987)); *see also Jayvee Brand, Inc.* v. *United States*, 721 F.2d 385, 391 (D.C. Cir. 1983) ("Appellants ask us to make a major innovation in the law by holding that the FTCA provides damage actions as an additional means of policing the internal procedures of governmental agencies. They have not, however, given us particularly good reasons for such an extraordinary step, and everything we have seen counsels against it."). That is exactly the sort of government action that Nance claims occurred here, which has no private-party analogue, as set forth above.

Even if Nance's claim may be hypothetically analogized to a claim of tortious interference with contract rights (although DOJ had no contract with Nance concerning the grant award at issue), such a claim would be barred by the intentional tort exclusion of the FTCA. 28 U.S.C. § 2680(h). The section 2680(h) intentional tort exclusion also covers claims based on negligent and intentional misrepresentation. *United States* v. *Neustadt*, 366 U.S. 696, 706-707 (1961). Accordingly, if Nance's claims were framed as alleged deceit or misrepresentation by DOJ employees about the basis for terminating the grant award in question, such a claim would also be barred under the section 2680(h) because claims that are not specifically listed in section 2680(h) are still barred when the claim can be fairly interpreted to be "fundamentally grounded" on an excepted cause of action. *Preston* v. *United States*, 596 F.2d 232, 237-238 (7th Cir. 1979); *Atorie Air, Inc.* v. *FAA of U.S. DOT*, 942 F.2d 954, 958 (5th Cir. 1991); *Fitch* v. *United States*, 513 F.2d 1013, 1015 (6th Cir. 1975). "For example, a plaintiff cannot avoid the reach of section 2680(h)

8

by framing his complaint in terms of a negligent failure to prevent the excepted harm." *McNeily* v. *United States*, 6 F.3d 343, 347 (5th Cir. 1993) (*citing Garcia* v. *United States*, 776 F.2d 116, 118 (5th Cir. 1985)).

Nance also alleges fraud but the FTCA does not provide a cause of action against the United States "arising out of" fraud (*i.e.*, misrepresentation, deceit, or interference with contract rights). 28 U.S.C. § 2680(h); *see, e.g., Paul* v. *United States*, 929 F.2d 1202, 1204 (7th Cir. 1991). In addition, if Nance were alleging a civil conspiracy, such a claim would be fairly encompassed within the meaning of "deceit" for purposes of section 2680(h). *See, e.g., Paul*, 929 F.2d at 1204, *citing Neustadt*, 366 U.S. 696 ("Deceit is intentional manipulation through lies or material omissions when there is a duty to speak . . . ."); *see Illinois Farmers Insurance Co.* v. *Preston*, 505 N.E.2d 1343 (1987) (civil conspiracy under Illinois law involves intent to commit an unlawful act); *Jones* v. *City of Chicago*, 856 F.2d 985, 992-993 (7th Cir.1988) ("There is no such thing as accidental, inadvertent or negligent participation in a conspiracy."); *see also Mendrala* v. *Crown Mortg. Co.*, No. 88 C 7386, 1990 WL 129602, at *2 (N.D. Ill. Aug. 28, 1990) (FTCA does not waive sovereign immunity for "claims that have deceit or misrepresentation as one of their elements"). Moreover, if Nance had alleged conspiracy as an independent tort, this claim would also fail because conspiracy is not an independent cause of action in Illinois. *Thomas* v. *Fuerst*, 803 N.E.2d 619, 625-626 (Ill. App. 2004), *citing Indeck North American Power Fund, L.P.* v. *Norweb plc*, 735 N.E.2d 649 (2000). Therefore, even if Nance designated his claims as negligence, civil conspiracy, or breach of contract, his claims are still barred by section 2680(h) because they arise from his allegations of misrepresentation and fraud.

Furthermore, Nance's requests for injunctive relief in the form of a "reprimand" for DOJ employees, and "letters of support or letters of apology" addressed to "all and any collaborations/networks involved with [the grant] exonerating [Nance] of any and all wrongdoing"

9

(Compl. at 35-36) are not cognizable under the FTCA. 28 U.S.C. § 1346(b)(1). His complaint also requests prejudgment interest, which is not recoverable under the FTCA. 28 U.S.C. § 2674.

In short, Nance failed to allege facts that the United States owes employees of grant recipients a legal duty to investigate the reasons provided by a grantee for terminating an award, failed to identify any specific duty owed to him by the government that was allegedly breached when the grant was terminated by EMAGES, and failed to even identify any tort actionable under Illinois law that supports his FTCA claim. Accordingly, Nance, who bears the burden of proof, has failed to set forth any claim cognizable against a private party under applicable state law. His FTCA claim should therefore be dismissed.

