UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FRED L. NANCE, Jr., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 22 C 3861 |
| v. | ) | |
| | ) | Judge Alonso |
| UNITED STATES, *et al.*, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S RULE 56.1(a)(3) STATEMENT OF FACTS**
**IN SUPPORT OF ITS MOTION TO DISMISS OR FOR SUMMARY JUDGMENT**

Defendants, United States and the U.S. Department of Justice, through their attorney, John R. Lausch, Jr., United States Attorney for the Northern District of Illinois, submit in accordance with Local Rule 56.1, the following statement of material facts in support of defendants' motion to dismiss or alternatively for summary judgment:

1.      In 2018, co-defendant Establishing Managing and Generating Effective Services Inc. ("EMAGES, Inc.") received a grant award from DOJ's Office of Justice Programs and the Bureau of Justice Assistance for a prison related program under the "Second Chance Act" ("SCA"). Complaint at 13; Exhibit A, EMAGES award information.

2.      EMAGES was the sole applicant to the grant program and, accordingly, had primary responsibility for funding and managing the program. Hattie Wash, the President and CEO of EMAGES, was the authorized grantee official and the project director. Exhibit B, EMAGES Award.

3.      As part of the SCA grant program, DOJ made 26 grant awards in fiscal year 2018 totaling more than $20.5 million, one of which was a $500,000 award to EMAGES. Exhibit C,

1

BJA FY 18 Second Chance Act Comprehensive Community-Based Adult Reentry Program award information.

4.      The EMAGES award was scheduled to start on October 1, 2018, and conclude on September 30, 2021.  Complaint at 13; Exhibit D, BJA Second Chance Act solicitation at 13.

5.      Through the grant solicitation, DOJ notified the applicants of the eligibility requirement that only one entity may be the applicant. *Id*. at 2. The applicant must be the entity that would have primary responsibility for carrying out the award, including administering the funding and managing the entire program. *Id*.

6.      In accordance with the eligibility requirement, DOJ only considered one applicant entity, EMAGES, for the award in question, not Nance or his company, and therefore the grant was awarded to EMAGES. Exhibit A, EMAGES award information; Exhibit D, BJA Second Chance Act solicitation  at 2.

7.      Under the relevant requirements that applied to EMAGES' grant award, recipients are permitted to terminate awards by providing written notice to the awarding agency. *See* 2 C.F.R. §§ 200.339-343.

8.      In September 2020, Hattie Wash, the founder and CEO of EMAGES, informed DOJ that she was terminating the EMAGES award because of, among other things, the COVID- 19 pandemic and COVID-related restrictions. Exhibit E, EMAGES Termination letter; Complaint at 22.

9.      In the written notice provided to DOJ, Wash stated that COVID-19 and related restrictions created financial instability for EMAGES and "prevented EMAGES from fulfilling the [p]erformance measures of the Second Chance grant" and that although telehealth services permitted EMAGES to continue providing services to some individua ls, the "[s]helter in [p]lace

2

mandate for the State of Illinois has prevented us from collecting data inside Cook County Jail and the Illinois Department of Correction." Exhibit E, EMAGES Termination Letter.

10.     In April 2020, Nance pursued a "whistleblower complaint" claiming "possible fraud or misappropriation of funds" concerning the EMAGES award, alleging that EMAGES misappropriated the grant award. Exhibit F, April 17, 2020, Letter.

11.     Nance pursued his "whistleblower" complaints through the U.S. Office of Special Counsel, which denied his complaints, noting that it lacked jurisdiction over individuals who are not federal employees or applicants for federal employment. Exhibit G, OSC letter.

12.     Nance then pursued his "whistleblower complaint" with the Office of the Inspector General, where he repeated his allegation that EMAGES drew down grant funds for an ex-employee, and claimed that Wash retaliated against him for reporting the questioned drawdowns by removing him as the point of contact for the grant award and that Wash reduced Nance's salary under the grant. Exhibit H, August 28, 2020, Letter; Complaint at 20.

13.     Nance alleges that EMAGES improperly drew down $3,050 in grant award funds for an ex-employee. Compl. at 18. This small amount (which was addressed and investigated by OJP's accounting division) represents about 0.61% of the entire $500,000 grant award.

14.     The OIG rejected Nance's complaint stating "[w]e do not believe that you have alleged that you suffered a reprisal in violation of [41 U.S.C.] § 4712(a)." Exhibit I, OIG letter. OIG further found that Nance's complaint failed to allege that he made a protected disclosure (*i.e.*, a communication that, among other things, reasonably evidenced gross mismanagement of a federal contract or grant, a gross waste of federal funds, an abuse of authority relating to a federal contract or grant, a substantial and specific danger to public health or safety, or a violation of law, rule, or regulation related to a federal contract (including the competition for or negotiation of a contract) or grant) and that

"significant doubt surrounds whether your complaint alleges that you suffered a personnel action, as contemplated under § 4712(a)." *Id.*

15.      Nance is not an employee of the Department of Justice. Compl. at 3.

16.      Nance filed an FTCA claim with the DOJ on June 9, 2021, claiming that he was "increasing my asking price to 1.25 million dollars." Ex. J, FTCA claim. His FTCA claim again raised the same whistleblower allegations that were previously dismissed by this court with prejudice, and he alleged that the DOJ "worked in concert" with EMAGES to terminate his employment "for filing whistleblower complaints." *Id*. at 2. He also alleged that that the DOJ retaliated against him by not allowing him to review applications to a grant program to which Nance had applied for an award through his organization, C.L.I.C.K. Services. *Id*. He further alleged that if his grant application was unsuccessful, it would constitute further retaliation. *Id*.

Respectfully submitted,

JOHN R. LAUSCH, Jr.
United States Attorney

By: s/ Kurt N. Lindland
    KURT N. LINDLAND
    Assistant United States Attorney
    219 South Dearborn Street
    Chicago, Illinois 60604
    (312) 353-4163
    kurt.lindland@usdoj.gov