UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FRED L NANCE JR | ) | |
| | ) | CASE # 22 CV 3861 |
| PLAINTIFF | ) | |
| | ) | HONORABLE JUDGE |
| VS | ) | JORGE L ALONSO |
| | ) | HONORABLE MAGISTRATE JUDGE: |
| UNITED STATES, et al. | ) | BETH W. JANTZ |
| | ) | |
| DEFENDANTS. | ) | Courtroom: 1903 |

**PLAINTIFF RESPONSE TO DEFENDANT'S STATEMENT OF MATERIAL FACTS**

NOW COMES, Pro se Plaintiff pursuant to LR 56(1)(b)(2) with an affidavit, submits the following:

1. In 2018, co-defendant Establishing Managing and Generating Effective Services Inc. ("EMAGES, Inc.") received a grant award from DOJ's Office of Justice Programs and the Bureau of Justice Assistance for a prison related program under the "Second Chance Act" ("SCA"). Complaint at 13; Exhibit A, EMAGES award information.

**RESPONSE**: Untrue. On or about October 1, 2018, EMAGES, Inc. received grant #2018-CY-BX-0025 Second Chance Act Comprehensive Community-Based Adult Reentry Program. Defendants cite the wrong page number for plaintiff's complaint.

2. EMAGES was the sole applicant to the grant program and, accordingly, had primary responsibility for funding and managing the program. Hattie Wash, the President and CEO of EMAGES, was the authorized grantee official and the project director. Exhibit B, EMAGES Award.

**RESPONSE**: Untrue. EMAGES was the sole applicant to the grant program.

3. As part of the SCA grant program, DOJ made 26 grant awards in fiscal year 2018

totaling more than $20.5 million, one of which was a $500,000 award to EMAGES. Exhibit C, BJA FY 18 Second Chance Act Comprehensive Community-Based Adult Reentry Program award information.

**RESPONSE**: Plaintiff does not know if DOJ made 26 grant awards. EMAGES was awarded a $500,000 grant.

4. The EMAGES award was scheduled to start on October 1, 2018, and conclude on September 30, 2021. Complaint at 13; Exhibit D, BJA Second Chance Act solicitation at 13.

**RESPONSE**: EMAGES award was for the period of October 1, 2018 through September 30, 2021. Defendants cite the wrong page number for plaintiff's complaint.

5. Through the grant solicitation, DOJ notified the applicants of the eligibility requirement that only one entity may be the applicant. Id. at 2. The applicant must be the entity that would have primary responsibility for carrying out the award, including administering the funding and managing the entire program. Id.

**RESPONSE**: Untrue. EMAGES was the fiduciary for the grant. Plaintiff was the Program Director and primarily responsible for managing the program.

6. In accordance with the eligibility requirement, DOJ only considered one applicant entity, EMAGES, for the award in question, not Nance or his company, and therefore the grant was awarded to EMAGES. Exhibit A, EMAGES award information; Exhibit D, BJA Second Chance Act solicitation at 2.

**RESPONSE**: EMAGES was awarded grant #2018-CY-BX-0025.

7. Under the relevant requirements that applied to EMAGES' grant award, recipients are permitted to terminate awards by providing written notice to the awarding agency. See 2 C.F.R. §§ 200.339-343.

**RESPONSE**: This is material fact in dispute. Exhibit J, Dkt. #8-10, pp. 31-33; C.F.R. §§ 200.339-343. **§ 200.339** Remedies for noncompliance**.** If a non-Federal entity fails to comply with the U.S. Constitution, Federal statutes, regulations or the terms and conditions of a Federal award, the Federal awarding agency or pass-through entity may impose additional conditions, as described in § 200.208. If the Federal awarding agency or pass-through entity determines that noncompliance cannot be remedied by imposing additional conditions, the Federal awarding agency or pass-through entity may take one or more of the following actions, as appropriate in the circumstances.

