UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| FRED L NANCE JR | ) | |
|---|---|---|
| | ) | CASE # 22 CV 3861 |
| PLAINTIFF | ) | |
| | ) | HONORABLE JUDGE |
| VS | ) | JORGE L ALONSO |
| | ) | HONORABLE MAGISTRATE JUDGE: |
| UNITED STATES, et al. | ) | BETH W. JANTZ |
| | ) | |
| DEFENDANTS. | ) | Courtroom: 1903 |

**PLAINTIFF MEMORANDUM OF LAW**

NOW COMES Pro se plaintiff submitting a Memorandum of Law pursuant to LR 56.1(g). Plaintiff brings his complaint pursuant to the National Defense Authorization Act (hereinafter, "NDAA") Whistleblower Protections provisions of §828 of Pub. L. No. 112-239, 126 Stat. 1632 (2013), as amended by Pub. L. No. 114-261, 130 Stat. 1362 (2016), 10 U.S.C. §2409; 41 U.S.C. §4712; 5 U.S.C. §1221(e)(1).

Plaintiff was an employee of EMAGES, Inc. EMAGES, Inc. received a Second Chance Act grant from the United States Department of Justice, Bureau of Justice Assistance, Office of Justice Programs. NDAA et seq., and 41 U.S.C. §4712 protect a Whistleblower and prohibits government contractors and grantees from subjecting their employees to reprisal for disclosing gross mismanagement, waste, and other harms or wrongdoing relating to federal contracts or grants.

An employee of a contractor, subcontractor, grantee, or subgrantee or personal services contractor may not be discharged, demoted, or otherwise discriminated against as a reprisal for disclosing to a person or body described in paragraph (2) information that the employee reasonably believes is evidence of gross mismanagement of a federal contract or grant, a gross waste of Federal funds, an abuse of authority relating to a federal contract or grant, a substantial

and specific danger to public health or safety, or a violation of law, rule, or regulation related to a Federal contract (including the competition for or negotiation of a contract) or grant. 41 U.S.C. § 4712(a)(1). NDAA makes it illegal for an employee of a federal contractor, subcontractor, grantee, or subgrantee to be discharged, demoted, or otherwise discriminated against for making a protected whistleblower disclosure. In 2016, Congress amended the program to make those protections permanent.

Pursuant to 41 U.S.C. § 4712(c)(2) If the head of an executive agency issues an order denying relief under paragraph (1) or has not issued an order within 210 days after the submission of a complaint under subsection (b), or in the case of an extension of time under paragraph (b)(2)(B), not later than 30 days after the expiration of the extension of time, and there is no showing that such delay is due to the bad faith of the complainant, the complainant shall be deemed to have exhausted all administrative remedies with respect to the complaint, and the complainant may bring a de novo action at law or equity against the contractor or grantee to seek compensatory damages and other relief available under this section in the appropriate district court of the United States, which shall have jurisdiction over such an action without regard to the amount in controversy.

Such an action shall, at the request of either party to the action, be tried by the court with a jury. An action under this paragraph may not be brought more than two years after the date on which remedies are deemed to have been exhausted. Jurisdiction is invoked pursuant to 41 U.S.C. § 4712(c)(2). *Nelson*, supra note 41, at 268–71 (discussing the FTCA's legislative history); *Evans v. United States*, 876 F.3d 375, 380 (1st Cir. 2017), cert. denied, 139 S. Ct. 81 (2018); See infra "Employees and Independent Contractors"; *Meyer*, 510 U.S. at 477 (quoting 28 U.S.C. § 1346(b)).

*DHS vs. MacLean* (2015) states, "Federal law generally provides whistleblower protections to an employee who discloses information revealing "any violation of any law, rule, or regulation," or "a substantial and specific danger to public health or safety." 5 U. S. C. §2302(b)(8)(A). Congress passed the whistleblower statute precisely because it did not trust agencies to regulate whistleblowers within their ranks.

NDAA broadly prohibits federal contractors from taking the following actions against an employee in retaliation for making a protected disclosure: (1) discharging the employee; (2) demoting the employee; and (3) otherwise discriminating against the employee. (10 U.S.C. § 2409(a)(1); 41 U.S.C. § 4712(a)(1).) The catch-all category of "otherwise discriminating" against a whistleblower likely includes the same standard used in *Burlington Northern & Santa Fe Railway Company v. White*, that is, actions that might dissuade a reasonable worker from engaging in protected conduct (see 548 U.S. 53, 67-68 (2006)).

