**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| FRED L NANCE JR | ) | |
| | ) | CASE # 22 CV 3861 |
| PLAINTIFF | ) | |
| | ) | HONORABLE JUDGE |
| | ) | LASHONDA A. HUNT |
| VS | ) | |
| | ) | |
| UNITED STATES | ) | |
| | ) | |
| DEFENDANTS. | ) | |

**PLAINTIFF AMENDED COMPLAINT**

NOW COMES, Dr. Fred L Nance Jr., Pro se plaintiff submitting an amended complaint

pursuant to Rule 15(a)(2)(c)(B) and the Honorable Judge LaShonda A. Hunt's Memorandum

Opinion and Order dated August 14, 2023.

**Introduction**

In the beginning on October 23, 2020, plaintiff brought this litigation against the

Department of Justice, Bureau of Justice Assistance, Office of Justice Programs, EMAGES, Inc.,

Hattie Wash, Thomas Bradley, et al. On August 29, 2023, plaintiff attended defendant EMAGES,

Inc. deposition and discussed with Attorney Thompson (EMAGES, Inc. lawyer) discovery

documents released to plaintiff earlier in this litigation.

Plaintiff realized during the deposition he had new, conclusive information via the

EMAGES, Inc. discovery documents released and received that EMAGES, Inc. did, in fact,

commit fraud and gross misappropriation of fund; and that the United States Department of

Justice, Office of Justice Programs, Office of the Chief Financial Officer found, among other

things, "Based on an analysis of the EMAGES' financial activities, we noted that the EMAGES

is commingling the grant 2018-CY-BX-0025 funds with other federal agencies' funds within

their accounting system." Dated March 26, 2021. (Ex.1, P.5) This means the United States defendants and their attorneys knew or should have known plaintiff's Whistleblower claim was true.

There are emails in the discovery documents between defendants EMAGES, Inc., Hattie Wash, and the United States Department of Justice (DOJ) employees linking them to violations of the Whistleblower Act and conspirator actions. Questions are offered on what actions were not taken by the United States DOJ employees when plaintiff brought the fraud and gross misappropriation of funds. One of the emails in August of 2020 seems to be the first time the United States DOJ employees inquired about the fraud and gross misappropriation of funds by defendants EMAGES, Inc. and Hattie Wash. Without a doubt, if the Honorable Judge Alonso had allowed discovery, he might have not issued his Memorandum Opinion and Order on June 8, 2021 and also Judge Hunt's Memorandum Opinion and Order on August 14, 2023. Attorney Derrick Thompson, EMAGES, Inc. and Hattie Wash's lawyer, is suggesting settlement talks with the plaintiff to his clients EMAGES, Inc. and Hattie Wash. (Ex.2)

On or about September 30, 2018, EMAGES, Inc. was awarded a Second Chance Act grant. In 2007, plaintiff sat on the Honorable Illinois Congressman Danny K. Davis, Illinois 7th Congressional District's Second Chance Act Advisory Committee. Congressman Davis was one of the principal authors of the Second Chance Act. As plaintiff was assisting in writing some of the legislative language for the Act, plaintiff intentionally discussed the legislative intent of reporting fraud and gross misappropriation of federal funds and the protections for any Whistleblower to assuring protections for the Whistleblower and that federal tax dollars would be protected, and that any Whistleblower would not lose their employment when reporting fraud and gross misappropriation of federal funds. The language used by the federal judiciary to

describe plaintiff reporting fraud and gross misappropriation of funds appears to be minimizing the legislative intent and the issue before the court. Plaintiff has been a peer reviewer for the United States Department of Justice since 2009. Plaintiff has reviewed over 125 proposals for Second Chance Act grants from across the United States. There is almost no match from other peer reviewers to the plaintiff accomplishments as a peer reviewer.

Plaintiff brought a Whistleblower complaint to this court for fraud and gross misappropriation of funds, which should have protected plaintiff's employment position. Plaintiff believed he was doing the right thing by law and ethics, protecting taxpayers' monies. This is the legislative policy of federal and state grants. Due to the defamation, humiliation, embarrassment, and stigma placed on the plaintiff for doing the right and just thing, plaintiff would advise others to never report fraud, gross misappropriation of funds, or any other criminal act because proposed laws and the judicial system will not protect the livelihood or employment as a Whistleblower or as a common decent person. The Whistleblower Act does not exist for justice in our judicial system. The problem with American judicial justice is people participate in it. We have many examples starting with SCOTUS. This is another story, for another time. Plaintiff gives this advice and story on social media exercising his 1st Amendment rights to free speech and freedom of expression every day, and every working hour.

Plaintiff statement of facts will establish defendant EMAGES, Inc. and Hattie Wash did not give the grant back because of the Coronavirus but rather exercised retaliation against the plaintiff for reporting and filing a Whistleblower complaint with the United States DOJ employees. The statement of facts will also establish that the United States DOJ employees knew there was fraud and gross misappropriation of funds before plaintiff's original litigation was filed and after it was filed when an audit was conducted, yet they did nothing to stop this nonsense.

### Statement of Facts

1. On October 1, 2018, EMAGES created correspondence sent to DOJ stating, in part, "EMAGES has subawards…." (Ex.3)

2. Plaintiff was the subawardee.

3. In or around January 2020 the Coronavirus was prevalent and all EMAGES, Inc. consultants, staff, and clients received an "Informed Consent for Telepsychology and Effective Video Conferencing" documentation. (Ex.4)

4. On or about February 2020, defendants EMAGES, Inc., Hattie Wash, and Thomas Bradley drew down Second Chance Act (SCA) monies for an employee who did not work for EMAGES, Inc. via the SCA grant #2018-CY-BX-0025.

5. On or about February 2020, plaintiff, Dr. Fred L Nance Jr., contacted the United States Department of Justice employees supervising grant #2018-CY-BX-0025 reporting fraud and misappropriation of funds citing the Whistleblower Act.

6. On March 23, 2020, Clinical Supervisor Daniel Jean (hereinafter, "Jean") sent an email stating "here are the credentials for the MA'AT phone conference for Groups 1 & 2. (Ex.5)

7. On March 30, 2020, Jean sent an email stating he would not be able to meet face-to-face due to the Coronavirus and he would be working from home sending a document for case management review and stating he would be available for consultation. (Ex.6)

8. On March 31, 2020, plaintiff and defendant Hattie discussed the access codes and how the consultants received them for teleconferencing the groups due to the Coronavirus.

9. On April 1, 2020, defendant Dr. Hattie Wash (hereinafter, "Hattie") sent an email stating, in part, "Please see attached conference call list phone number and access code for EMAGES groups." (Ex.7)

10. On April 2, 2020, Jean sent an email to the consultants stating "I was on tonight call. Everything was fine. In fact, Serita and Alicia did a great job." (Ex.8)

11. On April 6, 2020, Jean sent an email to plaintiff and defendant Hattie reporting how certain clients should attend telephonic groups due to the Coronavirus. (Ex.9)

12. On April 8, 2020, plaintiff sent an email to DOJ discussing the misappropriation of funds and drawdown of monies ($880.00) allocated to Dorothy Collins and sharing an office with an EMAGES, Inc. contractor paying the rent for the office from Second Chance Act grant funds to defendant Hattie as she defamed and insulted plaintiff's intelligence and knowledge of the Second Chance Act.

