

**U.S. Department of Justice**

Office of Justice Programs

*Office of the Chief Financial Officer*

Washington D.C. 20531

March 26, 2021

Ms. Hattie Wash        **EXHIBIT 1**
EMAGES, Inc
110 East 79th Street
Chicago, IL 60619

Dear Ms. Wash:

Thank you for the support and cooperation offered by you and your staff during the Office of the Chief Financial Officer's (OCFO) financial monitoring and technical assistance enhanced desk review conducted on *February 10, 2021*. During the review, the OCFO examined policies and procedures in place to control the financial aspects of the EMAGES, Inc's grant awarded by the Department of Justice (DOJ) as follows:

| Grant Number | Program Description | Program Office | Award Amount | Project Start Date | Project End Date |
|---|---|---|---|---|---|
| 2018-CY-BX-0025 | BJA FY 18 SCA RE 2 | BJA | $500,000.00 | 10/1/2018 | 9/30/2021 |

As discussed in the exit teleconference on **February 10, 2021**, our limited scope review disclosed that some policies and procedures should be enhanced to ensure compliance with the Title 2, Code of Federal Regulations (CFR), Part 200, *Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards* which states that a financial management system should provide for the following:

- Identification of all Federal awards received and expended and the Federal programs under which they were received.

- Accurate, current, and complete disclosure of the financial results of each Federal award or program in accordance with the reporting requirements set forth in Part 200.327 Financial reporting and Part 200.328 Monitoring and reporting program performance.

- Records that identify adequately the source and application of funds for federally-funded activities. These records must contain information pertaining to Federal awards, authorizations, obligations, unobligated balances, assets, expenditures, income and interest and be supported by source documentation.

# EXHIBIT 1

- Effective control over, and accountability for, all funds, property, and other assets. The non-Federal entity must adequately safeguard all assets and assure that they are used solely for authorized purposes.
- Comparison of expenditures with budget amounts for each Federal award.
- Written procedures to implement the requirements of Part 200.305 *Payment*.
- Written procedures for determining the allowability of costs in accordance with Subpart E - Cost Principles of this part and the terms and conditions of the Federal award.

The following Recommendations relating to the financial administration of the EMAGES, Inc's (EMAGES) grant are intended to improve the EMAGES' accounting practices and strengthen internal controls in the following areas:

## SV2021-Feb363895807-01 Procedures need improvement – Federal Grants Management

Based on our review, we noted that the EMAGES maintains general written procedures for Federal Grants Management. However, these procedures did not clearly define areas of responsibilities relative to federal grants management, and did not include specific provisions for tracking grant expenditures by approved budget categories, compliance with federal cash management policies, requesting drawdowns, reconciliation between accounting records and Federal Financial Reports (FFRs), requesting prior approvals for paying consultant fees in excess of the Department of Justice's (DOJ) threshold amounts, requesting prior approvals for sole source contracts in excess of the DOJ threshold amounts, and other pertinent federal grants management information.

Per Title 2 Code of Federal Regulations (CFR) Part 200, *Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards*, Section 200.303, *Internal Controls*, "The non-Federal entity must:

(a)  Establish and maintain effective internal control over the Federal award that provides reasonable assurance that the non-Federal entity is managing the Federal award in compliance with Federal statutes, regulations, and the terms and conditions of the Federal award. These internal controls should be in compliance with guidance in "Standards for Internal Control in the Federal Government" issued by the Comptroller General of the United States or the "Internal Control Integrated Framework", issued by the Committee of Sponsoring Organizations of the Treadway Commission (COSO)."

In addition, per the COSO Integrated Framework components, *Control Activities*, "Control activities are the actions established by the policies and procedures to help ensure that management directives to mitigate risks to the achievement of objectives are carried out."

Grantees are expected to have adequate internal controls in place to properly safeguard and administer grant funds, including written policies and procedures that ensure that grant funds are used for authorized purposes.

The EMAGES should enhance their written accounting policies and procedures specific to Federal Grants Management, to include clear, detailed, and comprehensive directions describing

2

**EXHIBIT 1**

all accounting functions, and other related activities performed to ensure adequate control of Federal funds. At a minimum, these procedures should contain provisions and instructions on:

- Recording grant revenues and expenditures in the EMAGES' accounting system
- Accounting for all grant revenues and expenditures separately for each grant within the EMAGES' accounting system
- Accounting for local match separately within the EMAGES' accounting system, if applicable
- Accounting for and administering program income, if applicable
- Tracking grant expenditures by approved budget category or spending plan, to include administrative costs, at least on a quarterly basis
- Clearly defining areas of responsibility/ functions (who is responsible for which step of the process)
- Requesting grant funds (Drawdowns)
- Preparing and timely submitting Federal Financial Reports (FFRs) and Performance/Progress Reports
- Compliance with the Federal Funding Accountability and Transparency Act (FFATA) reporting requirements
- Reconciliation of FFRs with the accounting records at least on a quarterly basis
- Requesting prior approval from the awarding agency for paying consultants in excess of the Department of Justice's (DOJ's) threshold for consultant fees currently at $650 per day or $81.25 per hour
- Documenting sole source procurement and obtaining prior approval from the awarding agency to enter into a non-competitive contractual relationship with a contractor under a grant where the total contracted cost exceeds $250,000.
- Single Audit reporting to Federal Audit Clearinghouse (FAC)
- Complying with Federal cash management regulations
- Grant closeout
- Any other pertinent grant-related financial activities

The above procedures should be consistent with the requirements of the Title 2 Code of Federal Regulations (CFR), Part 200 *Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards,* and the current DOJ Grants Financial Guide.

**To close this recommendation, the EMAGES should:**

- Provide a copy of their enhanced written policies and procedures for managing federal grants

**SV2021-Feb363895807-02 Procedures Need Improvement - Travel**

Based on our review, we noted that the EMAGES' Travel policies and procedures are too general and do not provide clear, and comprehensive directions describing all travelling functions and related activities performed to ensure adequate control of Federal funds.

Grantees are expected to have adequate internal controls in place to properly safeguard and administer grant funds, including written policies and procedures that ensure funds are used for authorized purposes.

3

# EXHIBIT 1

The EMAGES should enhance their written travel policies and procedures which provide clear, detailed and comprehensive directions describing all travelling functions and related activities performed to ensure adequate control of Federal funds. At a minimum, these procedures should contain provisions on:

- Travel authorizations and approvals of travel vouchers
- Mode of Air travel in line with the Federal Travel Regulations
- Ground transportation
- Local travel
- Lodging rates
- Meals and per diem rates in line with the Federal Travel Regulations
- Mileage (privately owned vehicles)
- Food and beverages
- Disallowance of Tips on Department of Justice (DOJ) grants

These policies and procedures should be consistent with the requirements of the Title 2, Code of Federal Regulations (CFR), Part 200, *Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards,* the Title 41, CFR, Subtitle F - *Federal Travel Regulation System,* and the current DOJ Grants Financial Guide.

2   **To close this recommendation, the EMAGES should:**

- Provide the Office of the Chief Financial Officer (OCFO) with a copy of their updated *Travel* policies and procedures.

### SV2021-Feb363895807-03 Policies need improvement – Procurement – Conflicts of interest

Based on our review, we noted that the EMAGES maintains general procurement policies and procedures. However, the procedures did not include provisions to address actual or potential organizational conflicts of interest when procuring products or services.

Title 2 CFR Part 200, Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal awards, Subpart B, Section, 200.112 Conflict of interest requires "The non-Federal entity must disclose in writing any potential conflict of interest to the Federal awarding agency or pass-through entity in accordance with applicable Federal awarding agency policy". Further, Section 200.113 "Mandatory disclosures" also requires that - The non-Federal entity or applicant for a Federal award must disclose, in a timely manner, in writing to the Federal awarding agency or pass-through entity all violations of Federal criminal law involving fraud, bribery, or gratuity violations potentially affecting the Federal award. Failure to make required disclosures can result in any of the remedies described in 200.338 Remedies for noncompliance, including suspension or debarment".

The requirements are echoed in the DOJ Grants Financial Guide, Part III Post award Requirements, Section 3.20 Grant Fraud, Waste, and Abuse, *Conflicts in fact,* which states that, "In the use of award funds (direct or indirect), a recipient or sub-recipient should not participate

4

## EXHIBIT 1

in any decisions, approval, disapproval, recommendations, investigation decisions, or any other proceeding concerning any of the following people or group

- An immediate family member;
- A partner;
- An organization in which they are serving as an officer, director, trustee, partner, or employee;
- Any person or organization with whom they are negotiating or who has an arrangement concerning prospective employment, has a financial interest, or for other reasons can have less than an unbiased transaction with the recipient or sub-recipient."

The EMAGES should include this provision in their written procurement policies and procedures to include written standards of conduct governing the performance of its employees engaged in the award and administration of contracts. The procedures should also include submitting a written disclosure of any potential conflict of interest to the awarding agency.

The completed procedures should be consistent with the requirements of the 2 CFR Part 200, the Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards and the current DOJ Financial Guide.

**However, subsequent to our remote enhanced desk review and prior to the issuance of this report, we received a copy of the EMAGES' enhanced procurement policies and procedures which include provisions to address actual or potential organizational conflicts of interest when procuring products or services.**

**To close this recommendation, the EMAGES should:**

- Develop a conflict of interest certification form and submit a copy to the OCFO for review;
- Disclose in writing any current or past potential conflict of interest on EMAGES procurement or purchases with DOJ funds.

### SV2021-Feb363895807-04 Commingling of Grant Funds – Individual accounts not established

Based on an analysis of the EMAGES' financial activities, we noted that the EMAGES is commingling the grant 2018-CY-BX-0025 funds with other federal agencies' funds within their accounting system. As a result, we could not determine the actual expenditures by approved budget categories and the total cumulative expenditures charged to this grant from the EMAGES' accounting records.

According to the Department of Justice (DOJ) Grants Financial Guide, Part II, *Preaward Requirements,* Section 2.3, *Standard of Financial Management Systems:* "Although Federal regulations do not require physical segregation of cash deposits, the accounting systems of all

Emages_00000319

**EXHIBIT 1**

recipients and subrecipients must ensure that agency funds are not commingled with funds from other Federal or private agencies.

- You must account for each award separately.
- Recipients and subrecipients are prohibited from commingling funds on either a program-by-program or project-by-project basis.
- Funds specifically budgeted and/or received for one project may not be used to support another.
- If your automated general ledger accounting system cannot comply with this requirement, you should establish a system to adequately track funds according to each budget category."

The EMAGES should establish and maintain a separate account number or cost center within their accounting system for each federal grant so that funds can be easily distinguished from their general/private funds and reconciled with the Federal Financial Report (FFR) submitted for the grant. In addition, the EMAGES should enhance their policies and procedures to include provisions for separately tracking expenditures and revenues for each grant within their accounting system.

**To close this recommendation, the EMAGES should:**

- Submit a copy of the detailed accounting records to show separate account number or cost center within their accounting system for the grant so that funds can be easily distinguished from their other fund accounts

- Submit a copy of the policies and procedures which include provisions for separately tracking expenditures and revenues for each federal grant within their accounting system.

### SV2021-Feb363895807-05 Consultant service charge exceed rate limit

An analysis of the EMAGES' financial activities disclosed that the EMAGES charged award 2018-CY-BX-0025 with $450.63 in unauthorized contractual costs related to consultant fees that exceeded the DOJ maximum threshold for consultant rate of $650 per day or $81.25 per hour without prior approval from the Bureau of Justice Assistance (BJA) as shown on the following table:

| Sample# | Account | Hours | Rate Applied | Charged to grant | Costs Limit ($81.25 rate) | Overcharged |
|---------|---------|-------|--------------|------------------|---------------------------|-------------|
| 5 | 60060 · Consultants 2nd Chance | 13.00 | $89.23 | $1,160.00 | $1,056.25 | $103.75 |
| 6 | 60060 · Consultants 2nd Chance | 10.5 | $114.29 | $1,200.00 | 853.125 | $346.88 |
| | | | | | Total | $450.63 |

Per the DOJ Grants Financial Guide, Part III Postaward Requirements, Section 3.6 *Costs Requiring Prior Approval, Consultant Rates,* "Compensation for individual consultant services is to be reasonable and consistent with that paid for similar services in the marketplace.

6

## EXHIBIT 1

- Each grant-making component periodically establishes a prior approval threshold consultant rate. The current rate for each grant-making component is $650 per day or $81.25 per hour.
- This limit is specified in the terms and special conditions of the award.
- When the rate exceeds the limit for an 8-hour day, or a proportionate hourly rate (excluding travel and subsistence costs), a written prior approval is required from the grant-making component. Prior approval requests require additional justification.
- An 8-hour day may include preparation, evaluation, and travel time in addition to the time required for actual performance.
- Please note, however, that this does not mean that the rate can or should be the maximum limit for all consultants.
- Rates above the established maximum threshold rate will be reviewed on a case-by-case basis. Justification for exceeding the established maximum rate may include where a rate is established through a competitive bidding process."

The EMAGES should review all their contractual expenditures for payments to consultants in excess of the DOJ threshold amount. Based on this analysis, the EMAGES may submit a written request to the BJA requesting approval of all consultant payments in excess of the DOJ threshold amount to include the above unauthorized costs. This request should include sufficient justification for the charges in question, and explain why the costs were reasonable and necessary for the operations of the project. If, at the discretion of the BJA, these costs are not approved, they are unallowable and must be removed from the grant's accounting records, and from the cumulative expenditures reported on their most recent FFR for the grant. A narrative statement should be included in box 12 of the FFR explaining the reduction in previously reported amounts. Further, the EMAGES should return funds related to unallowable costs to the DOJ.

**To close this recommendation, the EMAGES should:**

- Provide the OCFO with a copy of the EMAGES' written approval from BJA for the above unauthorized contractual costs charged to the award.

**Or, if not approved, the EMAGES should submit the following:**

- A copy of the journal entries showing the removal of the unallowable costs;
- A copy of the detailed and cumulative general ledger accounts showing the removal of the unallowable costs. These accounting records should reconcile to the EMAGES' most recent FFR;
- A copy of the revised FFR with a narrative statement included in the box 12 explaining the adjustments made; and
- The EMAGES should promptly return any Federal funds related to the unallowable costs to the DOJ using the Automated Clearing House (ACH) or Fed wire to avoid a delay in reflecting the refund on grant account balances:

7

**EXHIBIT 1**

> Complete one of the attached templates and coordinate the electronic transfer with your bank.

> Email OCFO at ACRBelectronictransfer@ojp.usdoj.gov or call the OCFO Customer Service Center at 1- 800-458-0786 for assistance.

