UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FRED L. NANCE, Jr., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 22 C 3861 |
| v. | ) | |
| | ) | Judge Hunt |
| UNITED STATES, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT'S RULE 56.1(a)(3) STATEMENT OF FACTS
IN SUPPORT OF ITS MOTION TO DISMISS OR FOR SUMMARY JUDGMENT**

Defendant, United States, through by Morris Pasqual, Acting United States Attorney for the Northern District of Illinois, submits in accordance with Local Rule 56.1, the following statement of material facts in support of defendant's motion to dismiss or alternatively for summary judgment:

1. In 2018, Establishing Managing and Generating Effective Services Inc. ("EMAGES, Inc.") received a grant award from DOJ's Office of Justice Programs and the Bureau of Justice Assistance for a prison related program under the "Second Chance Act" ("SCA"). Exhibit A, EMAGES award information.

2. EMAGES was the sole applicant to the grant program and, accordingly, had primary responsibility for funding and managing the program. Hattie Wash, the President and CEO of EMAGES, was the authorized grantee official and the project director. Exhibit B, EMAGES Award.

3. As part of the SCA grant program, DOJ made 26 grant awards in fiscal year 2018 totaling more than $20.5 million, one of which was a $500,000 award to EMAGES. Exhibit C,

1

BJA FY 18 Second Chance Act Comprehensive Community-Based Adult Reentry Program award information.

4. The EMAGES award was scheduled to start on October 1, 2018, and conclude on September 30, 2021. Exhibit D, BJA Second Chance Act solicitation at 13.

5. Through the grant solicitation, DOJ notified the applicants of the eligibility requirement that only one entity may be the applicant. *Id*. at 2. The applicant must be the entity that would have primary responsibility for carrying out the award, including administering the funding and managing the entire program. *Id*.

6. In accordance with the eligibility requirement, DOJ only considered one applicant entity, EMAGES, for the award in question, not Nance or his company, and therefore the grant was awarded to EMAGES. Exhibit A, EMAGES award information; Exhibit D, BJA Second Chance Act solicitation at 2.

7. Under the relevant requirements that applied to EMAGES' grant award, recipients are permitted to terminate awards by providing written notice to the awarding agency. *See* 2 C.F.R. §§ 200.339-343.

8. In September 2020, Hattie Wash, the founder and CEO of EMAGES, informed DOJ that she was terminating the EMAGES award because of, among other things, the COVID-19 pandemic and COVID-related restrictions. Exhibit E, EMAGES Termination letter.

9. In the written notice provided to DOJ, Wash stated that COVID-19 and related restrictions created financial instability for EMAGES and "prevented EMAGES from fulfilling the [p]erformance measures of the Second Chance grant" and that although telehealth services permitted EMAGES to continue providing services to some individuals, the "[s]helter in [p]lace mandate for the State of Illinois has prevented us from collecting data inside Cook County Jail and

2

the Illinois Department of Correction." Exhibit E, EMAGES Termination Letter.

10. In April 2020, Nance pursued a "whistleblower complaint" with the Bureau of Justice Assistance, claiming "possible fraud or misappropriation of funds" concerning the EMAGES award, alleging that EMAGES misappropriated the grant award. Exhibit F, April 17, 2020, Letter.

11. Nance pursued his "whistleblower" complaints through the U.S. Office of Special Counsel, which denied his complaints, noting that it lacked jurisdiction over individuals who are not federal employees or applicants for federal employment. Exhibit G, OSC letter.

12. Nance then pursued his "whistleblower complaint" with the DOJ Office of the Inspector General, where he repeated his allegation that EMAGES drew down grant funds for an ex-employee and claimed that Wash retaliated against him for reporting the questioned drawdowns by removing him as the point of contact for the grant award and that Wash reduced Nance's salary under the grant. Exhibit H, August 28, 2020, Letter.

13. Nance alleges that EMAGES improperly drew down $880 in grant award funds for an ex-employee. Am. Compl. at 5. This small amount (which was addressed and investigated by OJP's Office of the Chief Financial Officer) represents approximately 0.18% of the entire $500,000 grant award.

14. On October 13, 2020, the OIG rejected Nance's complaint stating "[w]e do not believe that you have alleged that you suffered a reprisal in violation of [41 U.S.C.] § 4712(a)." Exhibit I, OIG letter. OIG further found that Nance's complaint failed to allege that he made a protected disclosure (*i.e.*, a communication that, among other things, reasonably evidenced gross mismanagement of a federal contract or grant, a gross waste of federal funds, an abuse of authority relating to a federal contract or grant, a substantial and specific danger to public health or safety,

3

or a violation of law, rule, or regulation related to a federal contract (including the competition for or negotiation of a contract) or grant) and that "significant doubt surrounds whether your complaint alleges that you suffered a personnel action, as contemplated under § 4712(a)." *Id.*

15. In September 2020, OJP's Office of the Chief Financial Officer (OCFO) opened a review of EMAGES' financial policies and procedures, in response to Nance's reports. OCFO conducted the review in February 2021 (Ex. K, OCFO Enhanced Desk Review of EMAGES) and transmitted a follow-up letter to EMAGES on March 26, 2021 containing seven recommendations (Nance Ex. at 1-11, Dkt. No. 20-2). EMAGES cooperated during the process, addressed OCFO's recommendations, and provided OCFO with updated policies and procedures for managing federal grants, updated travel and conflict of interest policies, account charts, and other items. On July 19, 2023, OCFO issued a letter informing EMAGES that it considered its review closed. Ex. L, OCFO Closure Letter. The audit revealed $1,250.63 in questioned costs, which were recovered. Ex. L at 4.

16. Nance is not an employee of the Department of Justice. *See* 20-cv- 06316, Mem. Op. & Order at 13, Dkt. No. 64 ("plaintiff admitted in open court that he was not an employee of the Department of Justice"); *see also* Pl.'s Resp. at 3, Dkt. No. 11 ("Plaintiff admits he was not a government employee[.]")).

17. Nance filed an FTCA claim with the DOJ on June 9, 2021. Ex. J, FTCA claim.

18. Nance's FTCA claim was administratively denied by the DOJ. Am. Compl. at 20.

19. In May 2021, after encountering technical glitches, Nance applied for a grant under the FY 2021 Second Chance Act Community-Based Reentry Program. Am. Compl. at 11. Nance's grant application was not successful. Ex. M, List of FY 21 Second Chance Grantees.

20. While Nance's grant application was pending, he sought a position as a peer reviewer so that he could review and grade other applications to the same FY 2021 Second Chance grant program to which he had applied. Nance states that he was contacted about being a peer review on April 29, 2021 (before he submitted his grant application, Am. Compl. at 10), but in June 2021, after BJA (the OJP program office making the FY 21 Second Chance Act grants) understood that Nance had a conflict of interest as a grant applicant, he was not permitted to serve as a peer reviewer. Am. Compl. at 13.

Respectfully submitted,

MORRIS PASQUAL
Acting United States Attorney

By: s/ Kurt N. Lindland
    KURT N. LINDLAND
    Assistant United States Attorney
    219 South Dearborn Street
    Chicago, Illinois 60604
    (312) 353-4163
    kurt.lindland@usdoj.gov