UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FRED L NANCE JR | ) | |
| | ) | CASE # 22 CV 3861 |
| PLAINTIFF | ) | |
| | ) | HONORABLE JUDGE |
| VS | ) | LASHONDA HUNT |
| | ) | HONORABLE MAGISTRATE JUDGE: |
| UNITED STATES, et al. | ) | BETH W. JANTZ |
| | ) | |
| DEFENDANTS. | ) | Courtroom: 1903 |

**PLAINTIFF FRCP 56 and LR 56.1(b)(1)(2) IN SUPPORT OF PLAINTIFF RESPONSE TO DEFENDANT'S MOTION TO DISMISS OR ALTERNATIVELY FOR SUMMARY JUDGMENT**

Defendant, United States, through by Morris Pasqual, Acting United States Attorney for the Northern District of Illinois, presented the following statement of material facts in support of defendant's motion to dismiss or alternatively for summary judgment:

1. In 2018, Establishing Managing and Generating Effective Services Inc. ("EMAGES, Inc.") received a grant award from DOJ's Office of Justice Programs and the Bureau of Justice Assistance for a prison related program under the "Second Chance Act" ("SCA"). Exhibit A, EMAGES award information.

**Dispute** – DOJ award was not a prison related program.

2. EMAGES was the sole applicant to the grant program and, accordingly, had primary responsibility for funding and managing the program. Hattie Wash, the President and CEO of EMAGES, was the authorized grantee official and the project director. Exhibit B, EMAGES Award.

**Dispute** – EMAGES was not the sole applicant to the grant program.

3. As part of the SCA grant program, DOJ made 26 grant awards in fiscal year 2018 totaling more than $20.5 million, one of which was a $500,000 award to EMAGES. Exhibit C, BJA FY 18 Second Chance Act Comprehensive Community-Based Adult Reentry Program award information.

**Dispute** – Plaintiff does not know DOJ made 26 grant awards.

4. The EMAGES award was scheduled to start on October 1, 2018, and conclude on September 30, 2021. Exhibit D, BJA Second Chance Act solicitation at 13.

**Admit**

5. Through the grant solicitation, DOJ notified the applicants of the eligibility requirement that only one entity may be the applicant. *Id*. at 2. The applicant must be the entity that would have primary responsibility for carrying out the award, including administering the funding and managing the entire program. *Id*.

**Dispute** – The grantee would not manage the entire program. Plaintiff was the Program Manager.

6. In accordance with the eligibility requirement, DOJ only considered one applicant entity, EMAGES, for the award in question, not Nance or his company, and therefore the grant was awarded to EMAGES. Exhibit A, EMAGES award information; Exhibit D, BJA Second Chance Act solicitation at 2.

**Dispute** – Plaintiff is a subawardee

7. Under the relevant requirements that applied to EMAGES' grant award, recipients are permitted to terminate awards by providing written notice to the awarding agency. See 2 C.F.R. §§ 200.339-343.

**Dispute** – Defendant Hattie Wash lied to DOJ to why she terminated the award.

8. In September 2020, Hattie Wash, the founder and CEO of EMAGES, informed DOJ that she was terminating the EMAGES award because of, among other things, the COVID- 19 pandemic and COVID-related restrictions. Exhibit E, EMAGES Termination letter.

**Dispute** – Defendant Hattie Wash lied to DOJ as to why she was terminating the award. The Illinois COVID-19 pandemic and COVID-related restrictions had nothing to do with Defendant Wash terminating the grant.

9. In the written notice provided to DOJ, Wash stated that COVID-19 and related restrictions created financial instability for EMAGES and "prevented EMAGES from fulfilling the performance measures of the Second Chance grant" and that although telehealth services permitted EMAGES to continue providing services to some individua ls, the "shelter in place mandate for the State of Illinois has prevented us from collecting data inside Cook County Jail and the Illinois Department of Correction." Exhibit E, EMAGES Termination Letter.

**Dispute** – Defendant Wash's written notice did not prevent the Second Chance Act grant from going forward. Plaintiff explains this fact in his Amended Complaint.

10. In April 2020, Nance pursued a "whistleblower complaint" with the Bureau of Justice Assistance, claiming "possible fraud or misappropriation of funds" concerning the EMAGES award, alleging that EMAGES misappropriated the grant award. Exhibit F, April 17, 2020, Letter.

**Admit**

11. Nance pursued his "whistleblower" complaints through the U.S. Office of Special Counsel, which denied his complaints, noting that it lacked jurisdiction over individuals who are not federal employees or applicants for federal employment. Exhibit G, OSC letter.

**Admit**

12. Nance then pursued his "whistleblower complaint" with the DOJ Office of the Inspector General, where he repeated his allegation that EMAGES drew down grant funds for an ex-employee and claimed that Wash retaliated against him for reporting the questioned drawdowns by removing him as the point of contact for the grant award and that Wash reduced Nance's salary under the grant. Exhibit H, August 28, 2020, Letter.

