UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FRED L NANCE JR | ) | |
| | ) | CASE # 22 CV 3861 |
| PLAINTIFF | ) | |
| | ) | HONORABLE JUDGE |
| VS | ) | LASHONDA HUNT |
| | ) | |
| UNITED STATES, et al. | ) | MAGISTRATE JUDGE |
| | ) | BETH W. JANTZ |
| DEFENDANTS. | ) | Courtroom: 1903 |

**PLAINTIFF MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS MOTION
TO DISMISS OR ALTERNATIVELY SUMMARY JUDGMENT**

NOW COMES, Pro se Plaintiff pursuant to LR 56(1)(b)(1) responding to the United

States (hereinafter "defendants") Motion to Dismiss or Alternatively Summary Judgment

pursuant to FRCP 12(b)(1) and (6) or Rule 56.

As plaintiff prepares his memorandum of law argument, he thinks about Donald Trump

and his allegations about a broken democracy. Plaintiff is not a supporter of Trump but

understands his thought on a broken democracy, notwithstanding his criminal reality. After

reading the defendant's memorandum of law, the realities of referencing legislation from a

broken legal system are apparent. The defendant's memorandum of law is why democracy is

failing.

The idiot (deserving of this label) who authored the defendant's memorandum of law

here attempts to disgrace and degrade the plaintiff with language unbecoming a professional but

is not unusual in the practice of law and the judiciary that allows it. This idiot does not define me

and should not defame me with his nonsensical language. Plaintiff has a Ph.D. in Social Policy

Analysis and Planning. Plaintiff writes policy affecting the practice of law and the judiciary.

How can a pro se litigant expect to be treated professionally? The idiot(s) who authored

the documents for the defendants believe it builds their character with the court when they use

defaming and destructive language against their opposition. Respectful language, legal analysis, and case law is sufficient for litigation to prove or disapprove a case. Personal attacks on a pro se litigant only hinders the respect one would have for the legal processes and the court. This is why plaintiff puts all his litigation on social media (www.x.com/clickforjustice), and names the individuals who have no integrity or ethics. Facts are a good measure in litigation.

There are no ethics or professionalism holding attorneys for their language or in the courtroom even though there are professional ethics to be held by Attorneys and Judges. Where are the rules enforced for dialogue and language used by Attorneys in litigation when their peers are to judge them? SCOTUS does not give an example of ethics and professionalism. SCOTUS issued a package of ethics recently, which has no enforcing action attached to them.

Plaintiff provides the backstory to create a present storyline for the graciousness of Judge Hunt in allowing plaintiff to present an amended complaint on the nefariousness of the actors involved and the linkage agreement between EMAGES, Inc. and the United States defendants. EMAGES, Inc. and the DOJ actors performed nefarious acts with impunity to terminate the grant. EMAGES, Inc., the perpetrators of the lie to terminate the grant, wants to settle the case now after taking plaintiff's deposition. Of course, they will not agree with the allegations plaintiff has set forth, which is always the "normal" processes for settlement; but after defendant EMAGES took plaintiff's deposition the sun has come out from the clouds.

**The Real Facts**

The name of this Second Chance Act (SCA) Grant is the MA'AT program. The case against the United States is based on the acts of the Department of Justice (DOJ) employees allowing EMAGES, Inc. and Dr. Hattie Wash to return the grant on a lie without investigating the real reason to why EMAGES, Inc. and Dr. Wash gave the grant back. EMAGES, Inc.

committed fraud via the misappropriation of funds and the commingling of DOJ funds, and with the termination grant letter submitted to DOJ employees, which the DOJ did not investigate the matter **before** terminating the grant. DOJ auditors uncovered the fraud of commingling the SCA grant funds and Illinois State funds after plaintiff filed his original complaint against DOJ and EMAGES, Inc. on October 23, 2020. Plaintiff provides the FACTS to support his allegations and FTCA claims against the United States et al.

