UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FRED L. NANCE, Jr.,                          )
                                             )
                    Plaintiff,               )
                                             )   No. 22 C 3861
             v.                              )
                                             )   Judge Hunt
UNITED STATES, et al.,                       )
                                             )
                    Defendants.              )

**REPLY IN SUPPORT OF DEFENDANT'S MOTION
TO DISMISS OR ALTERNATIVELY FOR SUMMARY JUDGMENT**

**Introduction**

Plaintiff Fred L. Nance, Jr. responds to the United States' motion to dismiss or alternatively

for summary judgment by ignoring the court's guidance allowing him "a final opportunity to allege

a proper cause of action under the FTCA against the Government Defendants." Order, Dkt. 19 at

12, FN 8.[1]  Instead of addressing the United States's arguments, Nance responds by repeating his

prior baseless allegations, rehashing claims that the court already dismissed or cautioned were

excluded under the FTCA, and failing to identify any tort or provide facts supporting the elements

of a tort that would give rise to his claim under the FTCA — the only claim remaining in this

matter.  Accordingly, the court should dismiss the complaint with prejudice or, alternatively, grant

summary judgment in favor of the United States.

_____

    [1]  The only proper defendant in an FTCA action is the United States. *Jackson v. Kotter*,
541 F.3d 688, 693 (7th Cir. 2008).  The caption of the complaint in this case describes the
"defendants" as "United States, et al.," but does not name any other defendants, although some
individuals are identified on page 3 of the complaint.  The United States is not aware of service on
any other defendant, and according to the docket, a summons was issued only as to the United
States.  This motion addresses the only claim that the court has permitted Nance to attempt to
pursue, an FTCA claim (that must be brought only against the United States).

## Argument

Nance ignores the fact that this court previously dismissed his frivolous allegations regarding a grant award that was supposedly unlawfully terminated in alleged retaliation for what Nance labels as "whistleblowing" complaints. And instead of addressing the argument that his Federal Tort Claims Act claim should be dismissed (again) because no analogous private liability exists against a private individual under like circumstances, as the Act requires, he ignores the United States' arguments (and therefore waives any response to them). Nance also improperly raises new claims that are well beyond the scope of what the court allowed him to assert — "a proper cause of action under the FTCA." *Id.* Finally, his related motion to conduct discovery before responding to this motion should be denied, for several reasons, as set forth below.

## I. Nance's FTCA Claims Should Be Dismissed Because There Is No Analogous State Tort Liability as Required Under the FTCA.

Nance ignores the argument that there is no analogous *private*-party tort liability for his FTCA claim, and he fails to identify any duty owed to him by the DOJ that was allegedly breached by processing the grant termination request submitted by EMAGES or by disallowing Nance from serving as a reviewer of applications for a grant program where he had a clear conflict of interest. Def. Mem. at 3–9. Instead, Nance claims, without support, that the United States, through its DOJ employees, committed wrongdoing by "allowing EMAGES, Inc. and Dr. Hattie Wash to return the grant on a lie without investigating the real reason why EMAGES, Inc. and Dr. Wash gave the grant back." Resp. at 2. Nance provides no support for his claim that the DOJ even had a duty to investigate the "real reasons" why EMAGES terminated its award. (Who cares why a grantee decides to reject a grant? DOJ was not about to *make* the company take a government grant.) Regardless, DOJ had no such duty and, in any event, EMAGES' reasons for terminating its award

were plausible on their face (COVID-19-related operational and financial challenges).  *See Nance*

v. *DOJ, et al.*, No. 20 C 6316, DOJ Reply, Dkt. 56 at 4-5.

Nance claims that he has evidence of "the nefariousness of the actors involved and the

linkage agreement between EMAGES, Inc. and the United States defendants" (Br. at 2), yet he

provides no description of how the United States's or his former employer, EMAGES', actions

were in any way nefarious.  EMAGES was entitled to terminate its grant award for *any* reason

(even if Nance disputed these reasons).  The DOJ awarded a grant to EMAGES, not Nance, and

EMAGES was within its rights to terminate the award for its own reasons.   Again, DOJ is not

about to *make* a company accept government money.  As the regulations make clear, to terminate

an award, a grantee is only required to provide notice explaining its reasons for terminating the

award. 2 C.F.R. § 200.340(a)(4).  Regardless, if Nance is claiming that the United States violated

a statutory duty, that claim should be dismissed because "[a]n alleged violation of a federal

statutory duty cannot form the basis of a FTCA claim."  *Clark* v. *United States*, 326 F.3d 911, 914

(7th Cir. 2003), *citing Ochran* v. *United States*, 273 F.3d 1315, 1317 (11th Cir. 2001).