## II.     Nance's FCA Claim Is Improper.

Nance cannot bring a False Claims Act claim as a *pro se* litigant, and he failed to comply with several FCA procedural requirements in any event. Compl. at 2, 33. The FCA imposes liability upon a person who presents false claims for payment to the United States. 31 U.S.C. §§ 3729-33. The Act prohibits a *pro se* non-attorney relator from bringing a claim on his own behalf. *U.S. ex rel. Szymczak* v. *Covenant Healthcare Sys., Inc.*, 207 F. App'x 731, 732 (7th Cir. 2006), *citing United States ex rel. Lu* v. *Ou*, 368 F.3d 773, 775 (7th Cir. 2004), *abrogated on other grounds by U.S. ex rel. Eisenstein* v. *City of New York, New York, U.S.*, June 8, 2009 ("[A] qui tam relator—even one with a personal bone to pick with the defendant—sues on behalf of the government and not himself. He therefore must comply with the general rule prohibiting nonlawyers from representing other litigants."); *see also Georgakis* v. *Illinois State Univ.*, 722 F.3d 1075, 1077 (7th Cir. 2013) (citations omitted) ("But to maintain a suit on behalf of the government, the relator (as the qui tam plaintiff is termed) has to be either licensed as a lawyer or represented by a lawyer—and [this plaintiff] is neither. A nonlawyer can't handle a case on behalf of anyone except himself.").

Furthermore, under the FCA, a plaintiff must serve the complaint on the government along with written disclosures of "all material evidence and information." 31 U.S.C. § 3730(b)(2). The complaint must be filed *in camera* and remain under seal for at least 60 days and may not be served on the defendant until ordered by the court. *Id.* An FCA claim cannot be filed against the government and must be brought in the name of the government. 31 U.S.C. § 3730(b)(1).

Here, Nance, proceeding *pro se*, cannot bring a FCA claim on his own behalf, as set forth above. Second, he failed to comply with any of the FCA requirements described above. He did not file his complaint under seal, did not wait 60 days to serve his complaint on the defendant; and he filed his complaint *against* the government rather than *in the name of* the government. Compl. at 2, 33. Nance also failed to allege that an employee of the United States presented a false claim for payment. Accordingly, Nance is not only ineligible to bring a FCA case on his own, but his FCA claim disregards the Act's procedural requirements, and it should therefore be dismissed.

**III.    Nance's Other Claims Are Precluded by the Prior Judgment.**

Nance's remaining claims under the National Defense Authorization Act of 2013, and for whistleblower protection (41 U.S.C. § 4712), retaliation, hostile work environment, emotional distress, and "special damages" (Compl. at 30 – 36), were previously dismissed against the DOJ with prejudice. Mem. Op. at 13, No. 20 C 6316, Dkt. 64. Despite that unequivocal ruling, Nance makes self-described "duplicative" claims in this case, which arise from the same transaction or events underlying his previous suit (EMAGES' request to terminate its grant award). Compl. at 7. Those claims should be dismissed because they were already decided.

*Res judicata* bars a claim that was "litigated or could have been litigated in a previous action when three requirements are met: (1) an identity of the causes of action; (2) an identity of the parties or their privies; and (3) a final judgment on the merits." *Bell* v. *Taylor*, 827 F.3d 699, 706 (7th Cir. 2016) (citations and internal quotation marks omitted). The first element of *res*

11

*judicata* is satisfied when an earlier and later claim are "based on the same, or nearly the same, factual allegations." *Herrmann* v. *Cencom Cable Ass., Inc.*, 999 F.2d 223, 226 (7th Cir. 1993).

Here, Nance's claims in both cases arise out of the same transaction: EMAGES' request to terminate its grant award and DOJ processing the termination request supposedly in retaliation for what Nance labels as his whistleblower complaints. In his new complaint, Nance adds additional allegations about his grant application and his ineligibility to review grant applications to a grant program for which he had his own pending grant application, which he alleges constitute further retaliation for his supposed whistleblower complaints. Compl. at 26 – 30. Even with these additional allegations, his new complaint arises out of the same transaction or event as his prior complaint — the termination of the EMAGES award in alleged retaliation for his (dismissed) whistleblower complaints. *See Ross ex rel. Ross* v. *Bd. of Educ. of Twp. High Sch. Dist. 211*, 486 F.3d 279, 283 (7th Cir. 2007) ("The fact that the suits differ in some respects, including the legal theories that [the plaintiff] is advancing and some of the facts she intends to use to prove her right to relief, is not enough to defeat a finding that these cases rely on the same fundamental transaction or series of transactions.").

Second, the identity of the parties is the same in both cases. In his first complaint, Nance filed suit against the DOJ and other co-defendants. In this case, although Nance filed his suit nominally against the United States, the DOJ is in privity to the United States as a federal agency of the federal government. *See, e.g., Licari* v. *City of Chicago*, 298 F.3d 664, 667 (7th Cir. 2002) ("We have recognized that under Illinois law a government and its officers are in privity for purposes of res judicata."). *Res judicata* "applies to and is binding, not only on actual parties to the litigations, but also to those who are in privity with them." *Anchor Glass Container Corp.* v. *Buschmeier*, 426 F.3d 872 (7th Cir.2005). For purposes of res judicata, parties are in privity when "there is commonality of interest between the two entities" and they "sufficiently represent" each