**2 CFR 200.340(a)** The Federal award may be terminated in whole or in part as follows:
(1) By the Federal awarding agency or pass-through entity, if a non-Federal entity fails to comply with the terms and conditions of a Federal award; (2) By the Federal awarding agency or pass-through entity, to the greatest extent authorized by law, if an award no longer effectuates the program goals or agency priorities; (3) By the Federal awarding agency or pass-through entity with the consent of the non-Federal entity, in which case the two parties must agree upon the termination conditions, including the effective date and, in the case of partial termination, the portion to be terminated; (4) By the non-Federal entity upon sending to the Federal awarding agency or pass-through entity written notification setting forth the reasons for such termination, the effective date, and, in the case of partial termination, the portion to be terminated. However, if the Federal awarding agency or pass-through entity determines in the case of partial termination that the reduced or modified portion of the Federal award or subaward will not accomplish the purposes for which the Federal award was made, the Federal awarding agency or pass-through entity may terminate the Federal award in its entirety; or (5) By the Federal awarding agency or pass-through entity pursuant to termination provisions included in the

Federal award. (b) A Federal awarding agency should clearly and unambiguously specify termination provisions applicable to each Federal award, in applicable regulations or in the award, consistent with this section. (c) When a Federal awarding agency terminates a Federal award prior to the end of the period of performance due to the non-Federal entity's material failure to comply with the Federal award terms and conditions, the Federal awarding agency must report the termination to the OMB-designated integrity and performance system accessible through SAM (currently FAPIIS).

(1) The information required under paragraph (c) of this section is not to be reported to designated integrity and performance system until the non-Federal entity either -

(i) Has exhausted its opportunities to object or challenge the decision, see § 200.342; or

(ii) Has not, within 30 calendar days after being notified of the termination, informed the Federal awarding agency that it intends to appeal the Federal awarding agency's decision to terminate.

(2) If a Federal awarding agency, after entering information into the designated integrity and performance system about a termination, subsequently:

(i) Learns that any of that information is erroneous, the Federal awarding agency must correct the information in the system within three business days;

(ii) Obtains an update to that information that could be helpful to other Federal awarding agencies, the Federal awarding agency is strongly encouraged to amend the information in the system to incorporate the update in a timely way.

(3) Federal awarding agencies, must not post any information that will be made publicly available in the non-public segment of designated integrity and performance system that is covered by a disclosure exemption under the Freedom of Information Act. If the non-Federal entity asserts within seven calendar days to the Federal awarding agency who posted the

information, that some of the information made publicly available is covered by a disclosure exemption under the Freedom of Information Act, the Federal awarding agency who posted the information must remove the posting within seven calendar days of receiving the assertion. Prior to reposting the releasable information, the Federal agency must resolve the issue in accordance with the agency's Freedom of Information Act procedures.

(d) When a Federal award is terminated or partially terminated, both the Federal awarding agency or pass-through entity and the non-Federal entity remain responsible for compliance with the requirements in §§ 200.344 and 200.345.

**§ 200.341 Notification of termination requirement. (a)** The Federal agency or pass-through entity must provide to the non-Federal entity a notice of termination. **(b)** If the Federal award is terminated for the non-Federal entity's material failure to comply with the U.S. Constitution, Federal statutes, regulations, or terms and conditions of the Federal award, the notification must state that - **(1)** The termination decision will be reported to the OMB-designated integrity and performance system accessible through SAM (currently FAPIIS); **(2)** The information will be available in the OMB-designated integrity and performance system for a period of five years from the date of the termination, then archived; **(3)** Federal awarding agencies that consider making a Federal award to the non-Federal entity during that five year period must consider that information in judging whether the non-Federal entity is qualified to receive the Federal award, when the Federal share of the Federal award is expected to exceed the simplified acquisition threshold over the period of performance; **(4)** The non-Federal entity may comment on any information the OMB-designated integrity and performance system contains about the non-Federal entity for future consideration by Federal awarding agencies. The non-Federal entity may submit comments to the awardee integrity and performance portal accessible through

SAM (currently (CPARS). **(5)** Federal awarding agencies will consider non-Federal entity comments when determining whether the non-Federal entity is qualified for a future Federal award. **(c)** Upon termination of a Federal award, the Federal awarding agency must provide the information required under FFATA to the Federal website established to fulfill the requirements of FFATA, and update or notify any other relevant governmentwide systems or entities of any indications of poor performance as required by 41 U.S.C. 417b and 31 U.S.C. 3321 and implementing guidance at 2 CFR part 77 (forthcoming at time of publication). See also the requirements for Suspension and Debarment at 2 CFR part 180.