Whistleblowing disclosures are protected only if made to: (1) a member of Congress or a congressional committee; (2) an Inspector General; (3) the Government Accountability Office (GAO); (4) a federal employee responsible for contract or grant oversight or management at the relevant agency; (5) an authorized official of the Department of Justice (DOJ) or other law enforcement agency; (6) a court or grand jury; and (7) a management official or other employee of the contractor or subcontractor who has the responsibility to investigate, discover, or address misconduct 10 U.S.C. § 2409(a)(2); 41 U.S.C. § 4712(a)(2).)

The causation standard in NDAA whistleblower cases is favorable to employees. The NDAA applies the standard set out in the WPA, under which a complainant need only demonstrate that the protected disclosure was a contributing factor in the personnel action. An employee may show causation using either: (1) The Knowledge-Timing Test. An employee can

show causation using the knowledge-timing test by proving both: (a) The official taking the personnel action knew of the disclosure; and (b) The personnel action occurred within a period of time when a reasonable person may conclude that the disclosure was a contributing factor in the personnel action. (5 U.S.C. § 1221(e)(1).) (2) Circumstantial Evidence of Causation. If the employee fails to demonstrate both knowledge and timing, the employee may offer circumstantial evidence about any other factor potentially affected the outcome of the personnel action (see *Jones v. Dep't of Interior*, 74 M.S.P.R. 666, 678 (1997) (failing to find contributing factor); see also *Marano v. Dep't of Justice*, 2 F.3d 1137, 1143 (Fed. Cir. 1993)).

For example, the circumstances surrounding an employer's placing a whistleblower-employee on paid administrative leave may demonstrate the employer's retaliatory animus (see *U.S. ex rel. Cody v. ManTech Int'l Corp.*, 2017 WL 2215672, at *4 (E.D. Va. May 19, 2017)) Circumstantial evidence of causation. (5 U.S.C. § 1221(e)(1).) The standards and burdens of proof for an NDAA whistleblower retaliation claim are the same as for individual right of action appeals under the WPA (10 U.S.C. § 2409(c)(6); 41 U.S.C. § 4712(c)(6)).

In *Sidney L. Peterson vs. Wexford Health Sources, Inc., Arthur Davida, Sara Mays, and Loreatha Coleman*, No. 19-2592, an appeal from the United States District Court for the Northern District of Illinois, Eastern Division. No. 19-cv-415, Charles P. Kocoras, Judge; argued November 3, 2020 and decided January 26, 2021. The appellate court states "We review de novo the district court's decision granting a motion to dismiss for failure to state a claim, "accepting as true all well-pleaded facts and drawing reasonable inferences in plaintiff's favor." *United Cent. Bank v. Davenport Est. LLC*, 815 F.3d 315, 318 (7th Cir. 2016) (citing *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 879 (7th Cir. 2012)). The 7th Circuit court's review of a grant of summary judgment is de novo and examines the record and all reasonable

inferences in the light most favorable to the non-moving party. *Pagen v. TIN Inc.*, 695 F.3d 622, 624 (7th Cir. 2012). Summary judgment is proper if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We will reverse a grant of summary judgment if a material issue of fact exists that would allow a reasonable jury to find in favor of the non-moving party. *Adeyeye v. Heartland Sweeteners, LLC*, 721 F.3d 444, 449 (7th Cir. 2013). Plaintiff has demonstrated there are a plethora of material issues of fact existing and in dispute with his "Additional Material Facts" and facts in his documents.

Under Federal Rule of Evidence 401, evidence is relevant if it has any tendency to make the fact to be proved more or less likely than if the evidence were not introduced. Rule 401 provides states relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Plaintiff provides sufficient evidence in this matter to proceed.

Evidence must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself, or whether just the "direct" evidence does so, or the "indirect" evidence. Evidence is evidence. Relevant evidence must be considered, and irrelevant evidence disregarded, but no evidence should be treated differently from other evidence because it can be labeled "direct" or "indirect. *Ortiz v. Werner Enterprise, Inc.*, No. 15-2574 (7th Cir. 2016).

*Ortiz* signals a diminishing importance of the prima facie case, shifting emphasis to the ultimate inquiry of whether the employer's rationale for its decision a pretext for is unlawful discrimination. It also highlights the Seventh Circuit's impatience with evidentiary constructs

that distract the parties and the courts from the ultimate question of motivation. Evidence is evidence, and with that in mind, the parties, district courts and Seventh Circuit should view evidence in its totality to determine whether the employer was motivated by bias. Labeling evidence as direct or indirect, and then analyzing it separately is improper.