13. On April 21, 2020, plaintiff sent an email stating, "Good evening. Attached is a Weekly Conference Call list created by Dr. Wash for this Coronavirus season…." (Ex.10)

14. On April 22, 2020, Jean sent an email to consultants Chad and Serita stating "I was informed by Dr. Nance that last night the clients participated in the MA'AT group via the use of zoom…." (Ex.11)

15. On April 22, 2020, Hattie sent an email stating "I am scheduling a meeting with persons on this email for Friday at 1 pm. The meeting will be on line and I will notify you what method of communication we will use…." (Ex.12)

16. On May 19, 2020, Jean sent an email stating "Alicia and Earlene will conduct a MA'AT group on Saturday May 30, 2020 in replacement of their May 25th group…." (Ex.13)

17. On May 21, 2020, Jean sent an email stating "The last attached document is the progress note that every mentor should use to document their case management services…." (Ex.14)

18. On May 23, 2020, Jean sent an email stating "Please be reminded that you must conduct

your mentoring sessions using only the "Instructors/Mentors Manual". You need to refrain from using the "Curriculum Design". Fidelity to the program is very important…." (Ex.15)

19. On June 2, 2020, Jean sent an email stating "…With this format, we may be able to count the number of individuals who have received case management as well as the type of case management…." (Ex.16)

20. On June 25, 2020, plaintiff sent an email to the consultants stating "Good morning. Here is the agenda for today's meeting at 5:30 pm." (Ex.17)

21. On June 26, 2020, Jean sent an email stating "…The total number of discharges for the 2nd quarter is "15"…." (Ex.18)

22. On July 3, 2020, Jean sent an email to plaintiff stating "Please find attached the "Referral Form" I re-created it…." (Ex.19)

23. On July 7, 2020, Jean sent an email stating "Please find attached the list of the 11 participants that I found to have no service plans during the chart review I conducted yesterday…." (Ex.20)

24. On July 28, 2020, plaintiff sent the following email stating "Mentors: Good afternoon. Daniel and I decided there will be no regular group sessions this week. Please get the Module 3 Trauma-Informed pre-questionnaires done this week. Please use the "Sign-in" sheets documenting participant completion of the pre-questionnaires for Trauma, Module 3…." (Ex.21)

25. On July 28, 2020, Jean sent an email stating "Good morning. I am set to enroll a new participant this morning…." (Ex.22)

26. On July 30, 2020, Jean sent an email to all consultants and defendant Hattie stating "Please find attached the agenda and the new Referral form for today's meeting…." (Ex.23)

27. On August 10, 2020, Jean sent an email stating "Here are the names of the two

participants I enrolled today. Please notice also their assigned numbers, groups, and their parole officers…." (Ex.24)

28. On August 10, 2020, Jean sent an email stating "Efrain XXXX (2057) completed probation as of 8/7/2020. The Judge let him go…." (Ex.25)

29. On August 24, 2020, Jean sent an email stating "On Monday, August 24, I enrolled a new participant. His name is Derion XXXXX…."

30. On August 26, 2020, DOJ Tracey Willis sent an email to defendant Hattie Wash stating, in part, "We received information about an employee of EMAGES who was being paid but does not exist. Please provide via email, the following…." (Ex.26)

31. On August 31, 2020, Jean sent 2 emails stating "The new participant, Derion XXXXX, is assigned to the Monday group. I already administered him both pre-tests" and "The new participant, Derion XXXXX, is assigned to the Monday group…."

32. On September 2, 2020, plaintiff sent an email to Jean stating "Good afternoon. The Cook County jail has contacted me with a start date. We will be going back to the jail on September 18, 2020 from 4:00 pm to 5:00 pm. I have contacted Serita and Alicia. Both agreed to work in the jail…."

33. On September 2, 2020, Jean sent an email stating "Yesterday, I enrolled a new participant in the MA'AT program."

34. On September 9, 2020, defendant Hattie Wash sent an email to DOJ stating, in part, "On September 30, 2020 there was a draw-down of $880.00 that appeared under Dorothy Collins name. I explained to Dr. Nance that the draw-down was for the candidate that we were interviewing for that position…." Defendant never had this conversation with plaintiff. Defendant did not copy plaintiff on this email correspondence sent to DOJ. (Ex.27)

35. On September 10, 2020, plaintiff sent an email stating "Good evening. Alicia and Serita will work with the participants in the Cook County jail. During our Skype meeting today we talked about the upcoming re-opening of the Cook County jail…."

36. On September 11, 2020, Jean sent an email stating "I just enrolled a new participant. His name is Marco XXXXXXX. He is assigned number is 2082…."

37. On September 16, 2020, Jean sent an email stating "Please see attached agenda for our monthly mentors meeting…." (Ex.28)

38. On September 21, 2020, Donna Harris, EMAGES, Inc. Board President, and defendant Hattie Wash sent correspondence to Department of Justice (DOJ) Tracey Willis stating "Effective October 1, 2020, the Board of Directors will terminate our grant award…2018-CY-BX-0025" also stating COVID-19 and the State of Illinois Shelter in Place mandate prevented EMAGES from fulfilling the Performance measures of the Second Chance grant. (Ex.29)

39. On September 21, 2020, defendant Hattie Wash sent an email to all staff stating, in part, "…The Covid-19 Pandemic, the Shelter in Place Mandate by the State of Illinois, less than 15% of sex offender clients paying their fees as well as EMAGES not receiving a payment from the FY21 State budget which began July, 2020 has created an economic hardship and cash flow problem for EMAGES…."(Ex.30)

40. On September 21, 2020, Donna Harris and defendant Hattie Wash created a letter to DOJ Tracey Willis basically repeating more extensively the message in the email (Ex.1) of September 21, 2020. (Ex.31)

41. On September 21, 2020, plaintiff sent an email to DOJ basically refuting defendant Hattie Wash's claim on how many clients were being served during Covid. (Ex.32)

42. On September 24, 2020, plaintiff sent an email to DOJ defendants stating they had not

addressed how they were going to protect my Whistleblower protections. (Ex.33)

43. On September 30, 2020, defendant Hattie Wash sent an email titled "Termination of the Department of Justice Second Chance Program Grant" to the Parole Officer supervising the clients of the program. (Ex.34)

44. On October 7, 2020, DOJ Tracey Willis sent defendant Hattie Wash stating, in part, "Do you plan on having Dr. Nance names as POC (point of contact) in the new JustGrants for all remaining items? (Ex.35)

45. On October 7, 2020, defendant Hattie Wash replied via email "I have added Dr. Nance to the JustGrants…." (Ex.36)

46. On October 15, 2020, plaintiff received an email from BJA Division Chief Michael Dever stating "Per Dr. Wash and in coordination with the EMAGES, Board of Directors, BJA was notified that the award activity ceased as of 10/01/2020, and no grant funded activities are permitted beyond that date…."