## SV2021-Feb363895807-06 Unsupported Costs – Other

Based on a judgmental sample review of expenditures, we noted that the EMAGES was unable to fully support and justify the rational allocation method used to charge $800 in Other Costs to award 2018-CY-BX-0025 as shown on the following table:

| Sample # | Account | Amount |
|---|---|---|
| 18 | 67500 · Rental/Space | $800.00 |

Title 2 CFR Part 200 – *Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards*, Subpart E – *Cost Principles*, Section 200.403, *Factors affecting allowability of costs*, also states, "Except where otherwise authorized by statute, costs must meet the following general criteria in order to be allowable under Federal awards:

(a) Be necessary and reasonable for the performance of the Federal award and be allocable thereto under these principles.

(b) Conform to any limitations or exclusions set forth in these principles or in the Federal award as to types or amount of cost items.

(c) Be consistent with policies and procedures that apply uniformly to both federally financed and other activities of the non-Federal entity.

(d) Be accorded consistent treatment. A cost may not be assigned to a Federal award as a direct cost if any other cost incurred for the same purpose in like circumstances has been allocated to the Federal award as an indirect cost.

(e) Be determined in accordance with generally accepted accounting principles (GAAP), except, for state and local governments and Indian tribes only, as otherwise provided for in this part.

(f) Not be included as a cost or used to meet cost sharing or matching requirements of any other federally financed program in either the current or a prior period.

(g) Be adequately documented."

Title 2 CFR Part 200, Section 200.404 *Reasonable costs*, further states, "A cost is reasonable if, in its nature and amount, it does not exceed that which would be incurred by a prudent person under the circumstances prevailing at the time the decision was made to incur the cost." Furthermore, Section 200.405 "*Allocable costs*. (a) A cost is allocable to a particular Federal award or other cost objective if the goods or services involved are chargeable or assignable to that Federal award or cost objective in accordance with relative benefits received."

Emages_00000322

**EXHIBIT 1**

The EMAGES should provide the OCFO with documentation to show how the rental/space was allocated from their cost center. If the rational allocation method used and justification cannot be provided, these costs are unallowable and should be removed from the grant's account and from the cumulative expenditures reported on the most recent FFR submitted for the grant. A narrative statement should be included in box 12 of the FFR explaining the adjustments made. The EMAGES should also return funds related to unsupported costs to the DOJ.

**To close this recommendation, the EMAGES should:**

- Provide adequate documentation to support the Other costs in questioned.

**Or, if adequate supporting documentation cannot be provided, the EMAGES should:**

- Submit a copy of the journal entries showing the removal of the unsupported costs;
- Submit a copy of the detailed and cumulative general ledger accounts showing the removal of the unsupported costs. These accounting records should reconcile to the EMAGES' most recent FFR;
- Submit a copy of the revised FFR with a narrative statement included in box 12 explaining the adjustments made; and
- Promptly return any Federal funds related to unsupported costs to the DOJ.

## <u>SV2021-Feb363895807-07 Award special condition violated – Unauthorized Expenditures</u>

Based on an analysis of the EMAGES' financial activities, we noted that the EMAGES did not comply with the following special conditions of their award for the following grant:

| Grant | Special Condition (SC) Summary | Date Released by GAN#/ |
|---|---|---|
| 2018-CY-BX-0025 | SC# 42, 43, 44, and 45 related to financial and programmatic requirements | GAN system ID # 1087183 released the SCs on 02/07/2019 |

The above special conditions stated that the recipient may not obligate, expend or draw down any award funds until the recipient meets certain programmatic and financial requirements, and a Grant Adjustment Notice (GAN) has been issued removing the special conditions.

However, an analysis of the EMAGES' financial activities revealed that the EMAGES signed off on a contract with the Dr. Witherspoon from Chicago State University and obligated grant 2018-CY-BX-0025 funds under this contract prior to the issuance of the GAN to release the above Special Conditions as shown on the table below:

| Grant | Special Condition# | Date GAN was approved | Obligation Date | Contractor |
|---|---|---|---|---|
| 2018-CY-BX-0025 | 42, 43, 44, and 45 | 02/07/2019 | 01/20/2019 | Dr. Witherspoon from Chicago State University |

The EMAGES should submit a written request to the Bureau of Justice Assistance (BJA) for retroactive approval of the contract and all costs obligated prior to the release dates of these Special Conditions through a Grant Award Modification (GAM) through JustGrants. If, at the discretion of the BJA, the obligation is not approved, all expenditures incurred under this

Emages_00000323

**EXHIBIT 1**

contract are disallowed. The EMAGES should perform an analysis of all expenditures incurred under this contract and remove the expenditures from the grant's account. As a result, the most recent FFR submitted for this grant should be revised to remove these expenditures. A narrative statement should be included in Box 12 of the FFR to explain the reduction in previously reported expenditures. Additionally, the Police should return funds related to unallowable costs to the DOJ.

**To close this recommendation, the EMAGES should:**

- Submit a copy of the written approval from the BJA approving the expenditures prior to the release date of the special conditions through a GAM.

**Or if not approved, the EMAGES should:**

- Submit a copy of the journal entries showing the removal of the unallowable costs from the grant's accounts.
- Submit a copy of the detailed and cumulative general ledger accounts showing the removal of the unallowable costs. These accounting records should reconcile with the most recent FFR submitted for the grants.
- Promptly return any Federal funds related to unallowable costs to the DOJ.

Please provide a written response by April 26, 2021 indicating the status of corrective actions taken to address the recommendations. This response should be sufficiently detailed to disclose all actions taken with respect to each recommendation, and identify any planned activities not yet completed. Activities not yet completed should include an estimate of the additional number of days required to complete these efforts. Please forward your response via email to financialmonitoring@usdoj.gov and jin.liu@ojp.usdoj.gov.

If you have any questions regarding our past review or require additional financial assistance in the future, please do not hesitate to contact me at **202-616-1790** or email at jin.liu@ojp.usdoj.gov. Your cooperation in closing these issues is greatly appreciated.

Sincerely,

Jin C. Liu

Jin Liu
Staff Accountant
Grants Financial Management Division

10

cc:    Tracey Willis, Grant Program Manager, BJA

Marcia Jackson, Assistant Director, COPS
Donna Simmons, Audit Liaison, OVW
Rodney Samuels, Audit Liaison, OVW

Amanda LoCicero, Audit Liaison, BJA

Jeff Haley, Deputy Director, Audit and Review Division, OAAM
Linda Taylor, Lead Auditor, OAAM

Aida Brumme, Evaluation and Oversight Branch Manager, OCFO
Edith Sunga, Financial Monitoring Manager, OCFO
Jewani Servara, Financial Monitoring Manager, OCFO
JustGrants System (GMOC Site visit Converted to Desk Review ID#)

Emages_00000325

## Dr. Nance v. Emages Update                    **EXHIBIT 2**

From: Thompson, Derrick M., Jr. (dthompson@taftlaw.com)

To: frednance@clickservices.org

Date: Wednesday, August 30, 2023 at 02:11 PM CDT

<u>For Settlement Purposes Only</u>

Dr. Nance— Sorry I am in meetings today. But, I got your voice message regarding the documents. I will ask our paralegal to re-send you the documents that were produced. You will need to open the files within 10-14 days. The password expires. Let me know if you have any trouble with the files or if you don't receive them.

Also, I plan to speak to Dr. Wash about possible settlement. I need to stress that I have **no** authority to settle at this time— but, *in my opinion*, given our discussion yesterday, it makes sense to at least explore settlement.

As you know, we strongly disagree with the allegations contained in your complaint. We also believe that even if you are able to prove your case, your damages are limited as the program was set to sunset in September 2021. That being said, this litigation is a drag and, looking at the actual economics, I do not see the upside for either side. If you think a settlement discussion would be productive, please let me know.

It was good to finally meet you in person and I actually appreciated your candor.

Derrick



**Derrick M. Thompson, Jr.**
Partner
dthompson@taftlaw.com
Dir: 312.836.4066
Tel: 312.527.4000  |  Fax: 312.966.8596
111 E. Wacker Drive, Suite 2600
Chicago, Illinois 60601-4208

taftlaw.com

This message may contain information that is attorney-client privileged, attorney work product or otherwise confidential. If you are not an intended recipient, use and disclosure of this message are prohibited. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.

**EXHIBIT 3**

Hattie Wash, Psy. D
*Founder & Chief*
*Executive Officer*

Larry Ross, LCSW
*Honorary President*
*Served 1992-2011*
*(Posthumously)*

Brenda Hodges-Leggard
*President*

Donna Harris
*Vice President*

Linda Brown-Jackson
*Secretary*

Edward Butler, Psy. D
*Treasurer*

*Board Members*
Marilyn Scott, Psy. D
Sabrina Nelson
Leatha Woolfolk
Hiram J. White
Arnie Harris
Brad Warner
Marvin Forbes
Mary Cox



**EMAGES, INC.**
**Establishing Managing and Generating Effective Services Inc.**

October 1, 2018

**EMAGES Policy:     2018-CY-BX-0025**

> ➢ **Subaward monitoring policy**

On October 1, 2018 EMAGES, Inc. became the recipient of the Office of
Justice Programs FY 2018 Second Chance Act Comprehensive Community-
Based Adult Reentry program. EMAGES has subawards. All subaward
agreements adhere to the Federal Regulations and follow the policies of
EMAGES. The monitoring policy for EMAGES subawards are described.

The purpose of monitoring subaward individuals/entities is to ensure the
subaward is being used for the authorized purpose of EMAGES, in compliance
with the federal program and grant requirements, laws, and regulations; and to
ensure the subaward performance goals are achieved. As part of the EMAGES
monitoring process, we believe it is important to develop systems, policies, and
procedures to ensure that subaward recipients and subaward reviews are
conducted in accordance with Federal program and grant requirements, laws,
and regulations. Additionally, EMAGES has developed, implemented, and
performance procedures to ensure all required audits and audit findings are
identified in their audit reports; and are timely and effectively corrected and
resolved.

EMAGES will monitor the use of all Federal funds during the program period
of FY 2018 to 2021. EMAGES will evaluate the risk of non-compliance with
Federal statutes, regulations and terms and conditions of the subaward for
purposes of determining the appropriate monitoring. EMAGES methods of
monitoring comply with Federal guidelines. Factors we consider in
determining the nature, timing, and extent of monitoring are as follows: our
prior experience with the same or similar subawards and results of previous
audits. This is done whether EMAGES has new personnel or a new or
substantially changed system; and to the extent and results of the Federal
awarding agency's monitoring.

EMAGES will evaluate at a higher or lower risk if we determine the need for
closer monitoring. Generally, EMAGES will determine if new subawards

Emages_00001157

# EXHIBIT 4

### Informed Consent for Telepsychology

## INFORMED CONSENT FOR TELEPSYCHOLOGY

This Informed Consent for Telepsychology contains important information focusing on doing psychotherapy using the phone or the Internet. Please read this carefully, and let me know if you have any questions. When you sign this document, it will represent an agreement between us.

### Benefits and Risks of Telepsychology

Telepsychology refers to providing psychotherapy services remotely using telecommunications technologies, such as video conferencing or telephone. One of the benefits of telepsychology is that the client and clinician can engage in services without being in the same physical location. This can be helpful in ensuring continuity of care if the client or clinician moves to a different location, takes an extended vacation, or is otherwise unable to continue to meet in person. It is also more convenient and takes less time. Telepsychology, however, requires technical competence on both our parts to be helpful. Although there are benefits of telepsychology, there are some differences between in-person psychotherapy and telepsychology, as well as some risks. For example:

- Risks to confidentiality. Because telepsychology sessions take place outside of the therapist's private office, there is potential for other people to overhear sessions if you are not in a private place during the session. On my end I will take reasonable steps to ensure your privacy. But it is important for you to make sure you find a private place for our session where you will not be interrupted. It is also important for you to protect the privacy of our session on your cell phone or other device. You should participate in therapy only while in a room or area where other people are not present and cannot overhear the conversation.

- Issues related to technology. There are many ways that technology issues might impact telepsychology. For example, technology may stop working during a session, other people might be able to get access to our private conversation, or stored data could be accessed by unauthorized people or companies.

- Crisis management and intervention. Usually, I will not engage in telepsychology with clients who are currently in a crisis situation requiring high levels of support and intervention. Before engaging in telepsychology, we will develop an emergency response plan to address potential crisis situations that may arise during the course of our telepsychology work.

- Efficacy. Most research shows that telepsychology is about as effective as in-person psychotherapy. However, some therapists believe that something is lost by not being in the same room. For example, there is debate about a therapist's ability to fully understand non-verbal information when working remotely.

### Electronic Communications

We will decide together which kind of telepsychology service to use. You may have to have certain computer or cell phone systems to use telepsychology services. You are solely responsible for any cost to you to obtain any necessary equipment, accessories, or software to take part in telepsychology.

### Confidentiality

I have a legal and ethical responsibility to make my best efforts to protect all communications that are a part of our telepsychology. However, the nature of electronic communications technologies is such that I cannot guarantee that our communications will be kept confidential or that other people may not gain access to our

**EXHIBIT 4**

communications. I will try to use updated encryption methods, firewalls, and back-up systems to help keep your information private, but there is a risk that our electronic communications may be compromised, unsecured, or accessed by others. You should also take reasonable steps to ensure the security of our communications (for example, only using secure networks for telepsychology sessions and having passwords to protect the device you use for telepsychology).

The extent of confidentiality and the exceptions to confidentiality that we outlined in our Outpatient Agreement still apply in telepsychology. Please let me know if you have any questions about exceptions to confidentiality.

**Emergencies and Technology**

Assessing and evaluating threats and other emergencies can be more difficult when conducting telepsychology than in traditional in-person therapy. To address some of these difficulties, we will create an emergency plan before engaging in telepsychology services. I will ask you to identify an emergency contact person who is near your location and who I will contact in the event of a crisis or emergency to assist in addressing the situation. I will ask that you name that person along with their contact information at the bottom of this forms, which will allow me to contact your emergency contact person as needed during such a crisis or emergency.

If the session is interrupted for any reason, such as the technological connection fails, and you are having an emergency, do not call me back; instead, call 911, andy/or any other hotlines local resources that we will identify in our emergency plan or go to your nearest emergency room. Call me back after you have called or obtained emergency services.

If the session is interrupted and you are not having an emergency, disconnect from the session and I will wait two (2) minutes and then re-contact you via the telepsychology platform on which we agreed to conduct therapy.