**Dispute** – Morris Pasqual, Acting United States Attorney for the Northern District of Illinois, falsely makes this statement. Plaintiff filed his "Whistleblower Complaint" reporting Defendant Wash terminated the grant due to plaintiff reporting fraud and misappropriation of funds. Plaintiff never claimed a salary reduction for Defendant Wash false claims regarding terminating the grant award.

13. Nance alleges that EMAGES improperly drew down $880 in grant award funds for an ex-employee. Am. Compl. at 5. This small amount (which was addressed and investigated by OJP's Office of the Chief Financial Officer) represents approximately 0.18% of the entire $500,000 grant award.

**Dispute** – Plaintiff reported to DOJ Defendant Wash committed fraud and misappropriation of funds pursuant to DOJ policies, which led to Defendant Wash terminating the grant award. Plaintiff provided documented exhibits and an DOJ audit in his Amended Complaint.

14. On October 13, 2020, the OIG rejected Nance's complaint stating "we do not believe that you have alleged that you suffered a reprisal in violation of [41 U.S.C.] § 4712(a)." Exhibit I, OIG letter. OIG further found that Nance's complaint failed to allege that he made a protected disclosure (i.e., a communication that, among other things, reasonably evidenced gross mismanagement of a federal contract or grant, a gross waste of federal funds, an abuse of authority relating to a federal contract or grant, a substantial and specific danger to public health

or safety, or a violation of law, rule, or regulation related to a federal contract (including the competition for or negotiation of a contract) or grant) and that "significant doubt surrounds whether your complaint alleges that you suffered a personnel action, as contemplated under § 4712(a)." *Id*.

**Dispute** – Plaintiff provides proof DOJ violated § 4712 in his Amended Complaint, Exhibits, and case law.

15. In September 2020, OJP's Office of the Chief Financial Officer (OCFO) opened a review of EMAGES' financial policies and procedures, in response to Nance's reports. OCFO conducted the review in February 2021 (Ex. K, OCFO Enhanced Desk Review of EMAGES) and transmitted a follow-up letter to EMAGES on March 26, 2021 containing seven recommendations (Nance Ex. at 1-11, Dkt. No. 20-2). EMAGES cooperated during the process, addressed OCFO's recommendations, and provided OCFO with updated policies and procedures for managing federal grants, updated travel and conflict of interest policies, account charts, and other items. On July 19, 2023, OCFO issued a letter informing EMAGES that it considered its review closed. Ex. L, OCFO Closure Letter. The audit revealed $1,250.63 in questioned costs, which were recovered. Ex. L at 4.

**Dispute** – Morris Pasqual, Acting United States Attorney for the Northern District of Illinois, admits a legitimate disagreement about the important facts of the case. DOJ reported in its audit report the fraud and misappropriation of funds by Defendant Dr. Wash suggesting recommendations to replace the misappropriated funds.

16. Nance is not an employee of the Department of Justice. See 20-cv- 06316, Mem. Op. & Order at 13, Dkt. No. 64 ("plaintiff admitted in open court that he was not an employee of the Department of Justice"); see also Pl.'s Resp. at 3, Dkt. No. 11 ("Plaintiff admits he was not a

government employee[.]")).

**Admit**

17. Nance filed an FTCA claim with the DOJ on June 9, 2021. Ex. J, FTCA claim.

**Dispute** – Plaintiff filed his FTCA claims on or about October 23, 2020.

18. Nance's FTCA claim was administratively denied by the DOJ. Am. Compl. at 20.

**Dispute** – DOJ falsely denied plaintiff's FTCA case.

19. In May 2021, after encountering technical glitches, Nance applied for a grant under the FY 2021 Second Chance Act Community-Based Reentry Program. Am. Compl. at 11. Nance's grant application was not successful. Ex. M, List of FY 21 Second Chance Grantees.

**Dispute** – Plaintiff was denied the FY 2021 Second Chance Act grant because of the retaliatory nature of DOJ employee Andre Bethea.

20. While Nance's grant application was pending, he sought a position as a peer reviewer so that he could review and grade other applications to the same FY 2021 Second Chance grant program to which he had applied. Nance states that he was contacted about being a peer review on April 29, 2021 (before he submitted his grant application, Am. Compl. at 10), but in June 2021, after BJA (the OJP program office making the FY 21 Second Chance Act grants) understood that Nance had a conflict of interest as a grant applicant, he was not permitted to serve as a peer reviewer. Am. Compl. at 13.

**Dispute** – Plaintiff was denied the peer review because of the retaliatory nature of DOJ Andre Bethea et al.

/s/Fred L. Nance Jr., Pro se plaintiff
17239 Evans Avenue
South Holland, Illinois 60473-3436
708-921-1395
frednance@clickservices.org