On March 11, 2019, plaintiff authored an email to DOJ Division Chief Brenda Worthington regarding, in part, plaintiff being a subawardee. (Case No. 20cv06316, Dkt. #49-20, Ex. 16; Dkt. #49-35, Ex. 31) On March 7, 2019, Ms. Worthingon talked to Dr. Hattie Wash. *Id* EMAGES, Inc. had a subawardee policy, which could have been used to transfer the grant to the plaintiff. (Case No. 20cv06316, Dkt. #49-28, Ex. 24) The subawardee could have taken over the grant legislatively, which EMAGES, Inc.'s Dr. Hattie Wash (defendant) stated in an email to the plaintiff. The subawardee can take over a Second Chance Act grant. Dr. Wash stated in an email to plaintiff that plaintiff could take over the grant. Plaintiff provided the email to the DOJ employees and this court. The DOJ employees and the Alonso court ignored the email and statement by Dr. Wash. Plaintiff, Dr. Fred L Nance was the Program Director. (Case No. 20cv06316, Dkt. #49-44, Ex.41, p.4) On April 9, 2020, EMAGES, Inc. and Dr. Wash reported services are good and ongoing during Covid-19. (Dkt. #11-9) On April 18, 2020, plaintiff sent his first set of emails to DOJ grant manager employee, Tracey Willis, and Andre Bethea reporting fraud and misappropriation of funds. (Case No. 20cv06316, Dkt. #52-9, Ex. 48, p.4) On April 24, 2020, EMAGES, Inc. held a management meeting. Dr. Wash provided the agenda and spoke on the following topics: 1. Shelter in Place extension A. Discussion plans for the MA'AT program continuation or modifications. B. Does and Don't toward personnel during the

stay at home order. 2. Discussion on Procedures for accepting resignations and terminating personnel. 3. Telephonic methods that can be used. 4. EMAGES staff will not be paid for the month of April due to not receiving funds from the **state**. We are hopeful that funds will come in the early during the May, 2020. 5. MA'AT funding to date **has not stopped** we drew down monies for all positions up to April. Draw down for the month of May, 2020 will be done on next Wednesday I do not foresee any problems. 6. Dr. Nance I need you to contact Dr. Witherspoon and discuss with her the best way to proceed with the evaluation portion of the MA'AT program. (Case No. 20cv06316, Dkt. #52-9, Ex. 49)

On July 8, 2020, at 7:07 pm, Dr. Wash stated in an email to plaintiff when he told her he would contact the DOJ grant specialist about the fraud "Okay call you can have the program…make it effective as soon as possible." (Ex. 1, p.1) On July 14, 2020, plaintiff addressed EMAGES Inc. and Dr. Wash on drawing down too much money for the SCA program. (Dkt. #15) On August 25, 2020, Dr. Witherspoon, the evaluator for the SCA program briefly discussed how the instruments would be used for evaluation of the program. (Dkt. #11-17) On September 22, 2020, plaintiff sent an email to EMAGES staff reporting the Cook County jail was reopening for our program. (Dkt. 11-18) On September 24, 2020, DOJ employee Dever sent an email to plaintiff informing him the grant is terminated. (Case No. 20cv06316, Dkt. #49-34, Ex. 30) On October 21, 2020, Dr. Wash sent an email to her staff lying about why she was giving the SCA grant back combining the monies she receives from the State of Illinois with SCA grant monies, which the SCA grant money was still allocated and had nothing to do with her giving the SCA grant back. (Dkt. #11-21) EMAGES, Inc. was cited by the SCA audit for commingling funds. On October 13, 2020, plaintiff authored an email to Congressman Davis regarding the fraud regarding the misappropriation of funds. (Dkt. #11-24) On November 28,

2020, plaintiff authored an email to DOJ stating EMAGES was holding SCA groups. (Case No. 20cv06316, Dkt. #49-9, p.5) On December 2, 2020, plaintiff offered a settlement to EMAGES, Inc. (Case No. 20cv06316, Dkt. #22-4, Ex.3; #22-5, Ex.4)

On May 25, 2021, DOJ employee Andre Bethea denied plaintiff appeal regarding the SCA grant plaintiff applied. (Dkt. #11-12) On June 8, 2021, Judge Alonso dismissed DOJ from the initial litigation. (Dkt. #11-13) On April 28, 2022, plaintiff was given permission from the United States to file suit. On May 17, 2022, plaintiff sent an email to Dr. Wash informing her plaintiff was applying for the Student Loan Forgiveness program. (Dkt. #11-31) Dr. Wash refused to complete the documents sent to her and plaintiff could not enroll in the Student Loan Forgiveness program.