Nance falsely claims that he, as purported sub-awardee, "could have taken over the grant

legislatively, which EMAGES, Inc.'s Dr. Hattie Wash (defendant) stated in an email to the

plaintiff."  Resp. at 3.  Nance fails to cite any legislation that would "legislatively" grant him the

EMAGES award.  Subawards require explicit federal approval.  DSF ¶ 2, at EMAGES award, Ex.

B, p. 8, Special Condition 10 ("All subawards ('subgrants') must have specific federal

authorization").  Nance has not offered a shred of evidence that EMAGES ever requested a

subaward (let alone that the DOJ ever approved a subaward request, which it did not).

Nance also falsely claims that "[t]he subawardee can take over a Second Chance Act

grant."  Resp. at 3.  Neither EMAGES nor a purported subawardee could unilaterally transfer an

award without federal authorization (which was not provided). Wash's statement to Nance that "you can have the program" also did not magically transfer the program to Nance. Resp. at 4. A transfer of a grant award from one recipient to another party would require a detailed process, including approval by the DOJ, which did not occur here. Regardless, Nance's alleged status as a subawardee (which he was not) is not relevant to his FTCA claim against the defendant.

### A. Nance's Emotional Distress Claims Cannot Support His FTCA Claim.

Nance argues that his *negligent* infliction of emotional distress claim is a recognized cause of action in Illinois, and it therefore provides an analogous state law claim for purposes of supporting his FTCA clam. Resp. at 7. Nance is wrong for several reasons. First, Nance did not file a claim for *negligent* infliction of emotional distress, and even if he did, he failed to articulate, or otherwise provide evidence to support, the elements of a negligence claim.

Second, Nance asserts a claim for *intentional* infliction of emotional distress (IIED). Am. Compl., Dkt. 20 at 33 (Claim 1). As support for that claim, Nance makes one allegation: the DOJ failed to investigate the reason EMAGES provided (described by Nance as the "big lie") when it terminated its grant award. Resp. at 15. Setting aside the fact that Nance failed to cite any authority to support his contention that the DOJ had a legal duty to investigate why EMAGES terminated its award (and also the fact that the reasons provided by EMAGES were plausible on their face,) as set forth above, EMAGES was within its right to terminate its grant award for its own reasons. 2 C.F.R. § 200.340(a)(4).

Third, as set forth in our opening brief, Nance's IIED claim fails because it cannot serve as the basis for his FTCA claim because (1) Nance failed to allege conduct that was extreme and outrageous; (2) Nance failed to provide support or even allege that the defendant knew there was a high probability the alleged conduct would cause severe emotional distress; and (3) Nance failed

to allege or provide any support for a contention that the alleged conduct in fact caused severe emotional distress. Def. Mem. at 7–9. Nance failed to respond to any of these arguments, and they are therefore waived. *Nichols v. Michigan City Plant Plan. Dep't*, 755 F.3d 594, 600 (7th Cir. 2014) citing *Laborers' Int'l Union of N. Am. v. Caruso*, 197 F.3d 1195, 1197 (7th Cir.1999).

Also, as Nance noted, a *negligent* infliction of emotional distress claim (which he did not assert in his Amended Complaint and instead, improperly asserts in his response brief) requires that a defendant committed a negligent act or omission. Resp. at 7–8. Nance fails to identify what negligent act or omission was committed by the defendant or allege the existence of a legal duty applicable to his allegations, a breach of that duty by the United States, or an injury caused by the breach. *Id.* Instead, Nance simply plows ahead with his baseless and novel theory of liability that somehow the DOJ had a duty to investigate the purported "real" reason for EMAGES' grant termination request. There is no analogous state tort, and in the end, Nance's complaints about losing his employment and pay are between him and his former employer, EMAGES, not the United States.