12

other's interests in litigation. *Studio Art Theatre* v. *City of Evansville*, 76 F.3d 128, 131 (7th Cir.1996) (quoting *Tofany* v. *NBS Imaging Sys., Inc.*, 597 N.E.2d 23, 29 (Ind. Ct. App. 1992)). To determine whether parties are in privity, courts apply a "functional approach" that "focus[es] on the general question whether the earlier parties were in some sense proper agents for the later parties." *See Tice* v. *American Airlines*, 162 F.3d 966, 971-72 (7th Cir. 1998); *see also Chicago Dist. Council of Carpenters Pension Fund* v. *Pientka*, No. 84 C 6307, 1985 WL 2320, at *5 (N.D. Ill. Aug. 17, 1985) (finding that for the purposes of res judicata, the plaintiffs were the same as a prior case and noting that "[w]hile all these entities are nominally different, the legal effect of any judgment will be that the defendants will have to pay monies"); *see also Anchor Glass Container Corp.* v. *Buschmeier*, 426 F.3d 872, 879 (7th Cir. 2005) (finding that literal identity of the parties is not required for res judicata to apply as it is binding not only on the actual parties in litigation, but also applies to those who are in privity with those parties).

Here, the DOJ is in privity with the United States because there is a clear commonality of interest between the two entities and the DOJ represents, in a literal sense, the United States' interests. Also, a theoretical judgment in either case would be paid by the federal government, and Nance does not allege any action taken against him by the United States that is separate and distinct from any action taken by the DOJ. Accordingly, the second requirement of *res judicata* is satisfied.

Third, on June 8, 2021, this court addressed the merits and dismissed with prejudice Nance's claims against the government for a violation of his whistleblower rights under the National Defense Authorization Act of 2013, a violation of whistleblower protection law for contractors and grantees (41 U.S.C. § 4712), and his claims of retaliation, hostile work environment, emotional distress, and for "special damages." Mem. Op., No. 20 C 6316, Dkt. 64. Nance disregarded this judgment and makes identical claims here, which arise from the same transaction or events underlying his previous suit. A dismissal with prejudice constitutes a final

13

judgment on the merits. *See Phillips* v. *Shannon*, 445 F.2d 460, 462 (7th Cir.1971) (find that the "overwhelming weight of authority" holds that dismissals with prejudice constitutes a final judgment on the merits). Therefore, the third requirement of *res judicata* is satisfied.

Because all three elements are met, Nance's claims against the government that were previously dismissed by this court with prejudice — his claims for a violation of the National Defense Authorization Act of 2013 (Count 1) and 41 U.S.C. § 4712 (Count 2) and his claims for retaliation, hostile work environment (Count 5), emotional distress (Count 6), and special damages (Count 7) — are precluded by *res judicata*.

### IV.     Nance's Complaint Does Not Meet *Iqbal* and *Twombly* Standards

Even if Nance's claim could be an actionable tort, which it is not, and even if Nance had alleged a waiver of sovereign immunity sufficient to grant jurisdiction over the United States for conspiring to, and aiding and abetting an unlawful grant termination, which he has not, Nance has not met the pleading standards required by the Supreme Court in *Bell Atlantic Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007) and *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009).

In *Twombly* and *Iqbal* the Supreme Court made clear that a complaint must contain enough factual matter to state a plausible claim and must provide sufficient facts to "nudge[] their claims across the line from conceivable to plausible" (*Twombly*, 550 U.S. at 570) such that the court can reasonably infer that the defendant is liable for the alleged misconduct, and that the court's task on a motion to dismiss depends on the context, requiring the court to "draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 678-79. Nance's allegations do not meet the *Twombly* and *Iqbal* standards. Compl. at 13, 30, 31.

For example, Nance provides no details to support his claim that the DOJ had any duty to investigate the plausible reasons provided by EMAGES for terminating the grant or that DOJ terminated the award for an improper purpose. He provides only conclusory allegations that DOJ

employees committed wrongdoing by letting a termination request "stand as a true statement." Compl. at 31. Nance provides no facts that would allow a court to reasonably infer that DOJ had "possible conspiratorial connections" with EMAGES and Wash (Compl. at 30), nor does he offer facts suggesting that DOJ did anything other than approve the termination request by EMAGES, of facts indicating that he was not allowed to review applications to a grant program where he had a clear and obvious conflict of interest. Without more factual matter, common sense does not permit a reasonable inference that DOJ unlawfully terminated the award, or otherwise acted conspiratorially, or aided and abetted an improper act or purpose to violate Nance's rights.

## Conclusion

For the foregoing reasons, this court should dismiss the claims against the federal defendants in their entirety with prejudice, or alternatively grant them summary judgment.

Respectfully submitted,

JOHN R. LAUSCH, Jr.
United States Attorney

By: s/ Kurt N. Lindland
KURT N. LINDLAND
Assistant United States Attorney
219 South Dearborn Street
Chicago, Illinois 60604
(312) 353-4163
kurt.lindland@usdoj.gov