**§ 200.342 Opportunities to object, hearings, and appeals.** Upon taking any remedy for non-compliance, the Federal awarding agency must provide the non-Federal entity an opportunity to object and provide information and documentation challenging the suspension or termination action, in accordance with written processes and procedures published by the Federal awarding agency. The Federal awarding agency or pass-through entity must comply with any requirements for hearings, appeals or other administrative proceedings to which the non-Federal entity is entitled under any statute or regulation applicable to the action involved.

**§ 200.343** Costs to the non-Federal entity resulting from financial obligations incurred by the non-Federal entity during a suspension or after termination of a Federal award or subaward are not allowable unless the Federal awarding agency or pass-through entity expressly authorizes them in the notice of suspension or termination or subsequently.

8. In September 2020, Hattie Wash, the founder and CEO of EMAGES, informed DOJ that she was terminating the EMAGES award because of, among other things, the COVID- 19

pandemic and COVID-related restrictions. Exhibit E, EMAGES Termination letter; Complaint at 22.

**RESPONSE**: This is a material fact in dispute. EMAGES founder and CEO Dr. Hattie Wash lied about why she terminated the grant. Dkt. #8-5, pp. 2-3; Complaint at 15, ¶21; Complaint at 19, ¶54; Complaint at 21, ¶68-69; Complaint at 22, ¶73, 77-79, 83, 90-91.

9.  In the written notice provided to DOJ, Wash stated that COVID-19 and related restrictions created financial instability for EMAGES and "prevented EMAGES from fulfilling the [p]erformance measures of the Second Chance grant" and that although telehealth services permitted EMAGES to continue providing services to some individua ls, the "[s]helter in [p]lace mandate for the State of Illinois has prevented us from collecting data inside Cook County Jail and the Illinois Department of Correction." Exhibit E, EMAGES Termination Letter.

**RESPONSE**: This is a material fact in dispute. EMAGES founder and CEO Dr. Hattie Wash lied about why she terminated the grant. Dkt. #8-5, pp. 2-3; Complaint at 15, ¶21; Complaint at 19, ¶54; Complaint at 21, ¶68-69; Complaint at 22, ¶73, 77-79, 83, 90-91.

10.  In April 2020, Nance pursued a "whistleblower complaint" claiming "possible fraud or misappropriation of funds" concerning the EMAGES award, alleging that EMAGES misappropriated the grant award. Exhibit F, April 17, 2020, Letter.

**RESPONSE**: True.

11.  Nance pursued his "whistleblower" complaints through the U.S. Office of Special Counsel, which denied his complaints, noting that it lacked jurisdiction over individuals who are not federal employees or applicants for federal employment. Exhibit G, OSC letter.

**RESPONSE**: This may be true.

12.  Nance then pursued his "whistleblower complaint" with the Office of the Inspector

General, where he repeated his allegation that EMAGES drew down grant funds for an ex-employee, and claimed that Wash retaliated against him for reporting the questioned drawdowns by removing him as the point of contact for the grant award and that Wash reduced Nance's salary under the grant. Exhibit H, August 28, 2020, Letter; Complaint at 20.

**RESPONSE**: Untrue. Plaintiff did submit all 3 whistleblower complaints to the Office of Inspector General. (Dkt. #8-7) Plaintiff never stated, anywhere, that Wash reduced his salary. Plaintiff retaliation claim is due to Wash terminating the grant violating NDAA Whistleblower Act 2013, amended 2016. This is a material fact in dispute.