The use of disparate methods and the search for elusive mosaics has complicated and sidetracked employment-discrimination litigation for many years. During the last decade, every member of the 7th Circuit court has disapproved both the multiple methods and the search for mosaics. See, e.g., *Sylvester v. SOS Children's Villages Illinois, Inc.*, 453 F.3d 900 (7th Cir. 2006); *Coleman v. Donahoe*, 667 F.3d 835, 863 (7th Cir. 2012) (concurring opinion joined by entire panel); *Good v. University of Chicago Medical Center*, 673 F.3d 670, 680 (7th Cir. 2012); *Harper v. C.R. England, Inc.*, 687 F.3d 297, 314 (7th Cir. 2012); *Hitchcock v. Angel Corps, Inc.*, 718 F.3d 733, 737 (7th Cir. 2013); *Perez v. Thorntons, Inc.*, 731 F.3d 699, 703 (7th Cir. 2013); *Chaib v. Indiana*, 744 F.3d 974, 981 (7th Cir. 2014); *Bass v. Joliet Public School District No. 86*, 746 F.3d 835, 840 (7th Cir. 2014); *Hutt v. AbbVie Products LLC*, 757 F.3d 687, 691 (7th Cir. 2014); *Simpson v. Beaver Dam Community Hospitals, Inc.*, 780 F.3d 784, 789–90 (7th Cir. 2015); *Castro v. DeVry University, Inc.*, 786 F.3d 559, 564 (7th Cir. 2015) (collecting cases)

To make matters worse, this court has itself occasionally treated "convincing mosaic" as a legal requirement, even while cautioning in other opinions that it must not be so understood. See, e.g., *Hatcher v. Board of Trustees of Southern Illinois University*, No. 15-1599 (7th Cir. July 14, 2016), slip op. 13; *Chaib*, 744 F.3d at 981; *Cloe v. Indianapolis*, 712 F.3d 1171, 1180 (7th Cir. 2013); *Smith v. Bray*, 681 F.3d 888, 901 (7th Cir. 2012); *Good*, 673 F.3d at 674; *Silverman v. Board of Education of Chicago*, 637 F.3d 729, 734 (7th Cir. 2011); *Phelan v. Cook County*, 463 F.3d 773, 779 (7th Cir. 2006); *Koszola v. Board of Education of Chicago*, 385 F.3d

1104, 1109 (7th Cir. 2004); *Rhodes v. Illinois Department of Transportation*, 359 F.3d 498, 504 (7th Cir. 2004); *Cerutti v. BASF Corp.*, 349 F.3d 1055, 1061 (7th Cir. 2003); *Robin v. Espo Engineering Corp.*, 200 F.3d 1081, 1088–89 (7th Cir. 2000).

An NDAA reprisal claim must be filed initially with the Office of Inspector General (OIG) of the agency that awarded the contract or grant about which the employee disclosed wrongdoing (10 U.S.C. § 2409(b)(1); 41 U.S.C. § 4712(b)(1)). Plaintiff filed all 3 Whistleblower complaints with the OIG. The OIG decided to rule only on the August 29, 2020 complaint. The OIG who ruled against plaintiff's 2nd whistleblower complaint did not have jurisdiction.

On or about June 9, 2021, plaintiff filed his 3 whistleblower complaints with the U.S. Department of Justice, Civil Division, Torts Branch. On April 28, 2022, DOJ sent a certified letter to plaintiff stating, in part, "…After careful consideration, it has been determined that your claim is not compensable…if you are dissatisfied with this determination, you may file suit in an appropriate United States District Court…." DOJ did not say claims were void, insufficient, or that they did not apply to 41 U.S.C. § 4721.

To establish a prima facie case of retaliation for exercising whistleblowing, complaint, appeal, or grievance rights under Section 2302(b)(9), an employee must prove the following four elements by preponderant evidence: (1) the employee, or someone identified with the employee, engaged in a protected activity; (2) the agency took, failed to take, or threatened to take a personnel action; (3) the official responsible for the personnel action knew about the employee's protected activity; and (4) a causal connection existed between the protected activity and the personnel action.