47. On October 15, 2020, Jean forwarded an email plaintiff sent to EMAGES, Inc.'s management stating "BJA Division Chief Michael Dever informed me this morning via email Grant #2018-CY-BX-0025 was defunded as of 10/1/20. I will file a Federal lawsuit on or about 10/25/20…."

48. On October 23, 2020, plaintiff filed his initial complaint against the Department of Justice (DOJ), EMAGES, Inc., Hattie Wash, and Thomas Bradley.

49. On November 3, 2020, defendant Hattie sent an email to her Board of Directors stating "Please see attached copy of Law suit."

50. On December 28, 2020, defendant Hattie sent false information to DOJ employee, Tracey

Willis, stating "March 2019, the COVID 19 pandemic hit Chicago…only six months of services were delivered to the seven groups…." (Ex.37)

51. On March 26, 2021, DOJ, Bureau of Justice Programs (BJA) Office of the Chief Financial Officer sent a letter to defendant Hattie Wash stating, in part, "…Based on our review…these procedures did not clearly define areas of responsibilities relative to federal grants management, and did not include specific provisions for tracking grant expenditures by approved budget categories…Based on an analysis of the EMAGES financial activities, we noted that the EMAGES is commingling the grant 2018-CY-BX-0025 funds with other federal agencies' funds within their accounting system…Based on a judgmental sample review of expenditures, we noted that the EMAGES was unable to fully support and justify the rational allocation method used to charge $800 in Other Cost to award 2018-CY-BX-0025…." (Ex.1)

52. On April 29, 2021 Ms. Bernice Horne and Abitha William (hereinafter," Bernice") of BETHA Associates, Ine. (OJP Peer Review Support Services) contacted plaintiff via email requesting his availability to peer review the FY 2021 Second Chance Aet Community-Based Reentry Program, which is the process.

53. Plaintiff accepted the invitation to peer review this solicitation.

54. Bernice responded via email stating "Dr. Fred Nance Jr., Thank you for reaching out. Yes, please follow the steps of clicking on the JustGrants Peer Review Portal icon and completing your contact information."

55. On May 25, 2021, DOJ, BJA, OP's Bethea sent an email to plaintiff stating "The Office of Justice Programs (0JP) has received your appeal in response to the Second Chance Act Community-based Reentry FY 2021 grant solicitation. After careful consideration of your case, unfortunately the decision has been made to deny your appeal...."

56. On May 25, 2021, plaintiff responded to Bethea's email filing a supplement to his original complaint, which this District Court did not respond to except for denying the supplement to the original complaint.

57. On May 26, 2021, Bethea sent the following email to plaintiff stating "... The Office of Justice Programs (0JP) has received your request to apply late in response to the Second Chance Act Community-based FY 2021 grant solicitation. We understand that your ageney experienced technical difficulties while using our new system Justice Grants System (JustGrants), and we are pleased to offer additional time to submit/ complete your application. This represents a change in our decision as previously communicated. We will be opening Second Chance Act Community-based FY2021 grant solicitation on 7 am EST on May 27, 2021 to 1:00 pm EST on May 28, 2021. Please log in to JustGrants during this time to submit/ complete your application.

58. DOJ, BJA, OJP announced BJA FY 21 Second Chance Act Community-Based Reentry Program Solicitation.

59. Plaintiff's organization C.LI.C.K. Services, NFP attempted to submit an application for this solicitation but missed the deadline for submission because the JustGrants website had technical glitches/difficulties.

60. Plaintiff sent an email requesting re-submission of his application.

61. Plaintiff's organization did not receive the grant.

62. DOJ. BJA, OJP's JustGrants system had technical difficulties and due to these technical difficulties plaintiffs application was rejected on the deadline date.

63. Plaintiff went through complaint procedure as instructed by the JustGrants system filing an appeal.

64. On Monday, June 7, 2021, 0947:24 AM CDT, Horne, Bernice

<bernice.horne@leidos.com> wrote: Dear Reviewers, You've been selected to participate on the FY 21 Second Chance Act Community-Based Reentry Program peer review. Below are the details for the Orientation Call.

65. Bernice et al. were on the Orientation Call, including DOJ, BJA, OJP employee Bethea.

66. Bernice informed all peer reviewers on the call we would receive our peer review assignments within 24 hours. Bernice also sent this message via email Dear Reviewers, A replay of today's live Orientation Session will be available for your review after 4:00 p.m ET. You may access the replay by following the dial in information provided below. If you were unable to participate in the live orientation call earlier today, it is mandatory for you to access the replay of this session prior to getting started on the review. Please note: When accessing the replay you will be prompted to 'state your name' Please ensure that you clearly enunciate both your first and last name, so that your replay access is captured by the conferencing system. Replay Dial-in Number: 855-859-2056 Conference ID: 5679036# The replay recording will be available until 06/21/2021 Please contact me if you have any questions or concerns. Thank you." Since 2009 this has been the normal response since plaintiff has been a peer reviewer before receiving our assignments.

67. On June 7, 2021, plaintiff sent an email to his Executive team (CL.LC.K. Services NFP) regarding the JustGrants application and possible retaliation.

68. On June 8, 2021, plaintiff sent this email to Bernice et al. "I have not received anything since listening to the orientation call on June 7, 2021. When will I receive the email giving me access to the grant applications for peer review? During the orientation call it was said we would receive information via email on proceeding by the end of business on June 8, 2021. Please respond. Thank you"

69. On June 8, 2021 Judge Alonso dismissed, with prejudice, all claims against the United States Department of Justice. (Dkt. #64)

70. On June 9, 2021, plaintiff wrote this email to himself regarding the possible ongoing retaliation and DOJ et al. in case #20cv6316.

71. On June 9,2021, plaintiff sent an email to Bernice et al. stating "Since you guys are failing to respond to my inquiry, I will include you in my ongoing Whistleblower complaints with the Office of the Inspector General, General Council for retaliation. I am attaching our email communications regarding this 2021 peer review process to my Whistleblower complaints I know Andre Bethea is behind this retaliation, which have already reported. I anticipated this retaliatory action."

72. On June 9,2021, Bernice et al. sent an email to plaintiff stating "Hello Dr. Nance, Thank you for reaching out, We appreciate your time and patience while we finalized the panel composition for this grant. As there are fewer applications going forward to peer review than initially anticipated, we will not need to utilize the total number of peer reviewers initially invited to participate.

73. On June 9, 2021, plaintiff responded stating "What are you saying here? Have I been taken off this peer review? Please respond. Thank you."

74. On Thursday, June 10, 2021, 12:01:04 PM CDT, Horne, Bernice <bernice.horne@leidos.com> wrote: "Dear Dr. Nance, You are not eligible to serve on this peer review panel. Peer reviewers must comply with BJAs conflict of interest rules and regulations. A peer reviewer cannot have a financial relationship with an organization that submitted an application under the solicitation being peer reviewed. Thank you for your interest.

75. On June 10, 2021, plaintiff sent an email to the peer review team objecting to their

statement "...You are not eligible to serve on this peer review panel.