If there is a technological failure and we are unable to resume the connection, you will only be charged the prorated amount of actual session time.

If the Therapist feels the client is at risk, therapist may contact emergency contact or local emergency services for an in person safety screening

**Fees**

The same fee rates will apply for telepsychology as apply for in-person psychotherapy. However, insurance or other managed care providers may not cover sessions that are conducted via telecommunication. *If your insurance, HMO, third-party payor, or other managed care provider does not cover electronic psychotherapy sessions, you will be solely responsible for the entire fee of the session. Please contact your insurance company prior to our engaging in telepsychology sessions in order to determine whether these sessions will be covered.*

**Records**

The telepsychology sessions shall not be recorded in any way unless agreed to in writing by mutual consent. I will maintain a record of our session in the same way I maintain records of in-person sessions in accordance with my policies.

**Informed Consent**

**EXHIBIT 4**

This agreement is intended as a supplement to the general informed consent that we agreed to at the outset of our clinical work together and does not amend any of the terms of that agreement.

Your signature below indicates agreement with its terms and conditions.

_____     _____

Signature                                                Date

_____

Therapist Date

**Emergency Contact**     _____     _____

Name of Emergency Contact Date                    Phone Number

Emages_00002094

**EXHIBIT 4**

Effective Video Conferencing

## Helpful Hints for Effective Video Conferencing

Here's hoping the following tips will help ensure a more successful video conferencing event whatever kind that is. Cheers to all that helped me with this!

- Arrive to your meeting early to check everything twice: test, retest, & test again
- Have good, reliable connection
- Sit in line-of-sight of camera
- Get a good external camera. You don't have to spend a fortune (I called Zoom and asked for their recommendation a couple years ago when my internal camera became fuzzy and distracting to me and clients)
- Remember folks can see you!!
- Test volumes. You and your client may want to invest in an external mic. I find for multiple clients in one room an external mic is an absolute.
- Use headset/buds/headphones (whatever's most comfortable for you) with a built-in microphone
- Shut the blinds/curtains. We want front-lighting not backlighting.
- Be aware of what's in the background wherever you are. In some Zoom versions, you can choose a background photo to use instead of simply showing your office or home, etc. Some using an older computer may find they need a green screen to do this however.
- Void tapping your fingers, typing, crunching paper, etc (my ice machine can make enough noise to cause a client to ask what happened. Ahh, open concept rooms! And then there's Izzy's whining!)
- Put pets (as well as kids and partners?) in separate room from you if possible
- Be sure folks mute their mics when not speaking!! (this is hugely important and a mistake that's happened in every video chat I've had this week). On Zoom, if you set your mic to mute, you can then hold down the space bar to talk and your mic will revert back to mute when you release the space bar again.
- If you hear an echo or distortion, it's probably an open mic. If you're the host, you can mute others so use that button!
- Act like you! Yes, the camera can be intimidating. Perhaps a bit of practice in a mirror or with a willing partner on video can help
- Wear simple comfortable clothing unless you need to dress more professionally (remember you may only be visible from the waist up!)
- Change things up: do a poll, ask a question, change up your voice
- Send out an agenda with questions beforehand
- The inclusive language: use people's names or say you folks (not participants, attendees, etc.)

Note: information has been gathered from personal experiences,
Stanford Graduate School of Business; Zoom.com; Rik Bes; Bill Matulich. Rev Mar20, 2020

Emages_00002087

Effective Video Conferencing

- Say "imagine what it would be like to...." Or "what if..." instead of simply listing items
- Use breakout sessions, chat, hand raising, polls, think-pair-share
  - o Have folks think about something; pair to talk with a partner; then return to large group to share.
- Make sure you have everything you need within easy reach of your chair (or whatever you're sitting in for your session). I also like having my cell phone nearby in case of looking up something for a client or myself; setting a timer if doing groups; for back up if we lose connection (text is especially helpful if this happens, I've found)
- Have a backup communication plan: In case of connection trouble with remote participants, have a plan such as asking participants to connect to the meeting through another device (ie, smart phones if on their laptops) and/or collaborate through text or email. Most platforms have some feature such as "chat" usually in a side bar that may also be used often even when the connection to video is lost.
- Make sure clients/participants test their equipment and connection before your session/meeting. Rarely but sometimes I have a client who is uncomfortable with video conferencing and appears to postpone checking their connections until our session. While that's OK with me I have had to explain that this will cut into our valuable and costly session time. With Zoom, folks only need to download the app; they don't need to set up an account which is a nice feature & easier for some folks. It can also be used without the video screen on, just via phone.

*What are some positives about video platform usage?*

- There are a few reasons to decide upon a good (easy to manage, still powerful & functional) video conferencing tool (software/company):
  - o For therapists/counselors:
    - • This format can facilitate 1x1 sessions with clients (individuals, couples) when face-to-face sessions are not preferred
  - o For professionals in general:
    - • Video platforms can facilitate having real-time meetings (regular ones, project-oriented, etc), without having to travel. This saves time, there's no need to find a room to use, it's easier to plan into busy schedules, and nowadays it's a great 'social distancing' tool!
  - o For trainers:
    - • You can easily organize a webinar (webinar = mainly one-way transmitting information) for any size of group. Meetings can be

Note: information has been gathered from personal experiences,
Stanford Graduate School of Business; Zoom.com; Rik Bes; Bill Matulich. Rev Mar20, 2020

Exhibit 4

Effective Video Conferencing

recorded and viewed afterwards on-demand, for review (attendees) or catching up (those who couldn't make the real-time webinar). The Zoom meeting some of us had on February 29th with Rik Bes is an example of a webinar. Some group discussion, and lots of 'transmitting information'.

- With a good video conferencing system, one can also organize a 'Virtual Real-time Classroom (VRC)'. In a VRC you use the interactivity functionalities of your video conferencing system to the max. Functionalities like:
  - screen sharing (not just by the trainer, but all participants can do that) to show PowerPoints, videos, etc.
  - Use the breakout room facility to let participants work in small groups online (which you as the host can manage)
  - Use the 'polling' function for more interactivity

- You can start with a free license at many apps (for instance at zoom.us). Use it for a few days (or weeks!) to familiarize yourself with the software; do some test-calls with colleagues/friends.
- Once you're happy with your platform of choice, consider switching to a paid subscription. The limitations of a free subscription (for instance on Zoom the length of time is limited to a 40-minute max as well as number of participants. With Pro, there's no limit to time and up to 100 people can participate remotely) will no longer bother you as the number of your functionalities to manage (tweak) sessions increases.

- For Zoom particularly:
  o If you're distracting yourself, there is a way to hide your own screen (so you don't see yourself while in a session/chatting with someone else): in the upper RH corner there are 3 dots when you hover over your screen photo when the app is open. There's a button to select that will hide yourself.
  o One more suggestion regarding participants having to (for the first time) download a small app: This is not obligatory in Zoom! You, as the host, can change that in your settings, in such a way that participants who cannot or do not want to download the small app, can still participate in your Zoom session. You can enable "Join from your browser" (thus bypassing downloading the app) in your advanced in-meeting settings.

Finally, from Rik Bes. This is the link for his recent Zoom tutorial with several MINTees (thanks to Rik for allowing us all access to this!):
https://vimeopro.com/rikbesmivideopage/mint-zoom; Password: MINT ZOOM

Note: information has been gathered from personal experiences, Stanford Graduate School of Business; Zoom.com; Rik Bes; Bill Matulich. Rev Mar20, 2020

Message

| | |
|---|---|
| **From:** | Daniel Jean [daniel_jean716@yahoo.com] |
| **on behalf of** | Daniel Jean <daniel_jean716@yahoo.com> [daniel_jean716@yahoo.com] |
| **Sent:** | 3/23/2020 9:31:12 PM |
| **To:** | Dr. Hattie Wash [washhattie@gmail.com] |
| **Subject:** | Fw: Conference call |

# EXHIBIT 5

----- Forwarded Message -----
**From:** Daniel Jean <daniel_jean716@yahoo.com>
**To:** Fred Nance Jr. <frednance@clickservices.org>
**Sent:** Monday, March 23, 2020, 04:28:23 PM CDT
**Subject:** Conference call

Here are the credentials for the MA'AT phone conference:

**GROUP# 1( Valerie and Jamie)**

(978) 990-5000
Access Code: 480001#

**GROUP# 2 ( Earlene and Alicia)**

(978) 990-5000
Access Code: 581625#

We will have a **check mark** for "in -person presence" and **CC** for "On- the Phone presence"

Thanks,

Daniel

Emages_00002110

Message

| | |
|---|---|
| **From:** | Daniel Jean [daniel_jean716@yahoo.com] |
| **on behalf of** | Daniel Jean <daniel_jean716@yahoo.com> [daniel_jean716@yahoo.com] |
| **Sent:** | 3/30/2020 1:00:06 AM |
| **To:** | Fred Nance Jr., Ph.D. [frednance@clickservices.org] |
| **CC:** | Fred Nance Jr. [frednance@clickservices.org] |
| **Subject:** | Re: Case Management Review |

**EXHIBIT 6**

I am not going to be at Emages for at least two weeks. I will be working from home. My wife is currently working with Covaid 19 patients. I have to limit exposure

Sent from Yahoo Mail on Android

On Sun, Mar 29, 2020 at 7:57 PM, Fred Nance Jr., Ph.D.
<frednance@clickservices.org> wrote:

Daniel:

Good evening. I will not be able to meet with you face-to-face. I am practicing social distancing. Therefore, here is the document I created for our case management review. You can review some cases and I will review the files you do not review. We can divide them equally. I will send this document to the mentors also. For those participants who are no longer in the program, the mentors need to a progress note explaining why the participant is no longer in the program.

/s/Dr. Fred Nance Jr., PhD
Health & Human Services
Social Policy Analysis and Planning
www.clickservices.org
708-921-1395

NOTICE: If you have received this e-mail message from Dr. Fred Nance Jr., the e-mail message, and any and all attachments transmitted with it are intended solely for the use of the addressee and may contain legally privileged and confidential information. If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this email message to the intended recipient, you are hereby notified that any dissemination, distribution, copying, or other use of the message or its attachments is strictly prohibited. If you have received this email message and its attachments if any, in error, please notify the sender immediately by replying to the message and please delete it from your computer. Thank you.

Message

| | |
|---|---|
| **From:** | Daniel Jean [daniel_jean716@yahoo.com] |
| **on behalf of** | Daniel Jean <daniel_jean716@yahoo.com> [daniel_jean716@yahoo.com] |
| **Sent:** | 4/1/2020 8:08:53 PM |
| **To:** | Hattie Wash [washhattie@gmail.com] |
| **Subject:** | Re: EMAGES Phone Conference Call Listing |

**EXHIBIT 7**

Thank you. I will call in tonight to see how it goes. I tried last night. I was not able to get through.

Thanks,
Daniel


On Wednesday, April 1, 2020, 02:06:25 PM CDT, Hattie Wash <washhattie@gmail.com> wrote:


Hi Fred and Daniel:

Please see attached conference call list phone number and access code for EMAGES groups. Individual group dates for the MA'At project has been placed in Dr. Nance mailbox in the mental health room. We will be monitoring the conference call process for the next two weeks to determine if we need to make any changes. Daniel, Gerri is calling the Saturday group members to determine if they will be on the call or will come in. Let me know if you have any questions or concerns about this process.
Dr. Wash

---------- Forwarded message ----------
From: **Sheila Chew** <sacpoibie1@gmail.com>
Date: Wed, Apr 1, 2020 at 12:52 PM
Subject: EMAGES Phone Conference Call Listing
To: Dr Wash <washhattie@gmail.com>


Please see attached EMAGES
Weekly Conference Call Schedule

Sheila

**EXHIBIT 7**

# EMAGES, INC

## Weekly Conference Call:

## PHONE # (978) 990-5000

| Weekday | TIME | Facilitator | ACCESS CODE |
|---------|------|-------------|-------------|
| Monday | 5:30pm | Valerie & Jamie | 480001# |
| Monday | 5:30pm | Alicia & Earlene | 581625# |
| Monday | 6:40pm | Gerri & Leonard | 581625# |
| Monday | 6:40pm | Valerie & Jamie | 480001# |
| Tuesday | 6:00pm | Geraldine Taylor | 480001# |
| Tuesday | 6:30pm | Serita & Chad | 581625# |
| Tuesday | 7:35pm | Chad & Dr. Harris | 581625# |
| Wednesday | 5:30pm | Serita & Alicia | 581625# |
| Wednesday | 6:05pm | Sandra Hudson | 480001# |
| Wednesday | 6:30pm | Leonard & Gerri | 581625# |
| Saturday | 9:00am | Serita & Alicia | 581625# |
| Saturday | 10:05am | Daniel & Gerri | 581625# |

Emages_00002149

Message

| | |
|---|---|
| **From:** | Daniel Jean [daniel_jean716@yahoo.com] |
| **on behalf of** | Daniel Jean <daniel_jean716@yahoo.com> [daniel_jean716@yahoo.com] |
| **Sent:** | 4/2/2020 12:38:25 AM |
| **To:** | Fred Nance Jr., Ph.D. [frednance@clickservices.org]; Jamie Enge [jamiee425@gmail.com]; Valerie Minor [vminor2018@gmail.com]; ALICIA A. PERRY [pebsluvsgod@yahoo.com]; Earlene Beard [earlene416@gmail.com]; Serita Robinson [srobin21@csu.edu]; Chad Ellis [seragi73@yahoo.com]; LORI ORTIZ [loriortiz6199@comcast.net]; deboraht30.excite Deborah Taylor [deboraht30@excite.com] |
| **CC:** | Fred Nance Jr. [frednance@clickservices.org]; Dr. Hattie Wash [washhattie@gmail.com] |
| **Subject:** | Re: Call-in & Access Code |

## EXHIBIT 8

I was on tonight call. Everything was fine.  In fact , Serita and Alicia did a great job.          Thanks,
Daniel
Sent from Yahoo Mail on Android

On Wed, Apr 1, 2020 at 7:14 PM, Fred Nance Jr., Ph.D.
<frednance@clickservices.org> wrote:

Good evening. I called in late, approximately 6:10 pm, tonight for the Wednesday night group. I used the call-in number. It rang about 9 or 10 times and then there was a busy signal. Is there a logical reason for the call-in number not to work? Please respond. Thank you.