**Argument**

On July 29, 2022, case #22cv3861 was assigned to the Honorable Robert W. Gettleman. After some internal review, case #22cv3861 was reassigned to Judge Alonso. Wherefore, plaintiff states and asserts all motions and exhibits filed in case 20cv6316 filed by plaintiff are relative to case #22cv3861 as if fully stated herein. Subsequently, this case is now assigned to Judge LaShonda Hunt. Plaintiff has alleged the elements necessary, at this stage of the litigation, for the cause of action and the facts to satisfy the elements for a FTCA complaint as a response to defendants' motion to dismiss or alternatively summary judgment. After Judge Alonso dismissed DOJ et al from case #20cv06316, on July 26, 2022, plaintiff filed his "Plaintiff Whistleblower Complaint at Law" case #22cv3861 against defendants United States et al. On October 25, 2023, defendant United States filed their Motion to Dismiss or Alternatively Summary Judgment.

**United States Violating FTCA**

**Plaintiff Response to Motion to Dismiss or Alternatively Summary Judgment**

Defendants are not entitled to a motion to dismiss. The United States seeks dismissal under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction or alternatively, under Rule 12(b)(6) for failure to state a claim. The 7th Circuit precedent requires dismissal on the merits under Rule 12(b)(6), not under Rule 12(b)(1). See *Smoke Shop, LLC v. United States*, 761 F.3d 779, 782 n.1 (7th Cir. 2014) Plaintiff provides sufficient factual matter accepted as true to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court takes all of the plaintiff's allegations as true and draws all reasonable inferences in plaintiff's favor. *Reger Dev. LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010). Defendants are not entitled to summary judgment pursuant to Rule 56 because plaintiff and the defendants disagree on important facts and there needs to be a trial to decide who is right about the facts.

A motion to dismiss under section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2000)) challenges only the legal sufficiency of the complaint. *Jarvis v. South Oak Dodge, Inc*., 201 Ill. 2d 81, 85 (2002). The critical inquiry is whether the allegations of the complaint, when construed in the light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief may be granted. In making this determination, all well-pleaded facts in the complaint must be taken as true. *Jarvis*, 201 Ill. 2d at 86. We review de novo an order granting a section 2-615 motion to dismiss. *Raintree Homes, Inc. v. Village of Long Grove*, 335 Ill. App. 3d 317, 319 (2002).

The purpose of a motion to dismiss under Rule 12(b)(6) is to address the legal sufficiency of plaintiff's claim for relief, not the merits of the case or whether the plaintiff will ultimately

prevail. *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In reviewing a motion to dismiss under Rule 12(b)(6), the court must construe the complaint in the light most favorable to the plaintiff, accept as true all well-pleaded facts, and draw all possible inferences in the plaintiff's favor. See, e.g., *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (quoting *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008)).

**Plaintiff Claims for Relief**

Defendants state "Nance's FTCA claims should be dismissed because there is no analogous state tort liability as required under the Act. Plaintiff refutes this analysis.

**Claim 1: Intentional Infliction of Emotional Distress**

The Illinois Supreme Court first recognized negligent infliction of emotional distress as a cause of action in *Braun v. Craven.* That changed in 1983 after the Illinois Supreme Court's decision in *Rickey v. Chicago Transit Authority*. Issues arose and have been recently clarified by the Illinois Supreme Court in *Clark v. Children's Memorial Hospital*, *Schweihs v. Chase Home Finance, LLC*, and *Cochran v. Securitas Security Services USA, Inc.* In *Clark*, The Illinois Supreme Court affirmed the appellate court and held that the plaintiffs had stated a claim for emotional distress damages. Under the Illinois Supreme Court's recent jurisprudence, there are three instances when a plaintiff can recover emotional distress damages as the result of the negligence of another. First, a plaintiff may assert a cause of action for negligent infliction of emotional distress if he or she is a direct victim of a negligent act or omission and suffers a contemporaneous physical injury or impact; Second, a plaintiff may assert a cause of action for negligent infliction of emotional distress even if he or she is not a direct victim; and Third, a

plaintiff may recover damages for emotional distress if such damages are an element of damages of another tort.

**Claim 2: Conspiracy**

In order to prevail on a claim for civil conspiracy under Illinois law, a plaintiff must show an agreement between two or more people for the purpose of accomplishing either an unlawful purpose or a lawful purpose by unlawful means, and at least one tortious act by one of the co-conspirators in furtherance of the agreement that caused an injury to the plaintiff. *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 509 (7th Cir. 2007). When plaintiff reports EMAGES, Inc. and defendants were working in concert with each other, plaintiff was providing the elements an agreement by two or more persons to commit a crime, fraud, or other wrongful act. In addition, EMAGES, Inc. filed a false document and DOJ employees did not investigate.