**B.      Nance's Conspiracy Claim Cannot Support a FTCA Claim.**

As we pointed out in our opening brief, a conspiracy allegation cannot serve as the basis for an FTCA claim because (1) civil conspiracy is fairly encompassed within the meaning of "deceit" for purposes of 28 U.S.C. § 2680(h) and therefore excluded under the FTCA; and (2) civil conspiracy is not an independent cause of action in Illinois, and it requires an independent cause of action underlying a conspiracy allegation. Def. Mem., at 9–10. Nance fails to address those arguments, so any response to them is waived. *Nichols*, 755 F.3d at 600.

Besides, Nance's "civil conspiracy claim" (Resp. at 8) is subject to Rule 9(b)'s requirement "that facts such as the identity of the person making the misrepresentation, the time, place, and

content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff be alleged in detail." *Borsellino* v. *Goldman Sachs Group, Inc.*, 477 F.3d 502, 509 (7th Cir. 2007). Like the plaintiff in *Borsellino*, Nance's factual allegations "and a handful of unreasonable inferences are not enough to satisfy Rule 9(b)'s particularity requirements." *Id.* In other words, Nance's amended complaint does not provide the required who, what, when, where, and how of a conspiracy claim arising in fraud. Regardless, conspiracy cannot serve as the basis for a FTCA claim, a point left unaddressed by Nance and therefore waived, as set forth above.

**C.     Nance's Other Claims Are Insufficiently Pleaded or Are Barred Under the FTCA.**

Nance recites the requirements for several other claims but makes no attempt to tie them to any allegations in his complaint. For example, he recites the elements of an abuse of process claim, yet he fails to connect those requirements to any of his allegations. Resp. at 8. Even if he connected those elements to his claim, which he did not, abuse of process is explicitly excluded by the FTCA, a fact that Nance paradoxically acknowledges yet pursues anyway. Resp. at 13; *see also* 28 U.S.C. § 2680(h).

Similarly, Nance reiterates the elements of a defamation claim but fails to connect the elements to his allegations. Resp. at 8. He leaves to the imagination what alleged false statements were made about him by the DOJ or the United States, and any information concerning publication of such statements. Like his other claims, Nance's defamation claim is entirely unsupported and speculative. In any case, Nance's defamation claim is also barred under the FTCA. *See Apampa* v. *Layng*, 157 F.3d 1103, 1104 (7th Cir. 1998) (holding that the FTCA barred suit for defamation); *see also McDonnell* v. *Cisneros*, 84 F.3d 256, 261 (7th Cir. 1996) ("The United States is not liable under the Tort Claims Act for defamation by its employees.").

6

Nance's whistleblower claims were already dismissed with prejudice by this court because the United States was never Nance's employer. Order, Dkt. 19 at 17-18; Resp. at 9 – 10. As with his other claims, Nance merely recites the elements of a claim and fails to apply the elements to his allegations or address any of the arguments we made in our opening brief. *Id*.

Similarly, Nance's retaliation claim alleging violations of Title VII and the First Amendment was already addressed by this court and dismissed with prejudice. Order, Dkt. 19. As set forth in our opening brief, constitutional tort claims are not cognizable under the FTCA; Title VII applies to employment discrimination and Nance was not an employee of the United States; Title VII claims can only be brought against the head of a federal agency and not the United States (like Nance's Amended Complaint); and he failed to provide sufficient facts to support a First Amendment claim. Def. Mem at 12 – 14. Nance failed to address any of the United States's arguments concerning retaliation (or the court's dismissal with prejudice), and they are therefore waived. *Id.*; *Nichols*, 755 F.3d at 600. Nance mistakenly argues that the United States's motion should be denied because we supposedly "discuss the allegations against the DOJ employees when the 'real' defendant in plaintiff's FTCA claim is the United States," (Resp. at 14), even though we never made that argument.