13. Nance alleges that EMAGES improperly drew down $3,050 in grant award funds for an ex-employee. Compl. at 18. This small amount (which was addressed and investigated by OJP's accounting division) represents about 0.61% of the entire $500,000 grant award.

**RESPONSE**: Plaintiff never received any final response from DOJ regarding their investigation. The amount of the fraud and misappropriation of funds is not the issue here. EMAGES, Inc. CEO Dr. Hattie Wash retaliated against plaintiff for reporting the fraud and misappropriation of funds and for filing the 3 whistleblower complaints against her to DOJ. This is a material fact in dispute.

14. The OIG rejected Nance's complaint stating "[w]e do not believe that you have alleged that you suffered a reprisal in violation of [41 U.S.C.] § 4712(a)." Exhibit I, OIG letter. OIG further found that Nance's complaint failed to allege that he made a protected disclosure (i.e., a communication that, among other things, reasonably evidenced gross mismanagement of a federal contract or grant, a gross waste of federal funds, an abuse of authority relating to a federal contract or grant, a substantial and specific danger to public health or safety, or a violation of law, rule, or regulation related to a federal contract (including the competition for or

negotiation of a contract) or grant) and that "significant doubt surrounds whether your complaint alleges that you suffered a personnel action, as contemplated under § 4712(a)." Id.

**RESPONSE**: This is a material fact in dispute. First, this OIG statement has no weight due to plaintiff filing his whistleblower complaint(s) to the wrong department. **Second**, this OIG only reviewed plaintiff's "**2nd**" whistleblower complaint. Plaintiff filed **3 whistleblower complaints**. Third, defendants here conveniently leave out the OIG statement "We do not believe that you have alleged that you suffered a reprisal in violation of § 4712(a)…In light of our determination, we intend to decline to open a whistleblower reprisal investigation of your complaint." (Dkt. #8-9)

15. Nance is not an employee of the Department of Justice. Compl. at 3.

**RESPONSE**: True. Plaintiff was an employee of EMAGES, Inc.

16. Nance filed an FTCA claim with the DOJ on June 9, 2021, claiming that he was "increasing my asking price to 1.25 million dollars." Ex. J, FTCA claim. His FTCA claim again raised the same whistleblower allegations that were previously dismissed by this court with prejudice, and he alleged that the DOJ "worked in concert" with EMAGES to terminate his employment "for filing whistleblower complaints." Id. at 2. He also alleged that that the DOJ retaliated against him by not allowing him to review applications to a grant program to which Nance had applied for an award through his organization, C.L.I.C.K. Services. Id. He further alleged that if his grant application was unsuccessful, it would constitute further retaliation. Id.

**RESPONSE**: This is a material fact in dispute. First, this statement is ridiculous. Second, facts are facts. Real facts do not change. On April 28, 2022, the United States Department of Justice, Civil Division, Torts Branch, issued a Certified Mail response on plaintiff's "3" whistleblower complaints and other documents stating, in part, "…relative to the alleged acts or omissions of

employees of the Office of Justice Programs, the Bureau of Justice Assistance, and the U.S. Department of Justice occurring from April 2020 to November 2021. After careful consideration, it has been determined that your claim is not compensable…if you are dissatisfied with this determination, you may file suit in an appropriate United States District Court….." (Ex.2) This response from the United States Department of Justice did not state plaintiff's allegations were false. (Dkt. #1) Third, on June 8, 2021, Judge Alonso dismissed plaintiff's FTCA claim without prejudice in case #20cv6316. Plaintiff filed his FTCA claims in this case, #22cv3861. On July 29, 2022, an Executive Committee Order was issued transferring case #22cv3861 from the Honorable Judge Robert W. Gettleman to the Honorable Judge Jorge L. Alonso.

Respectfully submitted,

/s/Fred L. Nance Jr., Pro se plaintiff
17239 Evans Avenue
South Holland, Illinois 60473-3436
708-921-1395
frednance@clickservices.org