In *Horne vs. Electric Eel Manufacturing Company, Inc., et al.*, No. 19-2082, decided

February 10, 2021 (7th Circuit), the court states "In reviewing this grant of a motion for summary judgment, we examine the record in the light most favorable to the nonmovant, *Horne*, and construe all reasonable inferences from the evidence in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Yahnke v. Kane County*, Ill., 823 F.3d 1066, 1070 (7th Cir. 2016)."

The *Horne* court goes on to say "We review the district court's grant of summary judgment de novo, and as we noted above, we examine the record in the light most favorable to *Horne* and construe all reasonable inferences from the evidence in his favor. *Anderson*, 477 U.S. at 255; *McCottrell v. White*, 933 F.3d 651, 661–62 (7th Cir. 2019).

The *Horne* court goes on to say "In Illinois, the construction, interpretation, or legal effect of a contract is a matter to be determined by the court as a question of law. *Avery v. State Farm Mut. Ins. Co.*, 835 N.E.2d 801, 821 (Ill. 2005). The "starting point of any contract analysis is the language of the contract itself." *Id*. We must construe a contract "as a whole, viewing particular terms or provisions in the context of the entire agreement." *Matthews v. Chicago Transit Auth.*, 51 N.E.3d 753, 776 (Ill. 2016)."

The *Horne* appellate decision reports "exculpatory clauses are generally enforced "unless (1) it would be against a settled public policy of the State to do so, or (2) there is something in the social relationship of the parties militating against upholding the agreement. " *Harris*, 519 N.E.2d at 919; *Jackson*, 114 N.E.2d at 725. Moreover, the clause must spell out the intention of the parties with great particularity and will not be construed to defeat a claim which is not explicitly covered. *Scott & Fetzer*, 493 N.E.2d at 1029–30. "In the absence of legislation to the contrary, courts will not interfere with contracts containing exculpatory clauses, unless there is a defect in the contract negotiation process such that a disparity in bargaining power denied a party

a meaningful choice." *Id*. See also *Progressive Universal Ins. Co. of Ill. v. Liberty Mut. Fire Ins. Co.*, 828 N.E.2d 1175, 1180 (Ill. 2005) (an agreement will not be invalidated on public policy grounds unless it is clearly contrary to what the constitution, the statutes or the decisions of the courts have declared to be the public policy or unless it is manifestly injurious to the public welfare).

**Federal Grant Policies Governing Non-Compliance**

Defendants report EMAGES, Inc. and Hattie Wash terminated the grant pursuant to § 200.339-343.

**§ 200.339** Remedies for noncompliance**.** If a non-Federal entity fails to comply with the U.S. Constitution, Federal statutes, regulations or the terms and conditions of a Federal award, the Federal awarding agency or pass-through entity may impose additional conditions, as described in § 200.208. If the Federal awarding agency or pass-through entity determines that noncompliance cannot be remedied by imposing additional conditions, the Federal awarding agency or pass-through entity may take one or more of the following actions, as appropriate in the circumstances.

**2 CFR 200.340(a)** The Federal award may be terminated in whole or in part as follows: (1) By the Federal awarding agency or pass-through entity, if a non-Federal entity fails to comply with the terms and conditions of a Federal award; (2) By the Federal awarding agency or pass-through entity, to the greatest extent authorized by law, if an award no longer effectuates the program goals or agency priorities; (3) By the Federal awarding agency or pass-through entity with the consent of the non-Federal entity, in which case the two parties must agree upon the termination conditions, including the effective date and, in the case of partial termination, the portion to be terminated; (4) By the non-Federal entity upon sending to the Federal awarding

agency or pass-through entity written notification setting forth the reasons for such termination, the effective date, and, in the case of partial termination, the portion to be terminated. However, if the Federal awarding agency or pass-through entity determines in the case of partial termination that the reduced or modified portion of the Federal award or subaward will not accomplish the purposes for which the Federal award was made, the Federal awarding agency or pass-through entity may terminate the Federal award in its entirety; or (5) By the Federal awarding agency or pass-through entity pursuant to termination provisions included in the Federal award. (b) A Federal awarding agency should clearly and unambiguously specify termination provisions applicable to each Federal award, in applicable regulations or in the award, consistent with this section. (c) When a Federal awarding agency terminates a Federal award prior to the end of the period of performance due to the non-Federal entity's material failure to comply with the Federal award terms and conditions, the Federal awarding agency must report the termination to the OMB-designated integrity and performance system accessible through SAM (currently FAPIIS).