76. Bernice et al, are changing their statements for why plaintiff is being retaliated against. This has never happened to plaintiff in 1 years! Decision have always been made to exclude peer reviewers "before" the peer review Orientation call! When the Orientation call is made BETHA Associates, Inc. staff know what peer reviewers are needed.

77. On June 10, 2021, plaintiff sent the following messages via email to Bernice et al. stating "I worked for you guys on the 2019 peer review team with the same grant, which I had a financial interest with another grant #2018-CY-BX-0025. I also worked on the same grant in 2020 for you guys while I had a financial interest with another grant# 2018-CY-BX-0025." (Ex.38)

78. This decision has DOJ, BJA, OJP Bethea's fingerprints all over it. Bethea is retaliating against plaintiff due to this litigation.

79. On June 10, 2021, plaintiff filed a Motion to Stay Proceedings in case #20v6316 (Dkt. #66) and attached exhibits (Dkt. #66-1), which included this "new" issue that the District Court did not fully address.

80. The actions of DOI, BJA, OJP, and possible conspiratorial connections to and between EMAGES, Inc. and Dr. Wash, are ongoing and happened after the District Courts Memorandum Opinion and Order of June 8, 2021, in case #20ev6316.

81. On July 15, 2022, plaintiff sent an email to defendant Hattie's lawyer, Attorney Derrick Thompson regarding defendant Hattie refusing to provide information for plaintiff's student loan relief package. (Ex.39)

**ARGUMENT**

At least 95% of all exhibits submitted here is new evidence discovered via EMAGES, Inc. and Hattie Wash's deposition of plaintiff on August 29, 2023, which makes the United States Department of Justice culpable. Plaintiff has a plethora of evidence received from the EMAGES, Inc. deposition; too much to include in this Amended Complaint. It is discoverable material. Discovery from the United States Department of Justice as it relates to this litigation and statement of facts will produce additional, new, and damning evidence to support plaintiff's litigation and claims.

It appears in the Memorandum Opinion and Order on August 14, 2023 from Judge LaShonda A. Hunt has stripped plaintiff's Whistleblower Act rights and claims reducing this Amended Complaint to a FTCA claim. With the new statement of facts and evidence plaintiff has produced from a previous defendant(s) EMAGES, Inc. and Hattie Wash's deposition on August 29, 2023, plaintiff's Whistleblower Act rights and claims should be restored.

The United States Department of Justice (DOJ) defendants, Michael Dever, Andre Bethea, Tracey Willis; and Contractors of the DOJ, BETHA Associates, Inc., Leidos, Bernice Horne and Abitha William; and the Assistant U.S. Attorney defending the defendants in this matter misrepresented their case and deceived this court knowing the evidence for fraud and misappropriation of funds by defendants EMAGES, Inc. and Hattie Wash brought by the pro se plaintiff was real, honest, and true; and that the evidence demonstrates shortly after pro se plaintiff filed his complaint DOJ representatives discovered pro se plaintiff's allegations of fraud and misappropriation of funds filed under the protections of the Whistleblower Act were true and correct. Yet they persecuted and defamed pro plaintiff in this court proceeding, attempting to destroy his name, legacy, and integrity. Even if the plaintiff was not a Whistleblower, which he

was, plaintiff had a duty to report fraud and misappropriation of grant funds. Plaintiff has been a DOJ peer reviewer since 2009 reviewing these grant proposals.

Defendants EMAGES, Inc. and Hattie Wash committed fraud and gross misappropriation of funds, which is proven with Exhibit 1; and the United States defendants assisted as conspirators due to their negligence and their total disregard for addressing and processing appropriately a Whistleblower Act complaint. Plaintiff notified the United States DOJ defendants in March of 2020 that EMAGES, Inc. and Hattie Wash had committed fraud and gross misappropriation of funds. The United States DOJ defendants did not investigate the issue until August of 2020, which allowed defendants EMAGES, Inc. and Hattie Wash to devise, strategize, and deceitfully execute a plan to retaliate against the plaintiff's employment by returning the grant to the United States DOJ defendants. Now this court has reduced and minimized plaintiff's complaint to a Federal Tort Claims Act, which is peanuts within the grand scheme of these nefarious and outrageous act committed by the United States DOJ defendants against a Whistleblower. The nefarious actors here have allowed taxpayers monies to be squandered and abused.

**FEDERAL TORT CLAIMS ACT**

The Federal Tort Claims Act (FTCA) allows a plaintiff to bring certain state-law tort claims against the United States for torts committed by federal employees acting within the scope of their employment, provided that the plaintiff alleges six statutory elements of an actionable claim. See 28 U. S. C. §1346(b). The Federal Tort Claims Act (FTCA) allows a plaintiff to bring certain state-law tort suits against the Federal Government. 28 U. S. C. §2674; see also §1346(b). It also includes a provision, known as the judgment bar, which precludes "any action by the plaintiff, by reason of the same subject matter, against the employee of the

government whose act or omission gave rise to the claim" if a court enters "the judgment in an action under section 1346(b)." §2676.

A claim is actionable if it alleges the six elements of §1346(b), which are that the claim be: "[1] against the United States, [2] for money damages, . . . [3] for injury or loss of property, or personal injury or death [4] caused by the negligent or wrongful act or omission of any employee of the Government [5] while acting within the scope of his office or employment, [6] under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." *Ibid.* (quoting §1346(b)).

The FTCA only authorizes tort lawsuits against the United States itself; See, e.g., *Jude v. Comm'r of Soc. Sec.*, 908 F.3d 152, 157 n.4 (6th Cir. 2018) ("The only proper defendant in an FTCA claim is the United States."). It expressly shields individual federal employees from personal liability for torts that they commit within the scope of their employment. *Levin v. United States*, 568 U.S. 503, 509 (2013). That said, the FTCA shields federal employees from liability only for tort claims; it does not shield federal employees from personal liability for constitutional or statutory violations. See 28 U.S.C. § 2679(b)(2) Thus, under the FTCA the remedy against the United States "is exclusive of any other civil action or proceeding for money damages" that might otherwise be available "against the employee whose act or omission gave rise to the claim." 28 U.S.C. § 2679(b)(1). See also *Levin*, 568 U.S. at 509. This provision of the FTCA is "often called the Westfall Act." *Id.*

The FTCA is a limited waiver of the government's sovereign immunity from suit in certain cases involving negligence by federal employees in the course of their employment. *Dolan v. United States Postal Serv.*, 546 U.S. 481, 484-85 (2006) (citing 28 U.S.C.

§ 1346(b)(1)). Specifically, under the FTCA, the United States is liable "in the same manner and to the same extent as a private individual under like circumstances." *Dolan*, 546 U.S. at 486 (citing 28 U.S.C. § 2674).