/s/Dr. Fred Nance Jr., PhD
Health & Human Services
Social Policy Analysis and Planning
www.clickservices.org
708-921-1395

NOTICE: If you have received this e-mail message from Dr. Fred Nance Jr., the e-mail message, and any and all attachments transmitted with it are intended solely for the use of the addressee and may contain legally privileged and confidential information. If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this email message to the intended recipient, you are hereby notified that any dissemination, distribution, copying, or other use of the message or its attachments is strictly prohibited. If you have received this email message and its attachments if any, in error, please notify the sender immediately by replying to the message and please delete it from your computer. Thank you.

Message

| | |
|---|---|
| **From:** | Daniel Jean [daniel_jean716@yahoo.com] |
| **on behalf of** | Daniel Jean <daniel_jean716@yahoo.com> [daniel_jean716@yahoo.com] |
| **Sent:** | 4/6/2020 7:04:19 PM |
| **To:** | Dr. Hattie Wash [washhattie@gmail.com]; Fred Nance Jr. [frednance@clickservices.org] |
| **Subject:** | Covaid-19 concerns |

## EXHIBIT 9

I would like to suggest that clients who were discharged from Stateville Correctional Center and Cook County jail be allowed to participate in the groups only via the telephone considering the number of inmates of those two institutions who have tested positive for the Corona Virus. I have so far identified 7 clients. Each consultant and mentor would have to go through their list to identify those clients who were discharged from those two institutions during the past two months. Additionally, one client told us last Saturday that he believed that he had the positive symptoms almost two months ago. The same client also identifies a Monday night client who currently has pneumonia. He and that client work on the same assembly line. Agent De Young told him he would have to go take the test if the other client turns out to be positive for the virus.

Lori has a client who is recently discharged from Stateville. She already advised him to only participate via telephone. I did not discuss the above with any mentor or consultant. We may need to change our strategies in regard to clients discharged from the County and Stateville.

Thanks,

Daniel

Message

| | |
|---|---|
| **From:** | Daniel Jean [daniel_jean716@yahoo.com] |
| **on behalf of** | Daniel Jean <daniel_jean716@yahoo.com> [daniel_jean716@yahoo.com] |
| **Sent:** | 4/22/2020 1:55:48 AM |
| **To:** | jamiee425@gmail.com; vminor2018@gmail.com; pebsluvsgod@yahoo.com; earlene416@gmail.com; seragi73@yahoo.com; srobin21@csu.edu; Dr. Fred Nance Jr. [drfred.nancejr@gmail.com]; Dr. Hattie Wash [washhattle@gmail.com] |
| **Subject:** | Re: Mentor Call-in Group Conference |
| **Attachments:** | 4.1.20 EMAGES Coronavirus Call in List.pdf |

Why was not Dr. Wash copied in the e-mail below? One of my concerns is that clients who have used the internet to commit their sexual offense should not be using any social media unless approved by their probation officer, Social Worker or Parole Agent. Why were not Dr. Wash and Dr. Nance consulted before the creation of the zoom group?

Thanks'
Daniel Jean

On Tuesday, April 21, 2020, 07:50:39 PM CDT, Dr. Fred Nance Jr. <drfred.nancejr@gmail.com> wrote:

## EXHIBIT 10

Good evening. Attached is a Weekly Conference Call list created by Dr. Wash for this Coronavirus season. Please follow these guidelines for all MA`AT groups. As you will see it has ending and beginning times. Please do not end groups earlier than listed. On Mondays and Tuesdays, the clinical groups start 10 and 5 minutes later than usual. I am not sure why they did not put a 5 or 10 minute gap for the Wednesday group. The MA`AT group should end when it is posted to end. I listened in on a couple of groups that were ending 10 or 15 minutes before the end time listed here in Dr. Wash's document.

On another note: Before a mentor changes the format of a group. let Daniel or I know you want to make a change. There was a Zoom group meeting that neither Daniel or I knew about it. The group went well. Daniel and I need to know who authorized it and to assure it does not violate any policies. Thank you.

–
/s/Dr. Fred Nance Jr., Ph.D.
Human Services/Social Policy Analysis
Program and Policy Development
708-921-1395

Message

| From: | Daniel Jean [daniel_jean716@yahoo.com] |
|---|---|
| on behalf of | Daniel Jean <daniel_jean716@yahoo.com> [daniel_jean716@yahoo.com] |
| Sent: | 4/22/2020 8:01:01 PM |
| To: | Chad Ellis [seragi73@yahoo.com]; Serita Robinson [srobin21@csu.edu] |
| CC: | Fred Nance Jr. [frednance@clickservices.org]; Dr. Hattie Wash [washhattie@gmail.com]; Valerie Minor [vminor2018@gmail.com]; Jamie Enge [jamiee425@gmail.com]; Earlene Beard [earlene416@gmail.com]; ALICIA A. PERRY [pebsluvsgod@yahoo.com] |
| Subject: | MA'AT Group |

# EXHIBIT 11

Chad and Serita:

I was informed by Dr. Nance that last night the clients participated in the MA'At group via the use of zoom. This is a departure from the policy put in place by Dr. Wash on April 1, 2020. Some clients are still forbidden from using the internet without permission by their Parole agent or probation officers or their social workers considering that their sexual offenses were facilitated by the use of internet and social media. We have many clients that are convicted of manufacturing and distribution of child pornography. Considering that Illinois is one of the States that endorses the containment model, we should have consulted with their supervising officers or agents. Finally, there are clients who do not have a smart phone. I recommend that as far as the MA'AT program is concerned, we stick with Dr. Wash's recommendation.

Thanks,

Daniel Jean
Clinical Supervisor

Message

| | |
|---|---|
| From: | Daniel Jean [daniel_jean716@yahoo.com] |
| on behalf of | Daniel Jean <daniel_jean716@yahoo.com> [daniel_jean716@yahoo.com] |
| Sent: | 4/22/2020 10:19:05 PM |
| To: | Fred Nance Jr., Ph.D. [frednance@clickservices.org]; THOMAS BRADLEY [tbacpa52@yahoo.com]; Hattie Wash [washhattie@gmail.com] |
| CC: | Sheila Chew [sacpoiple1@gmail.com] |
| Subject: | Re: Management Meeting |

I have no preference.

Sent from Yahoo Mail on Android

On Wed, Apr 22, 2020 at 5:11 PM, Fred Nance Jr., Ph.D.
<frednance@clickservices.org> wrote:

I have no preference for the call or meeting.

/s/Dr. Fred Nance Jr., PhD
Health & Human Services
Social Policy Analysis and Planning
www.clickservices.org
708-921-1395

NOTICE: If you have received this e-mail message from Dr. Fred Nance Jr., the e-mail message, and any and all attachments transmitted with it are intended solely for the use of the addressee and may contain legally privileged and confidential information. If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this email message to the intended recipient, you are hereby notified that any dissemination, distribution, copying, or other use of the message or its attachments is strictly prohibited. If you have received this email message and its attachments if any, in error, please notify the sender immediately by replying to the message and please delete it from your computer. Thank you.

On Wednesday, April 22, 2020, 04:25:17 PM CDT, Hattie Wash <washhattie@gmail.com> wrote:

# EXHIBIT 12

I am scheduling a meeting with persons on this email for Friday at 1 pm. the meeting will be on line and I will notify you what method of communication we will use. There appears to be some confusion around the stay at home order. We can not ask employees to perform work duties at home if they chose not to and we cannot penalize them if they chose not to participate in agency activities during the stay at home order. We need to meet so all of us is on the same page relative to work responsibilities. We can use Skype or conference call. Let me know your preference and I will have Sheila set it up. Dr. Wash

Message
_____

| | |
|---|---|
| **From:** | Daniel Jean [daniel_jean716@yahoo.com] |
| **on behalf of** | Daniel Jean <daniel_jean716@yahoo.com> [daniel_jean716@yahoo.com] |
| **Sent:** | 5/19/2020 6:49:15 PM |
| **To:** | Shella Chew [sacpoiple1@gmail.com] |
| **CC:** | Fred Nance Jr. [frednance@clickservices.org]; Dr. Hattie Wash [washhattie@gmail.com] |
| **Subject:** | Scheduling of make-up MA'AT groups |

## EXHIBIT 13

Alicia and Earlene will conduct a MA'AT group on Saturday May 30, 2020 in replacement of their May 25th group. Please schedule that group from 11:35 AM insuring that they use the same Access code they use on Monday. Valerie and Jamie will have their group on Wednesday May 27th at 5:30 PM. Valerie and Jamie plan to also have their Sex offender group right after the MA'AT group.

Thanks,

Daniel Jean

Message

| | |
|---|---|
| **From**: | Daniel Jean [daniel_jean716@yahoo.com] |
| on behalf of | Daniel Jean <daniel_jean716@yahoo.com> [daniel_jean716@yahoo.com] |
| **Sent**: | 5/21/2020 6:17:26 PM |
| **To**: | Dr. Fred Nance Jr. [drfred.nancejr@gmail.com] |
| **CC**: | Hattie Wash [washhattie@gmail.com] |
| **Subject**: | Re: Mentor Progress Note |

## EXHIBIT 14

The last attached document is the progress note that every mentor should use to document their case management services. In fact, I am at the office, and notice that it is being used. I have not reviewed the content of the notes, but it seems to me from the 12 cases I have looked at, everybody is using it. I will come back here next week to do a more thorough audit. Feel free to meet me here. We can look at them together with our masks on.

Thanks,

Daniel

On Thursday, May 21, 2020, 11:11:44 AM CDT, Dr. Fred Nance Jr. <drfred.nancejr@gmail.com> wrote:

Good afternoon. This is the progress note (document #11) I created in November of 2019 and submitted in this form to the Mentors. If you have another document to support your suggestion I gave them something else please let me know.

—
/s/Dr. Fred Nance Jr., Ph.D.
Human Services/Social Policy Analysis
Program and Policy Development
708-921-1395

Message

| | |
|---|---|
| **From:** | Daniel Jean [daniel_jean716@yahoo.com] |
| on behalf of | Daniel Jean <daniel_jean716@yahoo.com> [daniel_jean716@yahoo.com] |
| **Sent:** | 5/23/2020 3:15:06 PM |
| **To:** | Serita Robinson [srobin21@csu.edu]; Chad Ellis [seragi73@yahoo.com]; Valerie Minor [vminor2018@gmail.com]; Jamie Enge [jamiee425@gmail.com]; Earlene Beard [earlene416@gmail.com]; ALICIA A. PERRY [pebsluvsgod@yahoo.com] |
| **CC:** | Fred Nance Jr. [frednance@clickservices.org]; Dr. Hattie Wash [washhattie@gmail.com] |
| **Subject:** | Fidelity to the Mentoring Process |

## EXHIBIT 15

Please be reminded that you must conduct your mentoring sessions using only the 'Instructors/Mentors Manual". You need to refrain from using the "Curriculum Design". Fidelity to the program is very important. Everything in the manual needs to be covered in your sessions. Be mindful of not only the content, but also of the time assigned for each the session. This is not a psychotherapy group. Please follow the "Instructor/Mentor Manual".

I am counting on your cooperation.

Daniel Jean
Clinical Supervisor

Message

| | |
|---|---|
| **From:** | Daniel Jean [daniel_jean716@yahoo.com] |
| **on behalf of** | Daniel Jean <daniel_jean716@yahoo.com> [daniel_jean716@yahoo.com] |
| **Sent:** | 6/2/2020 6:03:19 PM |
| **To:** | Dr. Fred Nance Jr. [drfred.nancejr@gmail.com] |
| **Subject:** | Case management data entry form |
| **Attachments:** | Case Management October 2019.xlsx |

**EXHIBIT 16**

Please find the proposed Excel data entry form for Case management. With this format, we may be able to count the number of individuals who have received case management services as well as the type of case management. At the end, you can have a cumulative by participants as well as for the entire program. I am sure Sheila will be able to refine it to allow for the ability to run queries.

This only an example.

Thanks,

Daniel Jean

Message

| | |
|---|---|
| **From:** | Daniel Jean [daniel_jean716@yahoo.com] |
| **on behalf of** | Daniel Jean <daniel_jean716@yahoo.com> [daniel_jean716@yahoo.com] |
| **Sent:** | 6/25/2020 3:12:52 PM |
| **To:** | Dr. Fred Nance Jr. [drfred.nancejr@gmail.com] |
| **Subject:** | Re: Mentor Weekly Meeting |
| **Attachments:** | 6.25.20 Mentor Training Agenda.doc |

Please check out what I have added to Number 7 of the meeting agenda. Those names are the only ones that I am aware of. We need to have a data sheet to record the participants status in relation to the factors that can cause them to be classified as unsuccessful completers ( See BJA #54)

Thanks,
Daniel

On Thursday, June 25, 2020, 09:24:24 AM CDT, Dr. Fred Nance Jr. <drfred.nancejr@gmail.com> wrote:

# **EXHIBIT 17**

Good morning. Here is the agenda for today's meeting at 5:30 pm.

—
/s/Dr. Fred Nance Jr., Ph.D.
Human Services/Social Policy Analysis
Program and Policy Development
708-921-1395

## SECOND CHANCE ACT
## MA`AT TRAINING AGENDA

**JUNE 25, 2020**　　**EXHIBIT 17**
**5:30 pm to 6:30 pm**

**SUBJECT**　　　　　　　　　　　**TIME/DURATION**

MA`AT PROGRAM RESPONSIBILITIES　　　　1 HOUR

1. MENTOR PARTICIPATION AT "TEMPORARY" WEEKLY MEETINGS –

   COMMUNICATION WITH PARTNERS

2. RE-OPENING OF EMAGES JULY 6, 2020 – STAFF/MENTORS ONLY

3. CASE MANAGEMENT

4. PARTICIPANT DISCHARGE INFORMATION

5. TELECONFERENCING WITH SPECIAL NEEDS UNIT AND JAIL

6. CORRECTED FORMS – MENTOR FEEDBACK/DOCUMENTATION

7. PARTICIPANTS WHO HAVE NOT BEEN ATTENDING GROUPS

   Need to outreach the following participants for re-connection or final disposition:

   A. **Suspended Participants**　B. **Recently discharged re-incarcerated participants**

   Stuart ▮▮▮　　　　　Justin ▮▮▮

   Larry ▮▮▮　　　　　　Alaino ▮▮▮

   Angelo ▮▮▮

   Daniel ▮▮▮

8. MENTOR/STAFF ADDITIONAL COMMENTS/ISSUES

Message

| | |
|---|---|
| **From:** | Daniel Jean [daniel_jean716@yahoo.com] |
| on behalf of | Daniel Jean <daniel_jean716@yahoo.com> [daniel_jean716@yahoo.com] |
| **Sent:** | 6/26/2020 11:26:37 PM |
| **To:** | Dr. Fred Nance Jr. [drfred.nancejr@gmail.com] |
| **Subject:** | Re: 2nd Quarter Discharges |
| **Attachments:** | Risk level of Unsuccessful Completers by Names Jan-March 2020.xlsx; Numbers of Unsuccessful Completers by Risk Level Jan-March 2020.xlsx |

Please find attached the corrected info.