**Claim 3: Abuse of Process**

The two elements which are necessary to prove a claim for abuse of process are: (1) the existence of an ulterior purpose or motive, and (2) some act in the use of the legal process not proper in the regular prosecution of such proceedings. *Bonney*, 201 Ill. at 51; *Landau v. Schneider*, 154 Ill. App.3d 875, 878 (1987). Prosser and Keaton on Torts lists lis pendens as a "process" which lends itself to a claim for abuse of process. W. Keeton, Prosser Keeton on Torts § 121 (5th ed. 1984 Supp. 1988).

**Claim 4: Defamation**

Under Illinois law, the elements of a defamation claim are the defendant made a false statement about the plaintiff; there was an unprivileged publication to a third party; fault by the defendant amounting to at least negligence; and the publication damaged the plaintiff. Illinois courts apply a unique "reasonable grounds" standard of negligence in defamation cases brought by private

figures. This standard requires that the defendant either knew the publication was false or believed the publication was true but "lacked reasonable grounds for that belief." *Troman v. Wood*, 62 Ill.2d 1984, 299 (Ill.1975). Thus, the Illinois negligence test resembles a slightly more lenient "actual malice" test.

## Claim 5: Misrepresentation and Deceit

The elements of common-law fraud are: (1) a false statement of a material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement. *Connick v. Suzuki Motor Co*., 174 Ill. 2d 482, 496 (1996). The elements of a claim under the Consumer Fraud Act are: (1) a deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deception; (3) the occurrence of the deception in the course of conduct involving trade and commerce; and (4) actual damage to the plaintiff (5) proximately caused by the deception. *Oliveira v. Amoco Oil Co*., 201 Ill. 2d 134, 149 (2002). A plaintiff alleging a violation of the Consumer Fraud Act does not have to show actual reliance on the deceptive act or that the defendant committed the deceptive act in bad faith. *Randels v. Best Real Estate, Inc*., 243 Ill. App. 3d 801, 805 (1993).

## Claim 6: Violation of the Whistleblower Act

Under the Illinois Whistleblower Act an employer may not retaliate against an employee for engaging in any of the following protected activities: Disclosing information in court, an administrative hearing, or before a legislative commission or committee, or in any proceeding, where the employee has a reasonable cause to believe that the information discloses a violation of an Illinois or federal law, rule, or regulation; or Disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information

discloses a violation of an Illinois or federal law, rule, or regulation; or Refusing to participate in an activity that would result in a violation of a State or federal law, rule, or regulation.

"Employer" means: an individual, sole proprietorship, partnership, firm, association, and any other entitiy that has one or more employees in this State, including a political subdivision of the State; a unit of local government; a school district, combination of school districts, or governing body of a joint agreement of any type formed by two or more school districts; a community college district, State college or university, or any State agency whose major function is providing educational services; any authority including a department, division, bureau, board, commission, or other agency of these entities; and any person acting within the scope of his or her authority express or implied on behalf of those entities in dealing with its employees. Illinois Whistleblower Act, (IWA), 740 ILCS 174/5.

"Employee" means any individual who is employed on a full-time, part-time, or contractual basis by an employer. "Employee" also includes, but is not limited to, a licensed physician who practices his or her profession, in whole or in part, at a hospital, nursing home, clinic, or any medical facility that is a health care facility funded, in whole or in part, by the State. Illinois Whistleblower Act, (IWA), 740 ILCS 174/5.

**Claim 7: Retaliation Violating Title VII and First Amendment**

Retaliatory discharge is a narrow exception to the employment at-will doctrine. To establish a claim for retaliatory discharge, an employee must prove that: (1) he/she was terminated, (2) the termination was based upon the employee having engaged in protected activity, and (3) the termination violates a clear mandate of public policy. A clearly mandated public policy may be found in state and federal constitutions, statutes, and common law. It has been said that to constitute a clearly mandated public policy, the "matter must strike at the heart

of a citizen's social rights, duties, and responsibilities…." *See Turner v. Memorial Medical Center,* 233 Ill.2d 494, 911 N.E.2d 369 (2009) (quoting *Palmateer v. International Harvester Co.,* 85 Ill. 2d 124, 421 N.E.2d 876 (1981)). Generally speaking, Illinois courts have determined the existence of a clearly mandated public policy where (1) the discharge stems from asserting a worker's compensation claim or (2) the discharge is for "whistleblowing," i.e. reporting of illegal or improper conduct. *See Sutherland v. Norfolk Southern Railway Co.,* 356 Ill.App.3d 620, 826 N.E.2d 1021 (2005) (citing *Geary v. Telular Corp.,* 341 Ill.App.3d 694, 793 N.E.2d 128 (2003)).