Nance recites the elements of a fraud claim and the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") (which Nance describes as "the Consumer Fraud Act"), but, like his other claims, he fails to explain how the elements of these claims apply to his allegations. Resp. at 9. Regardless, as set forth in our opening brief, claims of misrepresentation and deceit (claim 5 of Nance's Amended Complaint) are explicitly excluded under the FTCA. 28 U.S.C. § 2680(h). Besides, his fraud claim fails because he does not comply with Rule 9(b), as set forth above, or even allege a false statement by the DOJ of a material fact that the defendant allegedly made, how

he relied on such statement, or what damages are supposedly connected to his reliance on such statement.

Similarly, Nance's new claim under the ICFA, which Nance improperly raises for the first time in his response, fails because (1) it is explicitly excluded under the FTCA (28 U.S.C. § 2680(h)); (2) Nance does not explain how any of the DOJ's alleged conduct constituted a deceptive act or practice involving trade and commerce; and (3) it is "a basic principle that the complaint may not be amended by the briefs in opposition to a motion to dismiss, nor can it be amended by the briefs on appeal." *Thomason* v. *Nachtrieb*, 888 F.2d 1202, 1205 (7th Cir. 1989); *see also Agnew* v. *Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 348 (7th Cir. 2012). Nance's amended complaint did not allege a claim under the ICFA and he cannot raise this new claim now through his brief. *Id.*

Besides, the ICFA is "a regulatory and remedial statute intended to protect consumers, borrowers, and business people against fraud, unfair methods of competition, and other unfair and deceptive business practices." *Robinson* v. *Toyota Motor Credit Corp.*, 201 Ill.2d 403, 419 (2002). An ICFA claim "must state with particularity and specificity the deceptive manner of defendant's acts or practices, and the failure to make such averments requires the dismissal of the complaint." *Robinson*, 201 Ill.2d at 419; *Connick* v. *Suzuki Motor Co.*, 174 Ill.2d 482, 502 (1996). Nance makes no attempt to connect the ICFA with his FTCA claim, nor does he state with particularity and specificity the allegedly deceptive manner of the defendant's acts, as required. *Id.*

Further, the ICFA explicitly states that it does not apply to "[a]ctions or transactions specifically authorized by laws administered by any regulatory body or officer acting under statutory authority of this State or the United States." 815 Ill. Comp. Stat. Ann. 505/10b. The United States, through its DOJ employees, was specifically authorized by law and acting under the

statutory authority of the United States to process the EMAGES grant termination, disallow Nance

from reviewing grant applications due to his conflict of interest, and decline to award Nance's

organization a grant award. *See, e.g.,* 28 U.S.C. § 530C (authorizing the DOJ to carry out activities

that may "in the reasonable discretion of the Attorney General, be carried out through any means,

including . . . grants . . . with non-Federal parties"); 34 U.S.C. § 10142 (authorizing the Bureau of

Justice Assistance, a program office within the Office of Justice Programs (the grant-making DOJ

component), that made the grant at issue, to provide funding for grants and "on terms and

conditions determined" by the BJA Director to be consistent with 34 U.S.C. §§ 10171 – 10191);

34 U.S.C. § 10110 (authorizing OJP and its component organizations to make grants and stating

that the AG has "final authority" over all such grants); 34 U.S.C. § 10102 (specifying the duties

and functions of the head of OJP, including "placing special conditions on all grants"); and 2

C.F.R. § 200.340(a)(4) (specifying the process for recipients to terminate grants). The DOJ's

actions complied with these laws (and other authorities) and therefore, even if such claims were

not excepted from the FTCA, which they are, as set forth above, Nance cannot state a claim under

the ICFA. *See, e.g., Janikowski* v. *Lynch Ford, Inc.*, 210 F.3d 765, 769 (7th Cir. 2000) (affirming

dismissal of ICFA claim where defendant complied with the Truth in Lending Act).

## II.     Nance's Rules 26 and 56(d) Motion Should Be Denied.

Along with his response, Nance filed a motion pursuant to "Rule 26 and Local Rule 56(d)"

seeking a continuance, discovery, and "dismissal of defendant's motion to dismiss or in the

alternative summary judgment." Mot. at 1, 5. Federal Rule of Civil Procedure 26 outlines the

rules and procedures for discovery in civil litigation. The Local Rules do not include a Rule 56(d),

but Nance appears to reference Federal Rule of Civil Procedure 56(d). That rule provides that if

"a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts

essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d). As Nance notes, a Rule 56(d) motion "must state the reasons why the party cannot adequately respond to the summary judgment motion without further discovery and must support those reasons by affidavit." Mot., at 2, *citing Deere & Co.* v. *Ohio Gear*, 462 F.3d 701, 706 (7th Cir. 2006).