(1) The information required under paragraph (c) of this section is not to be reported to designated integrity and performance system until the non-Federal entity either -

(i) Has exhausted its opportunities to object or challenge the decision, see § 200.342; or

(ii) Has not, within 30 calendar days after being notified of the termination, informed the Federal awarding agency that it intends to appeal the Federal awarding agency's decision to terminate.

(2) If a Federal awarding agency, after entering information into the designated integrity and performance system about a termination, subsequently:

(i) Learns that any of that information is erroneous, the Federal awarding agency must correct the information in the system within three business days;

(ii) Obtains an update to that information that could be helpful to other Federal awarding agencies, the Federal awarding agency is strongly encouraged to amend the information in the system to incorporate the update in a timely way.

(3) Federal awarding agencies, must not post any information that will be made publicly available in the non-public segment of designated integrity and performance system that is covered by a disclosure exemption under the Freedom of Information Act. If the non-Federal entity asserts within seven calendar days to the Federal awarding agency who posted the information, that some of the information made publicly available is covered by a disclosure exemption under the Freedom of Information Act, the Federal awarding agency who posted the information must remove the posting within seven calendar days of receiving the assertion. Prior to reposting the releasable information, the Federal agency must resolve the issue in accordance with the agency's Freedom of Information Act procedures.

(d) When a Federal award is terminated or partially terminated, both the Federal awarding agency or pass-through entity and the non-Federal entity remain responsible for compliance with the requirements in §§ 200.344 and 200.345.

§ 200.341 Notification of termination requirement. (a) The Federal agency or pass-through entity must provide to the non-Federal entity a notice of termination. (b) If the Federal award is terminated for the non-Federal entity's material failure to comply with the U.S. Constitution, Federal statutes, regulations, or terms and conditions of the Federal award, the notification must state that - (1) The termination decision will be reported to the OMB-designated integrity and performance system accessible through SAM (currently FAPIIS);

(2) The information will be available in the OMB-designated integrity and performance system for a period of five years from the date of the termination, then archived; (3) Federal awarding

agencies that consider making a Federal award to the non-Federal entity during that five year period must consider that information in judging whether the non-Federal entity is qualified to receive the Federal award, when the Federal share of the Federal award is expected to exceed the simplified acquisition threshold over the period of performance; **(4)** The non-Federal entity may comment on any information the OMB-designated integrity and performance system contains about the non-Federal entity for future consideration by Federal awarding agencies. The non-Federal entity may submit comments to the awardee integrity and performance portal accessible through SAM (currently (CPARS). **(5)** Federal awarding agencies will consider non-Federal entity comments when determining whether the non-Federal entity is qualified for a future Federal award. **(c)** Upon termination of a Federal award, the Federal awarding agency must provide the information required under FFATA to the Federal website established to fulfill the requirements of FFATA, and update or notify any other relevant governmentwide systems or entities of any indications of poor performance as required by 41 U.S.C. 417b and 31 U.S.C. 3321 and implementing guidance at 2 CFR part 77 (forthcoming at time of publication). See also the requirements for Suspension and Debarment at 2 CFR part 180.

**§ 200.342 Opportunities to object, hearings, and appeals.** Upon taking any remedy for non-compliance, the Federal awarding agency must provide the non-Federal entity an opportunity to object and provide information and documentation challenging the suspension or termination action, in accordance with written processes and procedures published by the Federal awarding agency. The Federal awarding agency or pass-through entity must comply with any requirements for hearings, appeals or other administrative proceedings to which the non-Federal entity is entitled under any statute or regulation applicable to the action involved.

**§ 200.343** Costs to the non-Federal entity resulting from financial obligations incurred by the non-Federal entity during a suspension or after termination of a Federal award or subaward are not allowable unless the Federal awarding agency or pass-through entity expressly authorizes them in the notice of suspension or termination or subsequently.

**Rule 26 & 56(d)**

The Federal Rules of Civil Procedure allow a nonmovant, when faced with a motion for summary judgment, to ask the court to defer ruling on the motion, to allow it additional time to take discovery. The process is straightforward: a nonmovant must show the court "by affidavit or declaration" the specified reasons that prevent it from presenting facts essential to justify its opposition. See FRCP 56(d)(1)(2)(3) (Wisconsin has a similar requirement, modeled on the federal rule, see Wis. Stat. § 802.08(4)). The "affidavit or declaration" portion of the rule is not merely a suggestion, as failure to submit one justifies a district court's denying the request to take additional discovery, and ultimately, granting summary judgment in the absence of additional facts. That lesson was recently learned by the plaintiff in *Kallal v. CIBA Vision Corp.*, No. 13-1786 (7th Cir. Feb. 24, 2015). This Seventh Circuit decision should remind practitioners to comply strictly with Rule 56(d) when asking the court to defer ruling on a summary judgment motion.