The United States itself is the only proper defendant. *Smith v. United States*, 561 F.3d 1090, 1099 (10th Cir. 2009) ("The United States is the only proper defendant in an FTCA action." (quoting *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 n. 4 (10th Cir. 2001))); *Jackson v. Kotter*, 541 F.3d 688, 693 (7th Cir. 2008) ("The only proper defendant in an FTCA action is the United States."); *CNA v. United States*, 535 F.3d 132, 138 n.2 (3d Cir. 2008) ("The Government is the only proper defendant in a case brought under the FTCA."); *Duncan v. Dep't of Labor*, 313 F.3d 445, 447 (8th Cir. 2002) ("Because a federal agency cannot be sued under the Federal Tort Claims Act, the United States is the proper defendant."); *Kroggel v. Runyon*, 993 F.2d 1550, at *3 (7th Cir. 1993) ("Under the FTCA, only the United States may be named as a defendant, federal agencies or individuals may not be named."); *Rivera v. United States*, 928 F.2d 592, 609 (2d Cir. 1991) ("The FTCA, however, precludes tort suits against federal agencies."); *Allen v. Veterans Admin.*, 749 F.2d 1386, 1388 (9th Cir. 1984) ("The Federal Tort Claims Act provides that the United States is the sole party which may be sued for personal injuries arising out of the negligence of its employees . . . . Individual agencies of the United States may not be sued.") This shorthand description is not entirely accurate [because] § 2680(h) does not remove from the FTCA's waiver all intentional torts, e.g., conversion and trespass, and it encompasses certain torts, e.g., misrepresentation, that may arise out of negligent conduct." *Levin v. United States*, 133 S. Ct. 1224, 1235 (2013).

In count four, *Smith* asserts an FTCA claim against the United States for intentional infliction of emotional distress ("IIED"). The United States argues that, even though IIED is not

one of the torts explicitly listed in § 2680(h), it is nevertheless excluded under that provision

because the IIED claim "arises out of" one of the enumerated torts (Doc. 16). 28 U.S.C. §

2680(h). Specifically, the United States claims that the IIED claim is based on the incident where

*Smith's* co-worker threw paper at her, meaning it arises out of assault and is therefore barred by §

2680(h) (Doc. 16). The Court disagrees. *Smith's* IIED claim appears to be based not only on the

paper-throwing incident, but also on the harassment and retaliation that she allegedly suffered

from her supervisor. Therefore, the IIED claim is based on conduct above and beyond the

assault and consequently is not barred by that exception. Plaintiff claims IIED in his causes of

action.

Under Illinois law, to succeed on a claim for intentional infliction of emotional distress

(IIED), a plaintiff must prove that: "(1) the defendants' conduct was extreme and outrageous; (2)

the defendants knew that there was a high probability that their conduct would cause severe

emotional distress; and (3) the conduct in fact caused severe emotional distress." *Swearnigen-El

v. Cook Cty. Sheriff's Dept.*, 602 F.3d 852, 864 (7th Cir. 2010). Plaintiff was 71 years old when he

was terminated. Plaintiff receives social security benefits. Plaintiff owns a home and a car, which

he pays a car note over $500.00 a month. In order for plaintiff to retain employment at this age,

he would have to get a grant, which plaintiff applied for a DOJ Second Chance Act grant was

denied.

An individual cannot bring suit under the FTCA unless she has first presented her claim

to the appropriate federal agency and that agency has denied the claim. *Buechel v. United

States*, 746 F.3d 753, 758 (7th Cir. 2014). A claim has been presented when the complainant has

pleaded sufficient facts to put the agency on notice of the claim so that it may investigate.

*Buechel*, 746 F.3d at 760. In other words, "if the claim would have been apparent to a 'legally

sophisticated' reader of the form, then [the Court] will charge the agency with notice of that claim." *Palay v. United States*, 349 F.3d 418, 425-26 (7th Cir. 2003); *Buechel*, 746 F.3d at 760 ("Any claim 'implicit in the facts' should be deemed to have been presented to the agency."). In determining whether a claim has been presented to the agency, "pro se administrative complaint forms are 'entitled to a generous construction.'" *Buechel*, 746 F.3d at 760 (quoting Palay, 349 F.3d at 425-26). Plaintiff brought his claim to the U.S. Department of Justice Civil Division Torts Branch, Federal Tort Claims. On April 28, 2022, James G. Touhey Jr., Director, Torts Branch sent plaintiff a Certified Letter stating, in part, "…After careful consideration, it has been determined that your claim is not compensable. Accordingly, your claim must be and hereby is denied…."

The FTCA only waives sovereign immunity where "the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b); see also 28 U.S.C. § 2674 ("The United States shall be liable . . . in the same manner and to the same extent as a private individual under like circumstances). "This requirement means the court must find a parallel to [the plaintiff's] claims under Illinois law." *Mayorov v. United States*, 84 F. Supp. 3d 678, 697 (N.D. Ill. 2015) (citing *United States v. Olson*, 546 U.S. 43, 44 (2005)). Thus, an alleged violation of a federal statute or agency directive can only form the basis for a FTCA claim if the state law imposes a similar obligation upon private persons. *Ochran v. United States*, 273 F.3d 1315, 1317 (11th Cir.2001) ("[T]he FTCA was not intended as a mechanism for enforcing federal statutory duties."); *Johnson v. Sawyer*, 47 F.3d 716, 728 (5th Cir.1995) (en banc) (FTCA does not apply where the alleged negligence "arises out of the failure of the United States to carry out a [federal] statutory duty"); *Klett v. Pim*, 965 F.2d 587, 589 (8th Cir. 1992) ("The violation of a federal statute or

administrative regulation by an agency of the United States does not, standing alone, create a cause of action under the FTCA. Federally imposed obligations, whether general or specific, are irrelevant to our inquiry under the FTCA, unless state law imposes a similar obligation upon private persons.") Illinois imposes obligations regarding intentional infliction of emotional distress, and the Whistleblower Act.

The only basis upon which the Court can imagine *Smith* proceeding is a First Amendment claim pursuant to *Bivens v. Six Unknown Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388, 397 (1971). *Smith* cannot replead this claim as a constitutional cause of action under *Bivens*, however, because the basis of this claim is retaliation for filing a discrimination complaint with the EEOC and whistleblowing activity, and these claims must be filed under Title VII and the Civil Services Reform Act, respectfully. *Mlynczak v. Bodman*, 442 F.3d 1050, 1057 (7th Cir. 2006) (Title VII "provides the exclusive judicial remedy for claims of discrimination in federal employment." (quoting *Brown v. General Services Administration*, 425 U.S. 820, 835 (1976))); *Richards v. Kiernan*, 461 F.3d 880, 885 (7th Cir. 2006) (The Civil Service Reform Act provides the exclusive remedy for a whistleblower cause of action). "*Bivens* authorizes the filing of constitutional tort suits against federal officers in much the same way that 42 U.S.C. § 1983 authorizes such suits against state officers . . . ." *King v. Fed. Bureau of Prisons*, 415 F.3d 634, 636 (7th Cir. 2005). Plaintiff here files a First Amendment claim under Title VII and *Bivens*.

Plaintiff maintains that the United States defendants violated his First Amendment rights by retaliating against him for blowing the whistle on fraud and gross misappropriation of funds. The Supreme Court case of *Bivens* authorizes the filing of constitutional suits against individual federal officers. *Bivens v. Six Unknown Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388,

397, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Plaintiff is not an employee of the federal government.