Thanks,

Daniel

On Friday, June 26, 2020, 05:32:59 PM CDT, Dr. Fred Nance Jr. <drfred.nancejr@gmail.com> wrote:

## EXHIBIT 18

Daniel: The total number of discharges for the 2nd quarter is "15". The following names are not on your list:
Larry ██
Alanido ██
Keith ██ - Special Needs Unit
Justin ██
Kevin ██
Justin ██

Discharges that did not happen during the 2nd Quarter
Sergio ██ discharge noted 12/30/19
Emmanual ██ discharge noted 12/30/19
Darren ██ discharge noted 12/30/19

Martin ██ was in the program on April 1, 2020

What kind of discharge did these people have:
Demarcus ██
Michael ██
Juan ██

--
/s/Dr. Fred Nance Jr., Ph.D.
Human Services/Social Policy Analysis
Program and Policy Development
708-921-1395

Message

| | |
|---|---|
| **From:** | Daniel Jean [daniel_jean716@yahoo.com] |
| **on behalf of** | Daniel Jean <daniel_jean716@yahoo.com> [daniel_jean716@yahoo.com] |
| **Sent:** | 7/3/2020 3:00:25 PM |
| **To:** | Dr. Fred Nance Jr. [drfred.nancejr@gmail.com] |
| **CC:** | Dr. Hattie Wash [washhattie@gmail.com] |
| **Subject:** | Referral Form |
| **Attachments:** | Referral Form.doc |

# EXHIBIT 19

Dr. Nance:

Please find attached the "Referral Form" I re-created it. You may want to compare with the existing one and decide if this one is worth being adopted. Feel free to make any modifications you deem necessary.

Thanks,

Daniel

Message

| | |
|---|---|
| **From:** | Daniel Jean [daniel_jean716@yahoo.com] |
| **on behalf of** | Daniel Jean <daniel_jean716@yahoo.com> [daniel_jean716@yahoo.com] |
| **Sent:** | 7/7/2020 9:07:57 PM |
| **To:** | Dr. Fred Nance Jr. [drfred.nancejr@gmail.com] |
| **Subject:** | Re: July 8, 2020 MA`AT Meeting |
| **Attachments:** | Participants with no Service Plans.pdf |

## EXHIBIT 20

Please find attached the list of the 11 participants that I found to have no service plans during the chart review I conducted yesterday. They all belong to either Alicia or Serita. I already spoke with both of them. They plan to do the service plan the next time they speak with those participants.
I have also collected the case management progress notes from everyone except Chad as of yesterday.

Thanks,
Daniel


On Tuesday, July 7, 2020, 03:39:58 PM CDT, Dr. Fred Nance Jr. <drfred.nancejr@gmail.com> wrote:


Daniel: Please send me the information you called me with today.


--
/s/Dr. Fred Nance Jr., Ph.D.
Human Services/Social Policy Analysis
Program and Policy Development
708-921-1395

Message

| | |
|---|---|
| **From:** | Daniel Jean [daniel_jean716@yahoo.com] |
| **on behalf of** | Daniel Jean <daniel_jean716@yahoo.com> [daniel_jean716@yahoo.com] |
| **Sent:** | 7/28/2020 12:08:52 AM |
| **To:** | Serita Robinson [srobin21@csu.edu] |
| **Subject:** | Fw: Module 3 Pre-Questionnaires |
| **Attachments:** | 7.13.20 MA`AT July Calendar Revised.doc |

Here is the e-mail that contained the new calendar.
Thanks,
Daniel Jean

----- Forwarded Message -----
**From:** Dr. Fred Nance Jr. <drfred.nancejr@gmail.com>
**To:** Jamie Enge <jamiee425@gmail.com>; Valerie Minor <vminor2018@gmail.com>; Earlene Beard <earlene416@gmail.com>; Alicia Perry <pebsluvsgod@yahoo.com>; Chad Ellis <seragi73@yahoo.com>; Serita Robinson <srobin21@csu.edu>
**Cc:** Daniel Jean <daniel_jean716@yahoo.com>; Dr. Fred Nance Jr. <drfred.nancejr@gmail.com>
**Sent:** Monday, July 13, 2020, 12:54:14 PM CDT
**Subject:** Module 3 Pre-Questionnaires

**EXHIBIT 21**

Mentors: Good afternoon. Daniel and I decided there will be no regular group session this week. Please get the Module 3 Trauma-Informed pre-questionnaires done this week. Please use the "Sign In" sheets documenting participant completion of the pre-questionnaires for Trauma, Module 3. You can consider this case management. The regular group session Module 3 for the Trauma-Informed curriculum will start the week of July 20, 2020. I am attaching a revised July 2020 calendar. If you have any questions or concerns about this change, please consult with Daniel. Please acknowledge receipt of this email and its attachment. Thank you.

--
/s/Dr. Fred Nance Jr., Ph.D.
Human Services/Social Policy Analysis
Program and Policy Development
708-921-1395

Message

| | |
|---|---|
| **From:** | Daniel Jean [daniel_jean716@yahoo.com] |
| **on behalf of** | Daniel Jean <daniel_jean716@yahoo.com> [daniel_jean716@yahoo.com] |
| **Sent:** | 7/28/2020 2:04:53 PM |
| **To:** | Dr. Fred Nance Jr. [drfred.nancejr@gmail.com] |
| **CC:** | daniel jean [daniel_jean716@yahoo.com] |
| **Subject:** | Trauma and Mentoring Pre-tests |

## EXHIBIT 22

Good morning.
I am set to enroll a new participant this morning. Please send me both the Trauma and the Mentoring pre-tests. I will do the interview over the phone with him.

Thanks,

Daniel

Message

| | |
|---|---|
| **From:** | Daniel Jean [daniel_jean716@yahoo.com] |
| **on behalf of** | Daniel Jean <daniel_jean716@yahoo.com> [daniel_jean716@yahoo.com] |
| **Sent:** | 7/30/2020 3:16:27 PM |
| **To:** | Valerie Minor [vminor2018@gmail.com]; Jamie Enge [jamiee425@gmail.com]; Serita Robinson [srobin21@csu.edu]; Chad Ellis [seragi73@yahoo.com]; Earlene Beard [earlene416@gmail.com]; ALICIA A. PERRY [pebsluvsgod@yahoo.com] |
| **CC:** | Dr. Hattie Wash [washhattie@gmail.com]; Dr. Fred Nance Jr. [drfred.nancejr@gmail.com] |
| **Subject:** | Mentors meeting |
| **Attachments:** | MA'AT Meeting 07-30-2020.docx; Referral Form.doc |

### EXHIBIT 23

Please find attached the agenda and the new Referral form for today's meeting. The meeting will be held via Skype at 5:30 pm

Thanks,

Daniel Jean

MA'AT Project

Meeting Agenda

**EXHIBIT 23**

July 30, 2020

1. Collaboration
2. Module 3
   - Goals and Objectives
   - Content Validity
   - Content delivery for facilitation of knowledge retention
   - Fidelity
   - Style/Responsivity
3. Preparation
4. Pre-test trauma
5. Pre-test Mentoring
6. Documentation
   - Services
   - Referrals (New Referral Form)
   - Progress Notes
7. Updates of Participant Status
8. Mentors Evaluation
9. Feedback & Suggestions from Mentors

Message

| | |
|---|---|
| **From:** | Daniel Jean [daniel_jean716@yahoo.com] |
| **on behalf of** | Daniel Jean <daniel_jean716@yahoo.com> [daniel_jean716@yahoo.com] |
| **Sent:** | 8/10/2020 6:59:26 PM |
| **To:** | Dr. Fred Nance Jr. [drfred.nancejr@gmail.com] |
| **Subject:** | New Clients Information |

## EXHIBIT 24

Here are the names of the two participants I enrolled today. Please notice also their assigned numbers, groups and their parole officers:

| | | | |
|---|---|---|---|
| 1. David ████████ | Wednesday group | 2076 | Grella |
| 2. Brandon ████ | Saturday group | 2077 | De Young |

Thanks,

Daniel Jean

Message
_____

| | |
|---|---|
| **From:** | Daniel Jean [daniel_jean716@yahoo.com] |
| on behalf of | Daniel Jean <daniel_jean716@yahoo.com> [daniel_jean716@yahoo.com] |
| **Sent:** | 8/10/2020 7:04:54 PM |
| **To:** | Dr. Fred Nance Jr. [drfred.nancejr@gmail.com] |
| **CC:** | Serita Robinson [srobin21@csu.edu]; ALICIA A. PERRY [pebsluvsgod@yahoo.com] |
| **Subject:** | Efrain Arceo Status |

# EXHIBIT 25

Efrain ■■■■ (**2057**) completed probation as of 8/7/2020. The Judge let him go. I also received a confirmation from his probation officer.

Thanks,
Daniel

*SAmGov: Exp...*

 **Gmail**

Hattie Wash <washhattle@gmail.com>

---

## 2018-CY-BX-0025 (Establishing, Managing & Generating Effective Services, Inc.) - Questions to Be Addressed
2 messages

---

**Willis, Tracey (OJP)** <Tracey.Willis@usdoj.gov>                     Wed, Aug 26, 2020 at 8:57 AM
To: "Emages4U@gmail.com" <Emages4U@gmail.com>
Cc: "Dr. Hattie Wash" <Washhattle@gmail.com>, "Dever, Michael (OJP)" <Michael.Dever@usdoj.gov>, "Bethea, Andre (OJP)" <Andre.Bethea@usdoj.gov>

Good Morning Dr. Wash,          **EXHIBIT 26**

I am doing a review of your award and have a few questions that need to be addressed:

1.  Dr. Nance should not be the Point of Contact for this award.  Please explain why Dr. Nance is the listed as the POC & Alternate POC, since he works for CL.I.C.K. (a consultant) and not Emages?  The POC **must be** an employee of Emages.  Please submit a GAN in GMS before Friday to change the POC information to someone who works for Emages, Inc.

2.  We received information about an employee of Emages who was being paid but does not exist. Please provide via this email, the following:

   • A list of all employees of Emages, Inc. and contractors (current & past) & their job title

   • What they were paid as salary from grant funds up to this point, and

   • Supporting documentation (i.e., timesheets, purchase order/MOUs, etc.) to validate the pay

Tracey Willis

State Policy Advisor

*1-888-549-9901*

---

Hattie Wash <washhattle@gmail.com>                                   Wed, Aug 26, 2020 at 12:36 PM

Message

| | |
|---|---|
| **From:** | Hattie Wash [washhattie@gmail.com] |
| **on behalf of** | Hattie Wash <washhattie@gmail.com> [washhattie@gmail.com] |
| **Sent:** | 9/9/2020 10:00:42 PM |
| **To:** | Dever, Michael (OJP) [Michael.Dever@usdoj.gov] |
| **CC:** | Faley, Jonathan (OJP) [Jonathan.Faley@usdoj.gov]; Willis, Tracey (OJP) [Tracey.Willis@usdoj.gov]; Bethea, Andre (OJP) [Andre.Bethea@usdoj.gov] |
| **Subject:** | Re: FW: 2nd chance general ledger |

## EXHIBIT 27

Hello Mr. Dever:

On September 30, 2020 there was a draw-down of $880.00 that appeared under Dorothy Collins name. I explained to Dr. Nance that the draw-down was for the candidate that we were interviewing for that position. Dorothy Collins name should not have been included in the draw-down. If you look at pages 4 & 5 of the general ledger for second chance you will see that no checks were written for Dorothy Collins for the months of March or April. Her last check was in January, 2020. I was under the impression that we could draw down money that we plan to use in the future based upon my reading of the OJP Training and Technical Assistance User Guide Grant Payment Request System (GPRS), Creating a Payment Request which is described on page 12. The $880 draw-down on March 30, 2020, is currently in the bank. That amount as well as the additional months that the support staff position was vacant I will initiate a budget revision for those funds.

When will I receive a final ruling from you or OJP on the merit of Dr. Nance's claim of Fraud against EMAGES?.
Thank you for your assistance in addressing this matter.
Dr. Wash
Founder & CEO
EMAGES, Inc.

On Tue, Sep 8, 2020 at 2:13 PM Dever, Michael (OJP) <Michael.Dever@usdoj.gov> wrote:

Good Afternoon Dr. Wash,

In reviewing the documents provided, can you please explain the 3/30/2020 drawdown document (attachment #3) which appears to include payments for Dorothy Collins in March 2020? This appears to be the main item that seems to conflict or requires explanation based on documents received.

Per the general ledger and Dorothy Collins pay days doc (attachments #1 and #2), it appears to show that Dorothy Collins stopped work in January 2020? If you can provide an explanation on what we are seeing here, that would be really helpful.

Thank you!

Michael

**From:** Willis, Tracey (OJP) <Tracey.Willis@ojp.usdoj.gov>
**Sent:** Tuesday, September 1, 2020 4:33 PM
**To:** Dever, Michael (OJP) <Michael.Dever@ojp.usdoj.gov>

Message

| | |
|---|---|
| **From:** | Daniel Jean [daniel_jean716@yahoo.com] |
| **on behalf of** | Daniel Jean <daniel_jean716@yahoo.com> [daniel_jean716@yahoo.com] |
| **Sent:** | 9/16/2020 6:36:12 PM |
| **To:** | Valerie Minor [vminor2018@gmail.com]; Jamie Enge [jamiee425@gmail.com]; Chad Ellis [seragl73@yahoo.com]; Serita Robinson [srobin21@csu.edu]; Alicia Perry [pebsluvsgod@yahoo.com]; Earlene Beard [earlene416@gmail.com] |
| **CC:** | Dr. Fred Nance Jr. [drfred.nancejr@gmail.com]; daniel jean [daniel_jean716@yahoo.com]; Dr. Hattie Wash [washhattie@gmail.com] |
| **Subject:** | Meeting Agenda |
| **Attachments:** | Meeting Agenda.docx |

## EXHIBIT 28

Please see attached agenda for our monthly mentors meeting. The meeting will start at 5:30 pm via Skype tomorrow September 16, 2020.

Thanks,

Daniel Jean

## EXHIBIT 28

Meeting Agenda

MA'AT Project

September 16, 2020

1. Case management
2. New Supportive Services and Referral Directory
3. E-mail Confirmation
4. Feedback from mentors
5. Services at the Jail
6. Collaboration
7. Consistency/Fidelity
8. Preparation and Professionalism
9.