The Illinois Supreme Court in *State of Illinois vs. Bethany Austin* (2019) The issue of whether a statute is constitutional presents a question of law, which we review de novo. *People v. Minnis*, 2016 IL 119563, ¶ 21. All statutes are presumed to be constitutional, and the party challenging a statute's constitutionality bears the burden of clearly establishing its invalidity. *Id*. In addition, a court must construe a statute so as to uphold its constitutionality, if reasonably possible. *Id* When presented with an issue of statutory construction, this court's primary objective is to ascertain and give effect to the intent of the legislature. *Oswald v. Hamer*, 2018 IL 122203, ¶ 10; *Minnis*, 2016 IL 119563, ¶ 25. The most reliable indicator of legislative intent is the language of the statute, given its plain and ordinary meaning. *Oswald*, 2018 IL 122203, ¶ 10; *Minnis*, 2016 IL 119563, ¶ 25. A court will not read language in isolation and must view the statute as a whole, construing words and phrases in light of other relevant statutory provisions. *Carmichael v. Laborers' & Retirement Board Employees' Annuity & Benefit Fund*, 2018 IL 122793, ¶ 35; *Oswald*, 2018 IL 122203, ¶ 10. Each word, clause, and sentence of a statute must be given a reasonable meaning, if possible, and should not be rendered superfluous. *Oswald*, 2018 IL 122203, ¶ 10*; MurphyHylton v. Lieberman Management Services, Inc*., 2016 IL 120394, ¶ 25.

The first amendment, which applies to the states through the fourteenth amendment,

provides that government "shall make no law abridging freedom of speech." U.S. Const.,

amends. I, XIV; *De Jonge v. Oregon*, 299 U.S. 353, 364 (1937). "The First Amendment, subject

only to narrow and well-understood exceptions, does not countenance governmental control over

the content of messages expressed by private individuals." *Turner Broadcasting System, Inc. v.*

*Federal Communications Comm'n*, 512 U.S. 622, 641 (1994); see also *Stevens*, 559 U.S. at 468

(stating that "the First Amendment means that government has no power to restrict expression

because of its message, its ideas, its subject matter, or its content"); *R.A.V. v. City of St. Paul*,

505 U.S. 377, 382 (1992) (stating that the first amendment "generally prevents government from

proscribing speech because of disapproval of the ideas expressed"). The United States Supreme

Court has held that the dissemination of information is speech within the meaning of the first

amendment. *Sorrell v. IMS Health, Inc*., 564 U.S. 552, 570 (2011); see *Bartnicki v. Vopper*, 532

U.S. 514, 527 (2001).

**FTCA**

Prerequisites for a successful Federal Tort Claims Act (FTCA) are informed both by the

statutory text and judicial precedent. FTCA plaintiffs initiate their claim by filing an

administrative claim with the agency responsible for the alleged tortious conduct within two

years of the act in question. 28 U.S.C. §§ 2401(b), 2675(a) (2012) The claim must be fully

examined and the administrative process fully exhausted before a suit may commence. *Id*.;

*McNeil v. U.S*., 508 U.S. 106, 111 (1993) Claims must state a specific amount of monetary

damages, (28 U.S.C. § 2675(b) (2012)), See, e.g., *White-Squire v. U.S. Postal Service*, 592 F.3d

453, 458 (3d Cir. 2010) (holding claimant's duty to present a claim for a sum certain includes the

obligation to include ongoing medical expenses in such claim), including an estimation of any contemplated future damages yet to accrue. 28 U.S.C. § 1346(b)(1) (2012)

Substantive liability is limited to injurious acts resulting in personal injury, death, or property damage caused by federal employees' negligent or wrongful acts or omissions. Broadly speaking, damages cannot include pre- judgment interest, punitive damages, or recurring payments to claimants, 28 U.S.C. § 2674 (2012) though there is significant nuance to the definition and mechanics of punitive damages and recurring payments. See Gregory C. Sisk, Litigation with the Federal Government §§ 3.7(c) Exclusion of Punitive Damages, 3.7(d) Unavailability of Continuing Obligations or Periodic Payments (2016) In all valid FTCA claims, the United States is mandatorily substituted as the defendant, as opposed to the tortious employee or agency themselves. 28 U.S.C. § 2679(d)(3) (2012).