Here, Nance was required to specify a factual issue that he would be able to present after discovery, not simply claim, as he has, that he "needs discovery to support his claims." Nance Affidavit at 1; *see Grundstat* v. *Ritt*, 166 F.3d 867, 873 (7th Cir. 1999) (finding vague assertions that discovery would develop genuine issues of material fact insufficient to grant continuance). Rule 56(d) "is not a shield that can be raised to block a motion for summary judgment without even the slightest showing by the opposing party that his opposition is meritorious." *Korf* v. *Ball State Univ.*, 726 F.2d 1222, 1230 (7th Cir. 1984) (*quoting Lamb's Patio Theatre, Inc.* v. *Universal Film Exchs., Inc.*, 582 F.2d 1068, 1071 (7th Cir. 1978)).

Here, Nance's affidavit consists of a recitation of his claims, much of it repeated verbatim from his prior filings, that does not identify any fact or issue that would require discovery other than his vague assertion, as set forth above. Nance's prior Rule 56(d) motion and affidavit suffered from this same defect, as we pointed out before. Reply, Dkt. 13 at 6 – 7.

Nance asserts that "[t]his is not and will not be an exhaustive list of plaintiff['s] requests for production of documents and interrogatories for the United States [defendant]" (Nance Aff. at 7), yet he does not specify *any* document requests or interrogatories in his affidavit, nor does he identify what facts he seeks, how such facts would be obtained, or how these facts are reasonably expected to create a genuine issue of material fact. In other words, Nance's conclusory statement

that he "needs discovery to support his claims" (Nance Aff. at 1), does not amount to "specified reasons" that he "cannot present facts essential to justify [his] opposition" as required by Rule 56(d). *See Hargrave* v. *Ameristar Casino E. Chicago, LLC*, 2:20-CV-221-PPS-JEM, 2022 WL 4958214, at *2 (N.D. Ind. Oct. 4, 2022).

Furthermore, discovery will not enable Nance to identify analogous tort liability against the government or a legal duty owed to him by the government when a government agency processes a grant termination request. Those are *legal* questions, not questions of *fact*, and they are unsuitable for discovery. The United States does not deny that it processed EMAGES' grant termination request, that Nance was not permitted to review and grade applications because he had a conflict of interest, and that his grant application was unsuccessful. In any event, Nance offers nothing to demonstrate why discovery is likely to generate any genuine issue of material fact regarding his claims that lack any basis in law or fact such that discovery would only needlessly consume additional judicial time and resources.

Also, the fact that discovery has not begun does not, by itself, defeat a dispositive motion, since a "defendant may move for summary judgment at any time." *Am. Nurses' Ass'n* v. *State of Ill.*, 783 F.2d 716, 729 (7th Cir. 1986). Regardless, Nance has not complied with Rule 56(d) because he has not provided an affidavit giving the specific reasons that he needs discovery to respond to the defendant's motion (to which he has *already* responded and therefore apparently does not need discovery). Nance's discovery motion is merely an attempt to conduct a speculative hunt for evidence, which will only result in delaying the ultimate dismissal of his baseless claims. *Staten* v. *Nissan N. Am., Inc.*, 134 F. App'x 963, 964–65 (7th Cir. 2005) (citation omitted) (Rule 56(d) "does not allow a party to block summary judgment simply by offering generalities about

11

the need for further discovery.").  Nance's Rule 56(d) argument accordingly fails, and his motion should be denied.

## Conclusion

For the foregoing reasons, the court should dismiss the claims against the United States in their entirety with prejudice, or alternatively grant it summary judgment, and it should deny plaintiff's motion to conduct discovery.

Respectfully submitted,

MORRIS PASQUAL
Acting United States Attorney

By: s/ Kurt N. Lindland
    KURT N. LINDLAND
    Assistant United States Attorney
    219 South Dearborn Street
    Chicago, Illinois 60604
    (312) 353-4163
    kurt.lindland@usdoj.gov