The Seventh Circuit has made clear that Rule 56(d) requires a motion. See *Deere & Co. v. Ohio Gear*, 462 F.3d 701, 706 (7th Cir. 2006) ("When a party thinks it needs additional discovery in order to oppose a motion for summary judgment . . . Rule 56(f) [now Rule 56(d)] provides a simple procedure for requesting relief: move for a continuance and submit an affidavit explaining why the additional discovery is necessary."); *Farmer v. Brennan*, 81 F.3d 1444, 1449 (7th Cir. 1996) ("When a party is unable to gather the materials required by Rule 56(e), the

proper course is to move for a continuance under Rule 56(f) [now Rule 56(d)].").

A Rule 56(d) motion "must state the reasons why the party cannot adequately respond to the summary judgment motion without further discovery and must support those reasons by affidavit." *Deere & Co.*, 462 F.3d at 706. Appellate courts review decisions on Rule 56(d) motions for abuse of discretion. *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 622–23 (7th Cir. 2014). "As is true for most matters relating to discovery, the district court has substantial discretion in ruling on a [Rule 56(d)] motion." *Farmer*, 81 F.3d at 1449. This latitude has its limits, however. *Id*. at 1450–51 (vacating summary judgment).

Appellate courts often remand a denial of additional time for discovery when the motion for summary judgment is filed before the close of discovery, especially if there are pending discovery disputes. *Farmer*, 81 F.3d at 1450–51 (district court abused discretion by denying Rule 56(d) motion that sought opportunity to conduct discovery under new legal standard after remand from Supreme Court); see also *CenTra, Inc. v. Estrin*, 538 F.3d 402, 420 (6th Cir. 2008) (vacating summary judgment as premature when plaintiff was denied any opportunity for discovery on material issues); *Burlington Northern Santa Fe Railroad Co. v. Assiniboine & Sioux Tribes of Fort Peck Reservation*, 323 F.3d 767, 773–74 (9th Cir. 2003) (denial of Rule 56(d) motion was abuse of discretion: when "a summary judgment motion is filed so early in the litigation, before a party has had any realistic opportunity to pursue discovery relating to its theory of the case, district courts should grant any Rule [56(d)] motion fairly freely"); *Wichita Falls v. Banc One*, 978 F.2d 915, 920 (5th Cir. 1992) (reversing denial of Rule 56(d) motion: "When a party is seeking discovery that is germane to the pending summary judgment motion it is inequitable to pull out the rug from under them by denying such discovery.").

For example, in the D.C. Circuit, summary judgment is considered premature unless all

parties have had a full opportunity to conduct discovery, and the court has written that Rule 56(d) motions "requesting time for additional discovery should be granted 'almost as a matter of course unless the non-moving party has not diligently pursued discovery of the evidence.'" *Convertino v. United States Dep't of Justice*, 684 F.3d 93, 99 (D.C. Cir. 2012), quoting *Berkeley v. Home Ins. Co.*, 68 F.3d 1409, 1414 (D.C. Cir. 1995). This approach is not unique. See *In re PHC, Inc. Shareholder Litigation*, 762 F.3d 138, 145 (1st Cir. 2014) (premature for district court to consider summary judgment in light of plaintiffs' Rule 56(d) motion when pending discovery requests were not yet answered); *Jones v. Blanas*, 393 F.3d 918, 930 (9th Cir. 2004) (noting that summary judgment is disfavored if discovery is incomplete: "summary judgment in the face of requests for additional discovery is appropriate only where such discovery would be 'fruitless' with respect to the proof of a viable claim"); *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1267 (5th Cir. 1991) (request for additional time to conduct discovery should be granted "almost as a matter of course" when court learns the "diligent efforts to obtain evidence from the moving party have been unsuccessful"). We need not go as far as "almost as a matter of course," but these precedents emphasize the importance of allowing a party the opportunity to take meaningful discovery before granting summary judgment against him.

      Plaintiff is filing a motion pursuant to 56(d) with this address of defendant's motion to dismiss or in the alternative summary judgment.

Respectfully submitted,

/s/Fred L. Nance Jr., Pro se plaintiff
17239 Evans Avenue
South Holland, Illinois 60473-3436
708-921-1395
frednance@clickservices.org