The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

*Levin v. United States*, 568 U.S. 503, 506 (2013)

The Federal Tort Claims Act waives sovereign immunity from tort suits, 28 U. S. C. 1346(b)(1), except for certain intentional torts, including battery; it originally afforded tort victims a remedy against the government, but did not preclude suit against the alleged tort-feasor. The applicable statute imposes liability on the United States for tort claims "in the same manner and to the same extent as a private individual under like circumstances[.]" 28 U.S.C. § 2674. Congress enacted the Federal Tort Claims Act (FTCA), which authorizes plaintiffs to obtain compensation from the United States for the torts of its employees.

The FTCA only authorizes tort lawsuits against the United States itself. It expressly shields individual federal employees from personal liability for torts that they commit within the scope of their employment. Thus, under the FTCA the remedy against the United States "is exclusive of any other civil action or proceeding for money damages" that might otherwise be available "against the employee whose act or omission gave rise to the claim."

Starting in the late 1980s, Congress has prohibited courts from holding federal employees personally liable for torts committed within the scope of their employment in order to avert what Congress perceived as "an immediate crisis involving the prospect of personal liability and the threat of protracted personal tort litigation for the entire Federal workforce." The individual employee generally remains immune from tort liability for torts committed within the scope of

employment, even if a provision of the FTCA forecloses the plaintiff from recovering monetary damages from the United States itself.

With limited exceptions, an FTCA plaintiff may not recover any damages that exceed the amount initially requested when the plaintiff submitted the claim to the applicable agency to satisfy the FTCA's exhaustion requirement. See 28 U.S.C. § 2675(b) ("Action under this section shall not be instituted for any sum in excess of the amount of the claim presented to the federal agency, except where the increased amount is based upon newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency, or upon allegation and proof of intervening facts, relating to the amount of the claim.").

However, a plaintiff can potentially recover damages in excess of the amount initially requested if the plaintiff could demonstrate "intervening facts" or "newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency" that warrant a larger award. 28 U.S.C. § 2675(b). See, e.g., *Zurba*, 318 F.3d at 738–44 (analyzing when an FTCA plaintiff may recover damages in excess of the amount requested in his initial administrative claim); *Lebron v. United States*, 279 F.3d 321, 325–31 (5th Cir. 2002) (same); *Michels v. United States*, 31 F.3d 686, 687–89 (8th Cir. 1994) (same); *Allgeier*, 909 F.2d at 877–79 (same). See generally Daniel Shane Read, The Courts' Difficult Balancing Act To Be Fair to both Plaintiff and Government Under the FTCA's Administrative Claims Process, 57 BAYLOR L. REV. 785 (2005) (discussing when courts have allowed plaintiffs to recover damages that exceed their administrative claims and opining when courts should allow plaintiffs to do so as a matter of policy). Plaintiff has met this bar with "newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency".

A plaintiff may not institute an FTCA action against the United States unless (1) the plaintiff has first "presented the claim to the appropriate Federal agency" whose employees are allegedly responsible for the plaintiff's injury, and (2) that agency has "finally denied" the plaintiff's claim. See 28 U.S.C. § 2675(a) ("The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim . . . ."); id. (Stating that Section 2675's exhaustion requirements do "not apply to such claims as may be asserted under the Federal Rules of Civil Procedure by third party complaint, cross-claim, or counterclaim"). 321 *Id*. See *Read,* supra note 318, at 794–95 (outlining the process for filing an administrative claim under the FTCA).

These administrative exhaustion requirements afford federal agencies an opportunity to settle disputes before engaging in formal litigation in the federal courts. *Lopez v. United States*, 823 F.3d 970, 976 (10th Cir. 2016) (quoting *Smoke Shop, LLC v. United States*, 761 F.3d 779, 786 (7th Cir. 2014)). See *Michels*, 31 F.3d at 688 ("In 1966, to encourage more administrative settlements, Congress amended the FTCA to require administrative claims in all cases.") "Encouraging settlement of tort claims within administrative agencies" in this manner arguably "reduce[s] court congestion and avoids unnecessary litigation." *Ugo Colella*, The Case for Borrowing a Limitations Period for Deemed-Denial Suits Brought Pursuant to the Federal Tort Claims Act, 35 SAN DIEGO L. REV. 391, 401 (1998). See *Read*, supra note 318, at 791 (explaining that the "two goals" of the administrative claim requirement are "to ease court congestion and provide fairness to plaintiffs by aiding the Government in its attempts to settle meritorious cases"). The plaintiff's case is meritorious and he has exhausted all administrative remedies.

Because litigation can be costly and time-consuming, the settlement of claims within administrative agencies arguably not only "benefits FTCA claimants by permitting them to forego the expense of full-blown litigation," but also "frees up limited [governmental] resources for more pressing matters." *Colella*, supra note 323, at 401–02. See Read, supra note 318, at 792 ("By stating that a goal was to aid the efficient settlement of meritorious claims, it is clear that Congress intended to help attorneys on both sides resolve disputes by creating a process at the administrative level that would lead to less work for all involved. Congress related that the then current situation unnecessarily consumed the time of United States Attorneys and subjected deserving plaintiffs to needless delays and attorneys' fees in processing their claims through the federal courts."); *Axelrad*, supra note 2, at 1343 ("Administrative claims allow parties to reach the benefits of settlement without the expense of filing, much less litigating a suit.").

A claimant ordinarily has two years from the date of his injury See 28 U.S.C. § 2401(b) ("A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues."); Morales-Melecio v. United States, 890 F.3d 361, 368 (1st Cir. 2018) ("In general, a tort claim under the FTCA accrues when a plaintiff is injured."). To present a written notification of his FTCA claim "to the Federal agency whose activities gave rise to the claim." 28 C.F.R. § 14.2. The United States has promulgated a standard form which the claimant may (but need not) use for this purpose. See id. § 14.2(a) ("[A] claim shall be deemed to have been presented when a Federal agency receives . . . an executed Standard Form 95 or other written notification of an incident.").

Many courts require the plaintiff to prove that the agency actually received his claim. See *Cooke v. United States*, 918 F.3d 77, 81-82 (2d Cir.), cert. denied, 139 S. Ct. 2748 (2019) (discussing the competing majority and minority positions on this issue). Courts adopting this

interpretation of the FTCA's claim presentment requirement reason that it is insufficient for the plaintiff to merely prove that he placed the claim in the mail. See, e.g., id. at 81-82 ("The mere mailing of a notice of claim does not satisfy the FTCA's presentment requirement."). This written notification must "sufficiently describe the injury to enable the agency to begin its own investigation." E.g., *Lopez*, 823 F.3d at 976 (quoting *Estate of Trentadue ex rel. Aguilar v. United States*, 397 F.3d 840, 852 (10th Cir. 2005)). See 28 C.F.R. § 14.4 (specifying various types of information that a claimant "may be required to submit"); *Chronis v. United States*, 932 F.3d 544, 547 (7th Cir. 2019) (explaining that the FTCA's "presentment requirement has four elements: (1) notification of the incident; (2) demand for a sum certain; (3) title or capacity of the person signing; and (4) evidence of the person's authority to represent the claimant"). Once the agency receives such notice, it may either settle the claim or deny it. *Figley*, Ethical Intersections, supra note 5, at 359. See *Axelrad*, supra note 2, at 1336 ("When an agency receives an administrative claim it is empowered to consider whether to grant the claim in full, resolve the claim by negotiating a compromise settlement, deny the claim, or take no action on the claim."); 28 U.S.C. § 2672 (governing the administrative settlement of FTCA claims).