# EMAGES, INC.

**Establishing, Managing and Generating Effective Services Inc.**
7601 S. Kostner, Suite 500, Chicago, Illinois 60652
(773) 224-7386 Fax (773) 224-7685

September 21, 2020

Hattie Wash, Psy. D
*Founder & Chief*
*Executive Officer*

Larry Ross, LCSW
*Honorary President Served*
*1992-2011*
*(Posthumously)*

Donna Harris
*President*

Marilyn Scott, Psy.D
*Vice President*

*Secretary*
*Linda Brown-Jackson*

Edward Butler, Psy.D
*Treasurer*

Board Members
Sabrina Nelson
Brenda Hodges-Leggard
Leatha Woolfolk
Arnie Harris
Brad Warner
Mary Cox
Joann Jones

Office of Justice Programs
U.S. Department of Justice
810 7th Street NW
Washington, DC 20531          **EXHIBIT 29**

Dear Mrs. Tracey Willis:

Effective October 1, 2020, the Board of Directors of EMAGES, Inc. will terminate our grant award under the FY18 Second Chance Comprehensive Community-Based Adult Reentry Program, #2018-CY-BX-0025. The reasons for the termination are as follow: EMAGES financial instability and a failure to meet programmatic and evaluation requirements of the grant.

The COVID-19 Pandemic impacted the City of Chicago the first week of March 2020. The high death rate and positive cases from the virus, lead the Governor of Illinois to issue a Disaster Proclamation and a Shelter in Place mandate that same week for the State of Illinois. EMAGES is considered an essential service during the Shelter in Place order therefore our agency has not closed. However, because of the shelter in place mandate and because our clients are sheltering in place, service delivery to our client populations has decreased by more than 60% as well as revenue from them and other funding options. The reduction in revenue has created a serious cash-flow problem which is threatening the survival of the EMAGES. Currently EMAGES has not received our Fee-for-Services monies owed from the State of Illinois for FY21, which began July 1, 2020. EMAGES will have to temporary closed the agency if funds are not received by the middle of October, 2020.

The COVID-19 Pandemic and the State of Illinois Shelter in Place mandate has also prevented EMAGES from fulfilling the Performance measures of the Second Chance grant. EMAGES performance measures include providing a trauma informed and mentoring curriculum to five sex offender groups housed inside of EMAGES, one sex offender group inside the Cook County Jail and one sex offender group in the special needs' unit located inside the State of Illinois Department of Corrections. Services to all seven groups were provided the first six months of the second year of the grant. However, no services were provided inside Cook County Jail or the Illinois Department of Correction after the second week of March. To date EMAGES has been able to adhere to the performance

**EXHIBIT 29**

measures for our site, by providing Telehealth group services to our sex offenders. But we have no data for the pre-released detainees after March 2020.

The COVID-19 Pandemic has also compromised our ability to effectively evaluate outcome measures that were developed for the second chance program. Seven evaluation instruments as well as pre/post questionnaires were collected the first six months from all seven groups. However, the Shelter in Place mandate for the State of Illinois has prevented us from collecting data inside Cook County Jail and the Illinois Department of Correction.

EMAGES would like to thank the Office of Justice programs for providing EMAGES with an opportunity to meet the service needs of an underserved client population. Even though we are giving the grant up for circumstances outside of our control, we are confident that we have addressed trauma as it relates to sex offending behaviors and have provided clients with positive role models to emulate.


Sincerely,

Donna Harris, Board President
Hattie Wash, PSY.D. _ C E O

 Gmail

Hattie Wash <washhattie@gmail.com>

---

## Suspension of the sex offender groups and termination of the Second Change Act grant

1 message

**EXHIBIT 30**

---

Hattie Wash <washhattie@gmail.com>                                  Mon, Sep 21, 2020 at 7:27 PM
To: Gerri Taylor <tgerri99@yahoo.com>, mitzi scott <mitziscott10@yahoo.com>, curtis slate <curtiscurtis47@aol.com>, Sheila Chew <sacpoiple1@gmail.com>, shudson305@hotmail.com, Jean Daniel <Daniel_Jean716@yahoo.com>, marcie collins <marcie_93@yahoo.com>, Chad Ellis <seragi73@yahoo.com>, Eleanor Harris <eleanorharris98@yahoo.com>, Edward Butler <dr_ebutler@yahoo.com>, Jamie Enge <jamiee425@gmail.com>, "Dr. Fred Nance Jr." <drfred.nancejr@gmail.com>, valerie minor <vminor2018@gmail.com>, LORI ORTIZ <loriortiz6199@comcast.net>, pebsluvsgod@yahoo.com, earlene416@gmail.com, srobin21@csu.edu, "Dr. Karen Witherspoon" <doctorwitherspoon@gmail.com>, THOMAS BRADLEY <tbacpa52@yahoo.com>, trentonfedrick@yahoo.com, johnson_l@comcast.net

The Covid-19 Pandemic, the Shelter in Place Mandate by the State of Illinois, less than 15% of sex offender clients paying their fees as well as EMAGES not receiving a payment from the FY21 State budget which began July, 2020 has created an economic hardship and cash flow problem for EMAGES.

Given the above Effective October 1, 2020 EMAGES is suspending our sex offender groups and returning the Second Chance Act grant back to the Office of Justice Programs. Additionally, Staff in the substance abuse programs work week will be reduced from a five day work week to a four day week. If funding is not received before October 1, 2020, I will not be able to meet EMAGES October 1, 2020 payroll for the substance abuse program and the sex offender group facilitators.

I have scheduled a ZOOM meeting for Thursday September 24, 2020 at 7:00 p.m. to discuss the above changes and address any concerns you may have. Please let me know if you are unable to attend the meeting.

You will receive a ZOOM login number tomorrow.
Dr. Wash

September 21, 2020

Office of Justice Programs
U.S. Department of Justice
810 7th Street NW                     **EXHIBIT 31**
Washington, DC 20531

Dear Mrs. Tracey Willis:

Effective October 1, 2020, the Board of Directors of EMAGES, Inc. will terminate our grant award under
the FY18 Second Chance Comprehensive Community–Based Adult Reentry Program, #2018-CY-BX-0025.
The reasons for the termination are as follow: EMAGES financial instability and a failure to meet
programmatic and evaluation requirements of the grant.

The COVID-19 Pandemic impacted the city of Chicago the first week of March 2020. The high death rate
and positive cases from the virus, lead the Governor of Illinois to issue a Disaster Proclamation and a
Shelter in Place mandate that same week for the State of Illinois. EMAGES is considered an essential
service during the Shelter in Place order therefore our agency has not closed. However, because of the
shelter in place mandate and because our clients are sheltering in place, service delivery to our client
populations has decreased by more than 60% as well as revenue from them and other funding options.
The reduction in revenue has created a serious cash-flow problem which is threatening the survival of
the EMAGES.  Currently EMAGES has not received our Fee-for-Services monies owed from the State of
Illinois for FY21, which began July 1, 2020.  EMAGES will have to temporary closed the agency if funds
are not received by the middle of October, 2020.

The COVID-19 Pandemic and the State of Illinois Shelter in Place mandate has also prevented EMAGES
from fulfilling the Performance measures of the Second Chance grant. EMAGES performance measures
include providing a trauma informed and mentoring curriculum to five sex offender groups housed
inside of EMAGES, one sex offender group inside the Cook County Jail and one sex offender group in the
special needs' unit located inside the State of Illinois Department of Corrections.  Services to all seven
groups were provided the first six months of the second year of the grant. However, no services were
provided inside Cook County Jail or the Illinois Department of Correction after the second week of
March. To date EMAGES has been able to adhere to the performance measures for our site, by providing
Telehealth group services to our sex offenders. But we have no data for the pre-released detainees after
March 2020.

The COVID-19 Pandemic has also compromised our ability to effectively evaluate outcome measures
that were developed for the second chance program. Seven evaluation instruments as well as pre/post
questionnaires were collected the first six months from all seven groups. However, the Shelter in Place
mandate for the State of Illinois has prevented us from collecting data inside Cook County Jail and the
Illinois Department of Correction.

EMAGES would like to thank the Office of Justice programs for providing EMAGES with an opportunity to
meet the service needs of an underserved client population. Even though we are giving the grant up for
circumstances outside of our control, we are confident that we have addressed trauma as it relates to
sex offending behaviors and have provided clients with positive role models to emulate.

## EXHIBIT 31

Sincerely,

Donna Harris, Board President
Hattie Wash, PSY.D. CEO

relationship with C.L.I.C.K. Services. EMAGES, Inc. has chosen to terminate the award per Dr. Hattie Wash's letter outlining the reasons, and BJA will work with EMAGES to close out the award. BJA will conduct an in-depth financial and programmatic review of the award activities between Oct. and Dec. to ensure funds were administered properly, or identify issues requiring resolution.

If C.L.I.C.K. Services would like to apply for a Second Chance Act Community-Based Program grant as a direct recipient or through a partnership with another organization to continue serving the community in FY 2021, please know that we will be announcing the Second Chance Act Solicitations this Fall.

Thank you!

Michael Dever

## EXHIBIT 32

**From:** Dr. Fred Nance Jr. <drfred.nancejr@gmail.com>
**Sent:** Monday, September 21, 2020 10:27 PM
**To:** Dever, Michael (OJP) <Michael.Dever@ojp.usdoj.gov>; Bethea, Andre (OJP) <Andre.Bethea@ojp.usdoj.gov>; Willis, Tracey (OJP) <Tracey.Willis@ojp.usdoj.gov>; Williams, Joseph <jwilliams@air.org>; Ronald Howard <ronald.howard@cookcountyil.gov>; Jane Gubser <jane.gubser@cookcountyil.gov>; Patricia Grosskopf <patricia.grosskopf@illinois.gov>; Sarah.Brown-Foiles@Illinois.gov; Dixon, Dion <dion.dixon@illinois.gov>; Josie.Ware@mail.house.gov; Tumia.Romero@mail.house.gov
**Cc:** Dr. Fred Nance Jr. <frednance@clickservices.org>; Dr. Fred Nance Jr. <drfred.nancejr@gmail.com>
**Subject:** Re: Suspension of the sex offender groups and termination of the Second Change Act grant

I forgot to include there has been a total of 111 participants enrolled in the SCA MAT program. Since Covid-19, there are 59 participants calling in for service, utilizing the teleconferencing model. We lost 13 participants due to the Coronavirus closing of the jail and the Special Needs Unit of the Illinois Department of Corrections. Before the Coronavirus dilemma occured, we had approximately 79 participants enrolled in the program. The grant project was working well during the Coronavirus. Dr. Wash does not provide any reasoning in her email to justify giving the grant back. Just because she cannot afford to keep EMAGES open, there is no reason to shut down the SCA grant. Our grant participants are teleconferencing. The participants do not have fees. Mentors and participants, for the most part, are calling in from home for services. Again, Dr. Wash is giving the grant back and closing down this grant retaliating against me for filing my Whistleblower complaints.

Mr. Dever, Mr. Bethea, & Ms. Willis: How are you protecting my job? How are you protecting me from retaliation? Pursuant to the National Defense Authorization Act of 2013 (NDAA), which includes a provision that makes it illegal for an employee of a Federal contractor, subcontractor, or grantee to be discharged, demoted, or otherwise discriminated against for making a protected whistleblower disclosure. Under NDAA, the DOJ Office of Inspector General has jurisdiction to investigate allegations of reprisal for whistleblowing by employees of DOJ contractors, subcontractors, and award recipients.

You should give the grant to me. We can talk about the logistics for the transfer of grant to C.L.I.C.K. Services, NFP. I hope to hear from you soon as Dr. Wash has set a date of October 1, 2020 to shut down the program. Thank you.

On Mon, Sep 21, 2020 at 8:54 PM Dr. Fred Nance Jr. <drfred.nancejr@gmail.com> wrote:

# EXHIBIT 32

On September 21, 2020, I received the email above and below from Dr. Hattie Wash dissolving the Second Chance Act grant #2018-CY-BX-0025. As Dr. Wash and I talked about her giving up the program, after I discovered her misappropriation of funds or fraud and talked to her about it, Dr. Wash told me since I was going to report this to DOJ, BJA, OJP I could take the program. I sent the email, with this statement from Dr. Wash, to DOJ, BJA, OJP's Mr. Dever, Mr. Bethea, and Ms. Willis. Therefore, I am requesting C.L.I.C.K. Services, NFP become responsible for the grant to its end on September 30, 2021.

There should be no barriers or reasons why I cannot take over the grant. Dr. Wash and I wrote the proposal. I am the Program Director. I created all of our collaborative partners for this grant. Dr. Wash and I created and developed the curricula for this program. I know every part of this program. I partnered with Dr. Wash on this grant. Dr. Wash and I decided she would be the fiduciary and I would handle the day-to-day operation as the Program Director. It was my understanding we were equal partners. Dr. Wash just handled the flow of money for the grant. Read our SCA abstract and proposal for this grant, which is attached.

As reported in our abstract and proposal (pp. 17-18) (attached), EMAGES, Inc & C.L.I.C.K. Services, NFP collaborated and partnered for this grant. I am more than capable of finishing out this grant. This move by Dr. Wash is retaliatory in nature toward me for filing the 3 Whistleblower complaints with the Department of Justice, Bureau of Justice Assistance, Office of Justice Programs, and the U.S. Office of Inspector General for misappropriation of funds or fraud. As I have stated in my Whistleblower complaints, my employment is protected by the Whistleblower Act. My Whistleblower complaints are attached.

Dr. Wash's dilemma with her funding from the State of Illinois is not the first time this has happened to EMAGES. EMAGES has closed programs before because of Illinois State funding. There is no reason this grant cannot continue to move forward under the direction of C.L.I.C.K. Services, NFP (www.clickservices.org). Grant #2018-CY-BX-0025 is funded. I can still work with the Illinois Department of Corrections (post-release prison) and the Cook County Department of Corrections (pre-release jail).I am in the process of creating and developing a 90-day transitional house for sex offenders. I can run the grant from this project. The housing program is being created under C.L.I.C.K. Housing, Inc. My 'brief' housing project proposal is attached. I created this proposal for Illinois and Chicago legislators seeking support for my housing project. Congressman Davis has given me a Letter of Support for my housing project, which is attached. I can provide more details in line with a regular SCA proposal for how the program will work if necessary.