Most important are the "law of the state" and "private person" requirements. In drafting the FTCA, Congress sought to avoid narrowly defining what torts were redressable under the act, seeking to completely dissolve their administrative burden. See Supra Section II.A Resultantly, the FTCA claims are governed by the "law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1) (2012) This is strictly construed as adopting the state law of where the act occurred, with a total bar on the use of federal law as the basis for a claim. See, e.g., *F.D.I.C. v. Meyer*, 510 U.S. 471, 478 (1994). In substituting the United States into such claims, the FTCA dictates that it shall be held liable in tort "in the same manner and to the same extent as a private individual" would be… The FTCA also excepts liability for certain intentional torts: assault, battery, false imprisonment, false arrest, malicious prosecution, **abuse of process**, libel, slander, **misrepresentation**, **deceit**, or interference with contract rights. 28 U.S.C. § 2680(h) (2012)

The Federal Government cannot be sued without its consent." *United States v. Navajo Nation*, 556 U.S. 287, 289 (2009). The defendants gave consent to the plaintiff. (Dkt. #11-10, Ex. 2) The FTCA is a limited waiver of the government's sovereign immunity from suit in certain cases involving negligence by federal employees in the course of their employment. *Dolan v. United States Postal Serv.*, 546 U.S. 481, 484-85 (2006) (citing 28 U.S.C. § 1346(b)(1)). Specifically, under the FTCA, the United States is liable "in the same manner and to the same extent as a private individual under like circumstances." *Dolan*, 546 U.S. at 486 (citing 28 U.S.C. § 2674).

A FTCA claim can be brought only against the United States, not the DOJ. e.g. *Quinlan by Cecola v. U.S. Postal Serv.*, No.89 C 5748, 1989 WL 88255, at *1 (N.D. Ill. July 31, 1989) ("§ 1346(b) calls for the action to be brought against the United States itself and not against the federal agency, and that is confirmed by §2679(a).") The only proper defendant in an FTCA action is the United States not DOJ. See *Kaba v. Stepp*, 458 F.3d 678, 681 (7th Cir. 2006) ("The United States would be the proper defendant for tort claims involving acts of the named officials within the scope of their employment.")

Defendants discuss the allegations against the DOJ employees when the "real" defendant in plaintiff's FTCA claim is the United States. For this immediate reason, defendant's motion to dismiss, or in the alternative summary judgment should be dismissed with prejudice because their whole discussion is as if plaintiff is bringing this complaint against the individual employees of DOJ and not the United States.

The FTCA authorizes suits against the United States for torts committed by federal officials if the same acts would create liability for private persons under applicable state tort law." *Reynolds v. United States*, 549 F.3d 1108, 1111 (7th Cir. 2008) (citing 28 U.S.C. §

1346(b)(1)); *Kaniff v. United States*, 351 F.3d 780, 790 (7th Cir. 2003). Under Illinois law, to succeed on a claim for intentional infliction of emotional distress, a plaintiff must prove that: "(1) the defendants' conduct was extreme and outrageous; (2) the defendants knew that there was a high probability that their conduct would cause severe emotional distress; and (3) the conduct in fact caused severe emotional distress." *Swearnigen-El v. Cook Cty. Sheriff's Dept.*, 602 F.3d 852, 864 (7th Cir. 2010). Plaintiff's 1st Claim for Relief against the United States is "United States for intentional infliction of emotional distress." To serve as a basis for recovery, the defendant's conduct must be such that the recitation of the facts to an average member of the community would arouse his resentment against the actor and lead him to exclaim: Outrageous!" *Honaker v. Smith*, 256 F.3d 477, 490 (7th Cir. 2001)

Courts will find extreme and outrageous behavior to exist only where the employer "clearly abuses the power it holds over an employee in a manner far more severe than the typical disagreements or job-related stress caused by the average work environment." *Lewis v. Sch. Dist. #70*, 523 F.3d 730, 747 (7th Cir. 2008) (quoting *Honaker v. Smith*, 256 F.3d 477, 491 (7th Cir. 2001)). According to DOJ employees, EMAGES, Inc. was the plaintiff's employer. EMAGES, Inc. told a big lie to DOJ employees. When plaintiff challenged "the big" lie given by EMAGES, Inc. to DOJ employees, providing email evidence, DOJ failed to investigate the reason EMAGES, Inc. gave for returning the grant causing plaintiff to lose his employment and pay.

Respectfully submitted,

/s/Fred L Nance Jr.
Pro se plaintiff
17239 Evans Avenue
South Holland, Illinois 60473
708-921-1395
frednance@clickservices.org