With limited exceptions, See, e.g., *Tunac v. United States*, 897 F.3d 1197, 1207 (9th Cir. 2018), cert. denied, 139 S. Ct. 817 (2019) (explaining that a court may toll the two-year time limit, but only if the plaintiff shows, "among other things, that 'fraudulent conduct by the defendant resulted in concealment of the operative facts'" (alteration in original) (quoting Fed. *Election Comm'n v. Williams*, 104 F.3d 237, 240–41 (9th Cir. 1996))). Additionally, sometimes a plaintiff cannot fairly be expected to file an administrative claim within two years of his injury, especially when "the fact or cause of an injury is unknown to (and perhaps unknowable by) a

plaintiff for some time after the injury occurs." E.g., *Dominguez v. United States*, 799 F.3d 151, 153 (1st Cir. 2015) (quoting *Rakes v. United States*, 442 F.3d 7, 19 (1st Cir. 2006)).

In such instances, "the statute of limitations clock does not begin to run until the putative plaintiff knows of the factual basis of both his injury and its cause." *Morales-Melecio*, 890 F.3d at 368. See also, e.g., *Tunac*, 897 F.3d at 1206–07 (applying this rule in the medical malpractice context). This rule "protects plaintiffs who are either experiencing the latent effects of a previously unknown injury or struggling to uncover the underlying cause of their injuries from having their claims time-barred before they could reasonably be expected to bring suit." *A.Q.C. ex rel. Castillo v. United States*, 656 F.3d 135, 140 (2d Cir. 2011). a tort claim against the United States will be time-barred if the claimant fails to submit an administrative claim within the two-year time limit. *Zappone v. United States*, 870 F.3d 551, 555 (6th Cir. 2017) (quoting 28 U.S.C. § 2401(b)). See, e.g., *Douglas v. United States*, 814 F.3d 1268, 1279 (11th Cir. 2016) (affirming dismissal of FTCA claims that plaintiff had "failed to fully exhaust").

As a general rule, a plaintiff must "exhaust his administrative remedies prior to filing suit." A plaintiff usually cannot file an FTCA lawsuit and then cure his failure to comply with the exhaustion requirement by belatedly submitting an administrative claim. See *McNeil v. United States*, 508 U.S. 106, 107–13 (1993) (emphasis added). See also, e.g., *Douglas*, 814 F.3d at 1279 (affirming dismissal of FTCA claims that plaintiff had "failed to fully exhaust"). But see *D.L. ex rel. Junio v. Vassilev*, 858 F.3d 1242, 1246 (9th Cir. 2017) (holding "that the FTCA's exhaustion requirement does not prevent a plaintiff from amending a previously filed federal complaint over which there is jurisdiction to add an FTCA claim once he has exhausted his administrative remedies") (emphasis in original).

The Federal Tort Claims Act (FTCA) allows a plaintiff to bring certain state-law tort claims against the United States for torts committed by federal employees acting within the scope of their employment, provided that the plaintiff alleges six statutory elements of an actionable claim. See 28 U. S. C. §1346(b). The Federal Tort Claims Act (FTCA) allows a plaintiff to bring certain state-law tort suits against the Federal Government. 28 U. S. C. §2674; see also §1346(b). It also includes a provision, known as the judgment bar, which precludes "any action by the plaintiff, by reason of the same subject matter, against the employee of the government whose act or omission gave rise to the claim" if a court enters "the judgment in an action under section 1346(b)." §2676.

The FTCA streamlined litigation for parties injured by federal employees acting within the scope of their employment. Before 1946, a plaintiff could sue a federal employee directly for damages, but sovereign immunity barred suits against the United States, even if a similarly situated private employer would be liable under principles of vicarious liability. *Pfander & Aggarwal, Bivens*, the Judgment Bar, and the Perils of Dynamic Textualism, 8 U. St. Thomas L. J. 417, 424–425 (2011); see also *Philadelphia Co. v. Stimson*, 223 U. S. 605, 619–620 (1912).

Despite that immunity, the Government often would provide counsel to defendant employees or indemnify them. *Pfander*, 8 U. St. Thomas L. J., at 425. In addition, Congress passed private bills that awarded compensation to persons injured by Government employees. Id., at 424, n. 39. But by the 1940s, Congress was considering hundreds of such private bills each year. Ibid.1 "Critics worried about the speed and fairness with which Congress disposed of these claims." Id., at 426. "In 1946, Congress passed the FTCA, which waived the sovereign immunity of the United States for certain torts committed by federal employees" acting within the scope of their employment. *FDIC v. Meyer*, 510 U. S. 471, 475–476 (1994).

The Act in effect ended the private bill system by transferring most tort claims to the federal courts. *See Pfander, 8 U. St. Thomas. L. J.*, at 424, n. 39. Plaintiffs were (and are) required to bring claims under the FTCA in federal district court. Federal courts have jurisdiction over these claims if they are "actionable under §1346(b)." *Meyer*, 510 U. S., at 477.

While waiving sovereign immunity so parties can sue the United States directly for harms caused by its employees, the FTCA made it more difficult to sue the employees themselves by adding a judgment bar provision. That provision states: "The judgment in an action under section 1346(b) of this title shall constitute a complete bar to any action by the claimant, by reason of the same subject matter, against the employee of the government whose act or omission gave rise to the claim." §2676. "Once a plaintiff receives a judgment (favorable or not) in an FTCA suit," the bar is triggered, and "he generally cannot proceed with a suit against an individual employee based on the same underlying facts." *Simmons v. Himmelreich*, 578 U. S. 621, 625 (2016). The Act thus opened a new path to relief (suits against the United States) while narrowing the earlier one (suits against employees).

*Morales-Melecio v. United States*, 890 F.3d 361, 368 (1st Cir. 2018) ("In general, a tort claim under the FTCA accrues when a plaintiff is injured."). 326 28 C.F.R. § 14.2. The United States has promulgated a standard form which the claimant may (but need not) use for this purpose. 28 U.S.C. § 2675 – Jurisdictional Pre-Conditions to Suit (a) an action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.

The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time, thereafter, be deemed a final denial of the claim for purposes of this section. 28 U.S.C. § 2674 – Federal Tort Claims Act: The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

Under the Illinois Whistleblower Act, "an employer may not retaliate against an employee for refusing to participate in an activity that would result in a violation of a State or federal law, rule, or regulation." 740 ILL. COMP. STAT. ANN. 174/20. There are two aspects to such a claim: (1) the refusal to participate; and (2) the violation of a statute, rule, or regulation. *Roberts v. Bd. of Trustees of Cmty. Coll. Dist. No. 508*, 135 N.E.3d 891, 900–01 (Ill. 2019). Under Illinois common law, an employer may discharge an employee-at-will with or without cause. *Barr v. Kelso-Burnett Co*., 106 Ill. 2d 520, 525 (1985). Courts have acknowledged, however, that an employer's ability to discharge an employee without cause in an oppressive manner could undermine a significant public policy. *Michael v. Precision Alliance Group, LLC*, 2014 IL 117376, ¶ 30.