The reasoning Dr. Wash uses for giving the grant back is ludicrous. Grant #2018-CY-BX-0025 is funded and is not affected by the lack of Illinois State funding Dr. Wash alludes too. The grant funding covers participant cost because there is no participant cost. The grant covers contractual fees for all mentors and staff of the grant, which is listed in the grant budget. Our budget takes care of office space and other ancillary functions and needs. Dr. Wash is lumping the grant program in with her State dilemma to retaliate against me for filing my Whistleblower complaints. The only reason Dr. Wash is giving the program back to OJP is to hurt me for filing the 3 Whistleblower complaints.

WHEREFORE, I am requesting a teleconference audience with Mr. Michael Dever, BJA Division Chief; Mr. Andre Bethea, BJA Senior Policy Advisor; and Ms. Tracey Willis, OJP Grant Manager; or in the alternative, a transfer of responsibility for Grant #2018-CY-BX-0025. Please respond. Thank you.

Respectfully submitted

[Quoted text hidden]

--

/s/Dr. Fred Nance Jr., Ph.D.

Human Services/Social Policy Analysis

Program and Policy Development

708-921-1395

Emages_00001234

/s/Dr. Fred Nance Jr., Ph.D.

Human Services/Social Policy Analysis

Program and Policy Development

708-921-1395

---

**Dr. Fred Nance Jr.** <drfred.nancejr@gmail.com>                                          Thu, Sep 24, 2020 at 10:26 AM
To: "Dever, Michael (OJP)" <Michael.Dever@usdoj.gov>
Cc: "Bethea, Andre (OJP)" <Andre.Bethea@usdoj.gov>, "Dr. Fred Nance Jr." <drfred.nancejr@gmail.com>, "Dr. Fred Nance
Jr." <frednance@clickservices.org>, Hattie Wash <washhattie@gmail.com>, "Willis, Tracey (OJP)"
<Tracey.Willis@usdoj.gov>

# EXHIBIT 33

Good morning. Thank you for your explanation. You have not addressed how you or BJA are protecting my Whistleblower
protections, specifically my employment, retaliation, and emotional distress put upon me by EMAGES, specifically Dr.
Wash, and DOJ BJA OJP. Therefore, you leave me with few choices. I am going to address the issues of the whistleblower
act in federal court. I will file in October 2020. I will sue all parties involved in their individual and professional capacity. I
have posted the whistleblower complaints on Twitter and Facebook, as I exercise my 1st amendment rights. I will post my
Federal complaint on social media once I have filed it. You have been noticed and all administrative remedies have been
exhausted. Have a blessed day.
[Quoted text hidden]

---

**Dr. Fred Nance Jr.** <drfred.nancejr@gmail.com>                                          Thu, Sep 24, 2020 at 11:39 AM
To: "Dever, Michael (OJP)" <Michael.Dever@usdoj.gov>
Cc: "Bethea, Andre (OJP)" <Andre.Bethea@usdoj.gov>, "Dr. Fred Nance Jr." <drfred.nancejr@gmail.com>, "Dr. Fred Nance
Jr." <frednance@clickservices.org>, Hattie Wash <washhattie@gmail.com>, Thomas Bradley <tbacpa52@yahoo.com>,
"Willis, Tracey (OJP)" <Tracey.Willis@usdoj.gov>

Addendum to my previous response so I will have an additional legal document: I, Dr. Fred L. Nance Jr., am President &
CEO of C.L.I.C.K. Services NFP. As stated in my previous documentation, I work for my company as the Abstract and
Proposal dictate.

From the onset of this grant, I requested payment for my Program Director services to C.L.I.C.K. via a 1099. Dr. Wash
told me the budget was written for regular taxes to be taken out for the Program Director position and that she could not
change the budget. Being a Peer Reviewer, I told her she could change the budget with a GAN. Dr. Wash refused to
change it. I talked Mr. Bradley, the accountant, requesting a change. Mr. Bradley said he had to go along with Dr. Wash
since she was the fiduciary.

I will enjoin Mr. Thomas Bradley in my litigation as a defendant also.


On Thu, Sep 24, 2020 at 9:20 AM Dever, Michael (OJP) <Michael.Dever@usdoj.gov> wrote:


T
[Quoted text hidden]
[Quoted text hidden]

---

**Dr. Fred Nance Jr.** <drfred.nancejr@gmail.com>                                          Thu, Sep 24, 2020 at 6:49 PM
To: "Dever, Michael (OJP)" <Michael.Dever@usdoj.gov>
Cc: "Willis, Tracey (OJP)" <Tracey.Willis@usdoj.gov>, "Bethea, Andre (OJP)" <Andre.Bethea@usdoj.gov>, Hattie Wash
<washhattie@gmail.com>, "Dr. Fred Nance Jr." <drfred.nancejr@gmail.com>, "Dr. Fred Nance Jr."
<frednance@clickservices.org>, Thomas Bradley <tbacpa52@yahoo.com>

## EXHIBIT 33

Good evening. Attached is my cover letter to the United States Attorney's Office in the Northern District of Illinois and the email chain between Dr. Wash and myself regarding transferring the grant to me. I sent this email chain to your staff, which you sent me an email stating you had my emails. Please review the email dated July 8, 2020 at 5:50 PM, reporting Dr. Wash acknowledging my partnership with her and the grant.

On July 8, 2020 at 5:50 pm Dr. Wash states "...We collaborated on this project. As I said before EMAGES is the fiscal sponsor of this grant...At this point I am ready to give the program up,,,I am not involved in the day to day operations of any of the programs and neither should you as a program Director...." Dr. Wash should read the proposal. My job is the day-to-day operations of the program, no matter what job descriptions she produces.

On July 8, 2020 at 6:06 pm I answered Dr. Wash stating "...I asked you to stop threatening me...You need to read our proposal...Give the program up if that is your position...Give the program up. I'll take it. I'll send an email to the grant manager and Mr. Bethea...." On July 8, 2020 at 7:07 pm Dr. Wash stated "Okay call and you can have the program...make it effective as soon as possible."

Mr. Dever: You and your team threw my Whistleblower complaints out the window; taking all my protections away. All of you terminated my employment and retaliated against me for filing Whistleblower complaints. Emails are legal documents.

On Thu, Sep 24, 2020 at 9:20 AM Dever, Michael (OJP) <Michael.Dever@usdoj.gov> wrote:
[Quoted text hidden]
[Quoted text hidden]

---

**2 attachments**

 **9.24.20 U.S. Attorney General for Northern District of Illinois Cover Letter.pdf**
58K

**7.6.20 Email Chain Dr. Wash and Dr. Nance re Grant Transfer to Dr. Nance.pdf**
1579K

 Gmail

Hattie Wash <washhattie@gmail.com>

---

**Termination of the Department of Justice Second Chance Program Grant.**
2 messages

---

**Hattie Wash** <washhattie@gmail.com>                                      Wed, Sep 30, 2020 at 3:01 PM
To: "Dixon, Dion" <Dion.Dixon@illinois.gov>, patricia.grossokopt@illinois.gov, "Brown-Foiles, Sarah" <Sarah.Brown-Foiles@illinois.gov>

**EXHIBIT 34**

Hello All:
Effective October 1, 2020, EMAGES will terminate our Second Chance Grant with the Department of Justice. The COVID-19 Pandemic, coupled with the State of Illinois Shelter in Place Mandate has negatively impacted our ability to provide services under this grant as well as an inability to fulfill the requirements of the grant. I would like to personally thank you for your support in helping us obtain and implement the Second Chance Program. We are continuing providing sex offender counseling services to parolees referred from the department of corrections. Again thanks for your support.
Dr. Wash
CEO EMAGES

---

**Mail Delivery Subsystem** <mailer-daemon@googlemail.com>                   Wed, Sep 30, 2020 at 3:01 PM
To: washhattie@gmail.com

    **Address not found**

Your message wasn't delivered to
**patricia.grossokopt@illinois.gov** because the address
couldn't be found, or is unable to receive mail.

The response from the remote server was:

550 #5.1.0 Address rejected.

Final-Recipient: rfc822; patricia.grossokopt@illinois.gov
Action: failed
Status: 5.0.0
Remote-MTA: dns; smtpin01.illinois.gov. (216.124.52.101, the server for the domain illinois.gov.)
Diagnostic-Code: smtp; 550 #5.1.0 Address rejected.
Last-Attempt-Date: Wed, 30 Sep 2020 13:01:45 -0700 (PDT)

---------- Forwarded message ----------
From: Hattie Wash <washhattie@gmail.com>
To: "Dixon, Dion" <Dion.Dixon@illinois.gov>, patricia.grossokopt@illinois.gov, "Brown-Foiles, Sarah" <Sarah.Brown-Foiles@illinois.gov>

Cc:

Bcc:                                                **EXHIBIT 34**

Date: Wed, 30 Sep 2020 15:01:33 -0500

Subject: Termination of the Department of Justice Second Chance Program Grant.

Hello All:

Effective October 1, 2020, EMAGES will terminate our Second Chance Grant with the Department of Justice. The COVID-19 Pandemic, coupled with the State of Illinois Shelter in Place Mandate has negatively impacted our ability to provide services under this grant as well as an inability to fulfill the requirements of the grant. I would like to personally thank you for your support in helping us obtain and implement the Second Chance Program. We are continuing providing sex offender counseling services to parolees referred from the department of correctiions. Again thanks for your support.

Dr. Wash

CEO EMAGES

 Gmail

**Hattie Wash <washhattie@gmail.com>**

## 2018-CY-BX-0025 - Emages, Inc.
9 messages

**Willis, Tracey (OJP)** <Tracey.Willis@usdoj.gov>                                    Wed, Oct 7, 2020 at 9:18 AM
To: Hattie Wash <washhattie@gmail.com>
Cc: "Dever, Michael (OJP)" <Michael.Dever@usdoj.gov>, "Bethea, Andre (OJP)" <Andre.Bethea@usdoj.gov>

Good Morning Dr. Wash,                                    **EXHIBIT 35**

What are your plans regarding the remaining closeout, reporting, and EPDR monitoring review, etc. Do you plan on having Dr. Nance named as POC in the new JustGrants for all remaining action items?

Tracey Willis

State Policy Advisor

---

**Hattie Wash** <washhattie@gmail.com>                                    Wed, Oct 7, 2020 at 10:01 AM
To: "Willis, Tracey (OJP)" <Tracey.Willis@usdoj.gov>
                                                        **EXHIBIT 36**
Good Morning Mrs. Willis:
I have added Dr.Nance to the JustGrants. I plan to closeout the performance measures and budget by the end of this month. What is the time frame for the Special Condition #29 final evaluation report and any other time frames that are required. Thank you for your assistance.
Dr. Wash
[Quoted text hidden]

---

**Willis, Tracey (OJP)** <Tracey.Willis@usdoj.gov>                                    Wed, Oct 7, 2020 at 10:16 AM
To: Hattie Wash <washhattie@gmail.com>
Cc: "Dever, Michael (OJP)" <Michael.Dever@usdoj.gov>, "Bethea, Andre (OJP)" <Andre.Bethea@usdoj.gov>

Good Morning Dr. Wash,

Thank you for the update. The final evaluation report is due when you closeout the grant.



# EMAGES, INC.

### Establishing, Managing and Generating Effective Services Inc.
### 7601 S. Kostner, Suite 500, Chicago, Illinois 60652
### (773) 224-7386 Fax (773) 224-7685

December 28, 2020

**Hattie Wash, Psy. D**
*Founder & Chief*
*Executive Officer*

**Larry Ross, LCSW**
*Honorary President Served*
*1992-2011*
*(Posthumously)*

**Donna Harris**
*President*

**Marilyn Scott, Psy.D**
*Vice President*

*Secretary*
**Linda Brown-Jackson**

**Edward Butler, Psy.D**
*Treasurer*

*Board Members*
**Sabrina Nelson**
**Brenda Hodges-Leggard**
**Leatha Woolfolk**
**Arnie Harris**
**Brad Warner**
**Mary Cox**
**Joann Jones**

Mrs. Tracy Willis:
Office of Justice Programs

**EXHIBIT 37**

Regarding: Final Report for Award (2018-Cy-BX-0025

Dear Mrs. Willis:

The final programmatic and financial reports for EMAGES, Inc has been entered into the Just Grants system. The first year of the program consisted of developing the MA'AT program, Completing Special Conditions of the grant and development of a work plan. Additionally, The MA'AT program curriculum, mentors' manual and methods of presentation were developed. Seven groups for mentoring and Trauma were established: (five groups inside EMAGES, one group at Cook County Jail and one group at the Illinois Department of Corrections Special Needs Unit. Staff and mentors were also hired during the first year of funding.

March 2019, the COVID 19 Pandemic hit Chicago and a Shelter In Place Mandate was ordered by the Governor of Illinois. Consequently, only six months of services were delivered to the seven groups. Service data and outcomes are therefore based upon services they received during this period. (See Program Evaluation Report).

Enclosed is the Special Condition #29 EMAGES Final Evaluation Report. Which outlined services provided and service outcomes.

Let me know if additional programmatic information is needed.

Sincerely,

Hattie Wash, PSY.D.
CEO EMAGES, Inc.

Emages_00002504

Re: EXTERNAL: Re: BJA FY 21 Second Chance Act Community-Based Reentry Program
Orientation Call Replay

From:   Dr. Fred L Nance Jr., Ph.D. (

To:     bernice.horne@leidos.com                    **EXHIBIT 38**

Cc:     abitha.william@leidos.com

Date:   Thursday, June 10, 2021, 02:42 PM CDT


I worked for you guys on the 2019 peer review team with the same grant, which I had a financial
interest with another grant #2018-CY-BX-0025. We will let the Department of Justice, Office of the
Inspector General work it out. I filed the complaint and mailed on June 9, 2021.

/s/Dr. Fred Nance Jr.
Ph.D. Health & Human Services
Social Policy Analysis and Planning


NOTICE: If you have received this e-mail message from Dr. Fred Nance Jr., the e-mail message,
and any and all attachments transmitted with it are intended solely for the use of the addressee
and may contain legally privileged and confidential information. If the reader of this message is
not the intended recipient, or an employee or agent responsible for delivering this email message
to the intended recipient, you are hereby notified that any dissemination, distribution, copying, or
other use of the message or its attachments is strictly prohibited. If you have received this email
message and its attachments if any, in error, please notify the sender immediately by replying to
the message and please delete it from your computer. Thank you.


On Thursday, June 10, 2021, 12:01:04 PM CDT, Horne, Bernice <bernice.horne@leidos.com> wrote:


Dear Dr. Nance,

You are not eligible to serve on this peer review panel. Peer reviewers must comply with BJA's conflict
of interest rules and regulations. A peer reviewer cannot have a financial relationship with an
organization that submitted an application under the solicitation being peer reviewed. Thank you for
your interest.