To maintain a proper balance between an employer's interests in efficiently and profitably operating a business, society's interest in assuring its public policies are followed, and an employee's interest in earning a livelihood, the courts have recognized a cause of action for retaliatory discharge. *Palmateer v. International Harvester Co*., 85 Ill. 2d 124, 129 (1981). It is a limited and narrow exception to the general rule that employees are at-will. *Fellhauer v. City of Geneva*, 142 Ill. 2d 495, 505 (1991). ¶ 23 The United States defendants, by and through their actions, caused a retaliatory discharge.

To state a claim for retaliatory discharge, an employee must plead that (1) the employer discharged the employee, (2) the discharge was in retaliation for the employee's activities, and (3) the discharge violates a clearly mandated public policy. *Michael,* 2014 IL 117376, ¶ 31. To succeed in a retaliatory discharge claim, the public policy alleged by a plaintiff must be found in the state or federal constitutions and statutes and, when they are silent, in Illinois or federal case law. *Palmateer*, 85 Ill. 2d at 130; see *Wheeler v. Caterpillar Tractor Co*., 108 Ill. 2d 502 (1985) (this court found a clearly mandated public policy enunciated in federal legislation and regulations, which were national in scope) a violation of the Whistleblower Act (740 ILCS § 174/1 et seq. (West 2014)). The Whistleblower Act provides employees protection from an employer's retaliation for certain disclosures and refusals and prohibits policies that prevent an employee from disclosing information to a government agency that the employee reasonably believes violate a state or federal law, rule, or regulation. 740 ILCS 174/10, 15, 20, 20.1, 20.2 (West 2014). Plaintiff informed the United States defendants that if they allowed his employer, EMAGES, Inc., to give the grant back they (United States defendants) would be liable in violating the Whistleblower Act because plaintiff would lose his employment. Plaintiff offered a solution, which was to give the grant to plaintiff's organization, C.L.I.C.K. Services, NFP, instead of closing the grant.

Individuals who are injured or whose property is damaged by the wrongful or negligent act of a federal employee acting in the scope of his or her official duties may file a claim with the government for reimbursement for that injury or damage. In order to state a valid claim, the claimant must demonstrate that (1) he was injured or his property was damaged by a federal government employee; (2) the employee was acting within the scope of his official duties; (3) the employee was acting negligently or wrongfully; and (4) the negligent or wrongful act

proximately caused the injury or damage of which he complains. The claimant must also provide documentation establishing that his claim satisfies all the elements of the FTCA. Plaintiff satisfied this requirement.

In order to be eligible to make a FTCA claim, there are four key things you must prove: An employee or agent of the federal government harmed you. The employee's acts or omissions were negligent or intentionally wrongful, the employee was acting within the scope of their duties at the time of the harm, you were hurt as a direct result of the negligence of the employee. The Federal Tort Claims Act is a 1946 law that entitles you to pursue a claim against the federal government if a government worker caused you harm while performing their official duties. The Act requires you to first make an administrative claim before proceeding with a lawsuit in a U.S. District Court if no settlement agreement can be reached with the government agency liable for losses. The plaintiff satisfied this requirement. As plaintiff stated, he offered a solution and the United States defendants refused the offer.

## CAUSES OF ACTION

A claim is actionable if it alleges the six elements of §1346(b), which are that the claim be: "[1] against the United States, [2] for money damages, . . . [3] for injury or loss of property, or personal injury or death [4] caused by the negligent or wrongful act or omission of any employee of the Government [5] while acting within the scope of his office or employment, [6] under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." *Ibid*. (quoting §1346(b)).

Plaintiff claims are actionable. Plaintiff complaint is against the defendant, United States. Plaintiff request 1.5 million dollars in damages. Plaintiff claims injury and personal injury, in

that, he suffered loss of employment, defamation, loss of peer reviewer for DOJ, emotional distress, among other issues outlined and discussed in the statement of facts, argument, and relief. Plaintiff suffered injury and other personal injury caused by the negligent or wrongful act or omission of DOJ employees. The DOJ employees were acting within the scope of their office or employment; and the DOJ defendants were acting under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." *Ibid*. (quoting §1346(b)).

### CLAIM 1

United States for intentional infliction of emotional distress

### CLAIM 2

United States for conspiracy

### CLAIM 3

United States for abuse of process

### CLAIM 4

United States for defamation

### CLAIM 5

United States for misrepresentation and deceit

### CLAIM 6

United States retaliating in violation of the Whistleblower Protection Act

### CLAIM 7

United States retaliation for filing a Whistleblower complaint for fraud and gross misappropriation of funds violating Title VII and the First Amendment

**Relief**

United States for loss of employment in violation of the Whistleblower Protection Act The United States employees violated the National Defense Authorization Act of 2013, amended 2016 (NDAA) Whistleblower Protections provisions of828 of Pub. L. No. 112-239, 126 Stat. 1632 (2013), as amended by Pub. L. No. 114-261, 130 Stat. 1362 (2016), 10 U.S.C. §2409; 41 U.S.C. $4712; 5 U.S.C. $1221(e)(1), 31 U.S.C. §3730, Federal Tort Claims Act (FTCA), and the Federal Claims Aet (FCA). Reinstatement is the "presumptive and preferred remedy."

Back pay is compensation for lost wages and benefits that the whistleblower would have earned absent the adverse employment action, offset by interim earnings. A backpay award may include all promotions and salary increases the complainant would have received in the absence of retaliation. Back pay provides compensation for any financial losses the employee sustained as a result of the retaliatory action. These damages often include wages, promotions, stock options, vacation pay, and other benefits. The False Claims Act states that employees who are retaliated against and are entitled to twice the amount of back pay they have lost. Pre-judgement interest is also applied to the total amount of back pay. Interest is added every day from the time the retaliatory action is taken, to just before the judge issues a judgement. Wherefore. plaintiff respectfully request the following relief: (1) $500,000.00 in monetary damages; (2) approval for a Second Chance Act grant for CL.I.C.K. Services NFP's Esports Gaming and Trauma Informed Mentoring program in the amount of $750,000.00 for our Violence Prevention program (www.clickservices.org); (3) reprimand of all United States employees involved in this matter; Letters of Support or Letters of Apology addressed to all and any collaborations/networks involved with Grant #2018-CY-BX-0025 exonerating plaintiff of

any and all wrongdoing, accusations, or allegations made against plaintiff, such as Illinois

Department of Corrections (1DOC), Cook County Department of Corrections (Cook County

Jail), 1DOC Parole Officers, the Safer Foundation. Inc., especially, President & CEO Victor

Dickson; and (5) whatever else this Court deems appropriate and necessary.

Respectfully submitted,

/s/Fred L Nance Jr
Pro se Plaintiff
17239 Evans Avenue
South Holland, Illinois 60473-3436
708-921-1395
frednance@clickservices.org