**Bernice Horne | OJP Peer Review Support Services**
Login Pages: Peer Reviewer Database|
T: 301-240-5612 | E: bernice.horne@leidos.com

**From:** Dr. Fred Nance Jr. <
**Sent:** Wednesday, June 9, 2021 12:42 PM
**To:** Dr. Fred L Nance Jr., Ph.D.                          ; Home, Bernice [US-US] [NON-EMP]
<Bernice.Horne@leidos.com>
**Cc:** William, Abitha [US-US][NON-EMP] <Abitha.William@leidos.com>
**Subject:** Re: EXTERNAL: Re: BJA FY 21 Second Chance Act Community-Based Reentry Program
Orientation Call Replay

1/4

## Public Service Loan Forgiveness

From:  Dr. Fred L Nance Jr., Ph.D. (frednance@clickservices.org)

To:    dthompson@taftlaw.com

Cc:    frednance@clickservices.org          **EXHIBIT 39**

Date:  Friday, July 15, 2022 at 05:28 AM CDT

Mr. Thompson:

Do you think it helped or hurt your client to refuse to sign the Public Service Loan Forgiveness
document I sent her? Do you think it helped or hurt your client for Judge Alonso to dismiss my
retaliation claim regarding this document? Do you think it will help or hurt your client when my
Public Service Loan Forgiveness application is denied? For the record, I am attaching the
document again and sending it to you. This will be part of my discovery processes. You can return
them to me when I request them during the discovery processes. The federal government will deny
my request because the due date will have passed. Do you think this helps or hinders your case?

/s/Dr. Fred Nance Jr.
Ph.D. Human Services
Social Policy Analysis and Planning
Founder & CEO, C.L.I.C.K. Services
http://www.clickservices.org
http://www.linkedin.com/in/drnance
708-921-1395

NOTICE: If you have received this e-mail message from Dr. Fred Nance Jr., the e-mail message,
and any and all attachments transmitted with it are intended solely for the use of the addressee and
may contain legally privileged and confidential information. If the reader of this message is not the
intended recipient, or an employee or agent responsible for delivering this email message to the
intended recipient, you are hereby notified that any dissemination, distribution, copying, or other
use of the message or its attachments is strictly prohibited. If you have received this email message
and its attachments if any, in error, please notify the sender immediately by replying to the message
and please delete it from your computer. Thank you.

 5.17.22 EMAGES PSLF Forms.pdf
1.8MB

 5.18.22 Blank Public Service Loan Forgiveness Form.pdf
331.9kB

**Borrower Name**   Fred L Nance Jr          **EXHIBIT 39**          **Borrower SSN** ███████

## SECTION 3: EMPLOYER INFORMATION (TO BE COMPLETED BY THE BORROWER OR EMPLOYER)

**1.** Employer Name:

**2.** Federal Employer Identification Number (FEIN)

**3.** Employer Address:

**4.** Employer Website (if any):

**5.** Employment Begin Date:

**6.** Employment End Date:

**OR**

☐ Still Employed

**7.** Employment Status: ☒ Full-Time   ☐ Part-Time

**8.** Hours Per Week (Average)

Include vacation, leave time, or any leave taken under the Family Medical Leave Act of 1993.

**9.** Is your employer a **governmental** organization?

A governmental organization is a Federal, State, local, or Tribal government organization, agency, or entity, a public child or family service agency, a Tribal college or university, or the Peace Corps or AmeriCorps. Federal service includes military service.

☐ Yes - Skip to Section 4.

☐ No - Continue to Item 10.

**10.** Is your employer tax-exempt under Section **501(c)(3)** of the Internal Revenue Code (IRC)?

If your employer is tax-exempt under another subsection of 501(c) of the IRC, such as 501(c)(4) or 501(c)(6), check "No" to this question.

☐ Yes - Skip to Section 4.

☐ No - Continue to Item 11.

**11.** Is your employer a **not-for-profit** organization that is **not** tax-exempt under Section 501(c)(3) of the Internal Revenue Code?

☐ Yes - Continue to Item 12.

☐ No - Your employer does not qualify.

**12.** Is your employer a partisan political organization or a labor union?

☐ Yes - Your employer does not qualify.

☐ No - Continue to Item 13.

**13.** Which of the following services does your employer provide? Check all that apply and then continue to Section 4. If you check "None of the above", do not submit this form.

☐ Emergency management

☐ Military service (See Section 6)

☐ Public safety

☐ Law enforcement

☐ Public interest legal services (See Section 6)

☐ Early childhood education (See Section 6)

☐ Public service for individuals with disabilities

☐ Public service for the elderly

☐ Public health (See Section 6)

☐ Public education

☐ Public library services

☐ School library services

☐ Other school-based services

☐ None of the above - the employer does not qualify.

## SECTION 4: EMPLOYER CERTIFICATION (TO BE COMPLETED BY THE EMPLOYER)

By signing, **I certify (1)** that the information in Section 3 is true, complete, and correct to the best of my knowledge and belief, **(2)** that I am an authorized official (see Section 6) of the organization named in Section 3, and **(3)** that the borrower named in Section 1 is or was an employee of the organization named in Section 3.

**Note:** If any of the information is crossed out or altered in Section 3, you must initial those changes.

Official's Name _____   Official's Phone _____

Official's Title _____   Official's Email _____

**Authorized Official's Signature** _____   **Date** _____

**PUBLIC SERVICE LOAN FORGIVENESS (PSLF) & TEMPORARY EXPANDED PSLF (TEPSLF) CERTIFICATION & APPLICATION**

William D. Ford Federal Direct Loan (Direct Loan) Program

OMB No. 1845-0110
Form Approved
Exp. Date 08/31/2023
PSFAP - XBCR

PSLF

**WARNING:** Any person who knowingly makes a false statement or misrepresentation on this form or on any accompanying document is subject to penalties that may include fines, imprisonment, or both, under the U.S. Criminal Code and 20 U.S.C. 1097.

## SECTION 1: BORROWER INFORMATION

Please enter or correct the following information.

☐ **Check this box if any of your information has changed.**

**EXHIBIT 39**

| | |
|---|---|
| SSN | ▇▇▇▇▇ |
| Date of Birth | 09/01/1949 |
| Name | Fred Nance Jr |
| Address | 17239 EVANS AVENUE |
| City | SOUTH HOLLAND  State IL  Zip Code 60473 |
| Telephone - Primary | (708) 921-1395 |
| Telephone - Alternate | (708) 921-1395 |
| Email | frednance@clickservices.org |

For more information on PSLF, visit **StudentAid.gov/publicservice**. To apply online, visit **StudentAid.gov/PSLF**.

## SECTION 2: BORROWER REQUEST, UNDERSTANDINGS, CERTIFICATION, AND AUTHORIZATION

I request (1) that the U.S. Department of Education (the Department) determine whether I qualify for PSLF or TESPLF, and discharge any qualifying loans that I have, and (2) if none of my loans qualify for PSLF or TEPSLF when I submit this form, determine how many qualifying payments I have made towards PSLF and TEPSLF.

☐ I just want to find out how many qualifying payments I have made or if my employer is a qualified employer.

☒ I believe I qualify for forgiveness under PSLF or TEPSLF right now.

☐ If I indicated that I believe I qualify for forgiveness now, I want a forbearance while my application is being processed, but understand that periods of forbearance do not count towards forgiveness.

I understand that:

1. To qualify for forgiveness, I must have made 120 qualifying payments on my Direct Loans while employed full-time by a qualifying employer. Neither the 120 qualifying payments nor the employment have to be consecutive.

2. To qualify for forgiveness, I must be employed full-time by a qualifying employer when I apply for and get forgiveness.

3. By submitting this form, my student loans held by the Department may be transferred to FedLoan Servicing.

4. If the Department determines that I appear to be eligible for forgiveness, the Department may contact my employer before granting forgiveness to ensure that I continue to work for the employer.

5. If I am eligible for forgiveness, the amount forgiven will be the principal and interest that was due on my eligible Direct Loans when I made my final qualifying payment. Any amount that I pay on those loans after I have made my final qualifying payment will be treated as an overpayment. I must continue to make payments on any of my other loans.

6. If I am not eligible for forgiveness, I will be notified of the determination, why it was made, and how many qualifying payments I have made towards PSLF and TEPSLF.

I certify that all of the information I have provided on this form and in any accompanying document is true, complete, and correct to the best of my knowledge and belief and that if I cease to be employed by a qualifying employer after I submit this application, but before forgiveness is granted, I will notify the Department (see Section 7) immediately.

☐ Check this box if you cannot obtain certification from your employer because the organization is closed or because the organization has refused to certify your employment. The Department will follow up to assist you in getting documentation of your employment. **Complete Section 3, but do not complete Section 4:**

Borrower's Signature _____  Date _____

## SECTION 3: EMPLOYER INFORMATION (TO BE COMPLETED BY THE BORROWER OR EMPLOYER)

1. Employer Name

    EMAGES INC

2. Federal Employer Identification Number (FEIN)

    363895807

3. Employer Address:

    7601 S KOSTNER AVE STE 500
    CHICAGO, IL 60652-1100 US

4. Employer Website (if any):

5. Employment Begin Date:

    10/01/2010

6. Employment End Date:

    09/30/2012        OR ☐ Still Employed

7. Employment Status: ☒ Full-Time ☐ Part-Time

8. Hours Per Week (Average)  40

    Include vacation, leave time, or any leave taken under the Family Medical Leave Act of 1993.

9. Is your employer a **governmental** organization?

    A governmental organization is a Federal, State, local, or Tribal government organization, agency, or entity, a public child or family service agency, a Tribal college or university, or the Peace Corps or AmeriCorps. Federal service includes military service.

    ☐ Yes - Skip to Section 4.
    ☒ No - Continue to Item 10.

10. Is your employer tax-exempt under Section **501(c)(3)** of the Internal Revenue Code (IRC)?

    If your employer is tax-exempt under another subsection of 501(c) of the IRC, such as 501(c)(4) or 501(c)(6), check "No" to this question.

    ☒ Yes - Skip to Section 4.
    ☐ No - Continue to Item 11.

11. Is your employer a **not-for-profit** organization that is **not** tax-exempt under Section 501(c)(3) of the Internal Revenue Code?

    ☐ Yes - Continue to Item 12.
    ☐ No - Your employer does not qualify.

12. Is your employer a partisan political organization or a labor union?

    ☐ Yes - Your employer does not qualify.
    ☐ No - Continue to Item 13.

13. Which of the following services does your employer provide? Check all that apply and then continue to Section 4. If you you check "None of the above", do not submit this form.

    ☐ Emergency management
    ☐ Military service (See Section 6)
    ☐ Public safety
    ☐ Law enforcement
    ☐ Public interest legal services (See Section 6)
    ☐ Early childhood education (See Section 6)
    ☐ Public service for individuals with disabilities
    ☐ Public service for the elderly
    ☐ Public health (See Section 6)
    ☐ Public education
    ☐ Public library services
    ☐ School library services
    ☐ Other school-based services
    ☐ None of the above - the employer does not qualify.

## SECTION 4: EMPLOYER CERTIFICATION (TO BE COMPLETED BY THE EMPLOYER)

By signing, I **certify (1)** that the information in Section 3 is true, complete, and correct to the best of my knowledge and belief, **(2)** that I am an authorized official (see Section 6) of the organization named in Section 3, and **(3)** that the borrower named in Section 1 is or was an employee of the organization named in Section 3.

*Note:* If any of the information is crossed out or altered in Section 3, you must initial those changes.

Official's Name _____    Official's Phone _____

Official's Title _____    Official's Email _____

**Authorized Official's Signature** _____    Date _____

## SECTION 3: EMPLOYER INFORMATION (TO BE COMPLETED BY THE BORROWER OR EMPLOYER)

1. Employer Name

   EMAGES INC

2. Federal Employer Identification Number (FEIN)

   363695807

3. Employer Address:

   7601 S KOSTNER AVE STE 500
   CHICAGO, IL 60652-1100 US

4. Employer Website (if any):

5. Employment Begin Date:

   10/01/2018

6. Employment End Date:

   09/30/2020    OR ☐ Still Employed

7. Employment Status: ☒ Full-Time ☐ Part-Time

8. Hours Per Week (Average)  40

   Include vacation, leave time, or any leave taken under the Family Medical Leave Act of 1993.

9. Is your employer a **governmental** organization?

   A governmental organization is a Federal, State, local, or Tribal government organization, agency, or entity, a public child or family service agency, a Tribal college or university, or the Peace Corps or AmeriCorps. Federal service includes military service.

   ☐ Yes - Skip to Section 4.
   ☒ No - Continue to Item 10.

10. Is your employer tax-exempt under Section **501(c)(3)** of the Internal Revenue Code (IRC)?

    If your employer is tax-exempt under another subsection of 501(c) of the IRC, such as 501(c)(4) or 501(c)(6), check "No" to this question.

    ☒ Yes - Skip to Section 4.
    ☐ No - Continue to Item 11.

11. Is your employer a **not-for-profit** organization that is **not** tax-exempt under Section 501(c)(3) of the Internal Revenue Code?

    ☐ Yes - Continue to Item 12.
    ☐ No - Your employer does not qualify.

12. Is your employer a partisan political organization or a labor union?

    ☐ Yes - Your employer does not qualify.
    ☐ No - Continue to Item 13.

13. Which of the following services does your employer provide? Check all that apply and then continue to Section 4. If you check "None of the above", do not submit this form.

    ☐ Emergency management
    ☐ Military service (See Section 6)
    ☐ Public safety
    ☐ Law enforcement
    ☐ Public interest legal services (See Section 6)
    ☐ Early childhood education (See Section 6)
    ☐ Public service for individuals with disabilities
    ☐ Public service for the elderly
    ☐ Public health (See Section 6)
    ☐ Public education
    ☐ Public library services
    ☐ School library services
    ☐ Other school-based services
    ☐ None of the above - the employer does not qualify.

## SECTION 4: EMPLOYER CERTIFICATION (TO BE COMPLETED BY THE EMPLOYER)

By signing, I **certify (1)** that the information in Section 3 is true, complete, and correct to the best of my knowledge and belief, **(2)** that I am an authorized official (see Section 6) of the organization named in Section 3, and **(3)** that the borrower named in Section 1 is or was an employee of the organization named in Section 3.

*Note:* If any of the information is crossed out or altered in Section 3, you must initial those changes.

Official's Name _____     Official's Phone _____

Official's Title _____     Official's Email _____

Authorized Official's Signature _____     Date _____